ORIGINAL



**FILED**

JUN 4 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

```
RONALD BRATTON J-45341
CTF-NORTH      LA-120L
BOX 705
SOLEDAD, CA 93960-0705
```

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA  E-filing    JSW

RONALD BRATTON,

    Plaintiff , in pro per  **CV 08    2788**

    in forma pauperis      Case No.

 

**v**

    **COMPLAINT UNDER THE**
    **CIVIL RIGHTS ACT** *(PR)*
    **42 U.S.C.¶ 1983**

    **AMERICANS WITH DISABI-**
    **LITIES ACT 42 U.S.C.**
    **12131 et seg (ADA) 29**
    **U.S.C. 794**

```
BEN CURRY, Warden-CTF, et al.,
W. MARTINUS, Corectional Officer-CTF
B.R. PEOPLES, Sargent, CTF-Soledad
I. GUERRA, Capt. CTF-Soledad
D. SOTO, Correctional Officer, CTF-Soledad
W.B. CHILDRESS, CCII Appeals Coordinator, CTF-Soledad
N. GRANNIS, Chief, CDCR-Inmate Appeals, Sacramento
W.J. HILL, Appeals Coordinator, CTF-Soledad (Associate Warden)
J.R. SOLIS, Acting Warden, CTF-Soledad
L.JEANETTE SALMONS, Superintendent I, PIA-Soledad
GREG SHEFFIELD, P.I.A., Textiles, CTF-Soledad
A.P. KANE, Acting Warden, (former, CTF-Soledad)
P. EARLY, Supervisor, PIA Textiles, CTF-Soledad
P. EARLY, Supervisor, Fabric-products, CTF-Soledad
P.BARKER, Chief Deputy Warden, CTF-Soledad, Acting Warden-CTF
P.G. DENNIS, Appeals Coordinator, CTF-Soledad
L.R. BAKER, CCI, CTF-Soledad
J.G. ARCEO, Facility Captain, CDCR-Sacramento
JANE & JOHN DOE(S) 1 thru 20
SUZAN L. HUBBARD, Deputy Director(A) Institutions Divison
P.A. SANTIAGO, Appeals Coordinator, CTF-Soledad
TILTON, JAMES, Secretary-Dept. of Corrections & Rehabilitation
```

X. Count I          The Defendants violated plaintiff's Equal Protection Rights
                    under the 14th Amendment

I. Exhaustion of Administrative Remedies

   A. Place of Confininement  CTF-Soledad (Central)

   B. Grievance Procedure? Yes, but staff does not follow it

   C. Presented for review? Yes

   D. Appeal number and date  CTF-04--0256, Jan 16,2004
        (August 1,2007,(no number given)  awaiting no.)
      1/17/04 denied, 1st level denied 2/25/04, 2nd level denied
      4/7/04, 3rd level denied 7/12/04

   F. Second offense of same violation is being processed with
      no favorable outcome forscene as officials "state and
      make it well-known-they do not follow or fear following
      federal laws, as shown in first recorded instance."

   E. Is last level higest? Yes

II. Parties
   A. name and present address.  RONALD BRATTON, address same
      as above.

   E(1) Plaintiff is informed and believes and thereon allege,
   that defendant Martinus, W is and was at all relevant times
   herein, was the C/O* (correctional officer) assigned to "F"
   at all relevant times herein.  Defendant Martinus is being
   sued in his official and individual capacities.  Plaintiff
   is furthur informed and believes, and alleges the defendant
   responsible as plaintiff's supervisor, for his porter position.

   E(2) Plainatiff is informed and believes, and thereon allege,
   that the defendant B.R.Peoples was and at all times relevant herein
   the Correctional Sergeant, CTF-Central assigned to Unit-II, as
   supervisor over "F" wing officers.  Defendant Peoples is sued
   in his official and individual capacities.  Plaintiff is fur-
   thur informed and believes and hereon alleges, that Defendant
   Peoples was responsible for the review of inmate complaints.

   E(3) Plaintiff is informed and believes, and thereon allege,

-1-

the defendant I. Guerra, was and at all relevant times herein, the Correctional Facility Captain, CTF-Central/Unit-III. Defendant Guerra is being sued in his official and individual capacities. Plaintiff is further informed and believies and hereon alleges that defendant Guerra was responsible for supervision of all work programs, inmate and Correctional, in Unit-III/CTF. E(4) Plaintiff is informed and believes, and thereon allege, that defendant C/O Soto is and was at all relevant times herein, the senior C/O in "F" wing at all relevant times herein. Defendant Soto is being sued in his official and individual capacities. Plaintiff is further informed and believes and hereon alleges, that defendant was responsible, as senior C/O on duty for C/O Martinus's negative actions during adverse job change.

E(5) Plaintiff is informed and believes, and thereon allege, the defendant W.B. Childress, CCII is and at all times relevant herein, the Appeals Coordinator at CTF-Soledad. Defendant Childress is sued in his official and individual capacities. Plaintiff is further informed and believes and hereon alleges, that defenndant Childress was responsible for the logging in and review of inmate appeals against unlawful and harmful actions.

E(6) Plaintiff is informed and believes, and thereon allege, the defendant N.Grannis, is and at all times relevant herein, the Chief, Inmate Appeals Branch, of the Department of Corrections. Defendant Grannis is sued in her/his individual and official capacities. Plaintiff is further informed and believes and thereon alleges, that defendant Grannis was responsible for all inmate complaints of oppression and illegal actions.

E(7) Plaintiff is informed and believes, and thereon allege, the defendant W.J. Hill, was and at all times relevant herein,

the Appeals Coordinator at CTF-Soledad.  Defendant Hill is sued

in his official and individual capacities.  Plaintiff is further

informed and believes and hereon alleges, that defendant Hill

was responsible for the logging in and review of inmate appeals

against unlawful and harmful actions.

E(8) Plaintiff is informed and believes, and thereon allege

that defendant J.R. Solis and  at all times revelant herein,

was the Warden at CTF-Soledad.  Defendant Solis is sued in his

official and individual capacities.  Plaintiff is further in-

formed and believes and hereon alleges, that defendant Curry

was resonsible for all job positions and supervison, inmate

and Correctional officers.

III.    Statement of Claim (See exhibit 'F') (Filed as staff complaint)

The persons employed by the state conspired to cause a

deprivation of a federal and state right to a handicaped per-

son, (prisoner is CCCMS & has Leukemia) a service provided by

a public entity, to whit "job incentive, which prior to named

discriminatory act, revoking prisoner's appointment to position,

had been allotted by seniority" and/or racial balance.

> "Inmates, parolees and employees will not subject other persons to
> any form of discrimination because of race, religion, nationality,
> sex, political belief, age, or physical or mental handicap." California
> Code of Regulations, Title 15, 3004(c)

And also in violation of federal regulation "Right to equal
treatment" 14th Amendment U.S.C., also 24 U.S.C. 1983

> "Prisoners donot forfeit all equal protection rights upon incarcer-
> ation; however, practices that result in unequal treatment among pri-
> soners are permissible 'if such practices bear a rational relation
> to a legitamate penal interest.' To successfully claim a violation
> of the right to equal treatment, an inmate must prove that (1) simi-
> lary situated inmates are treated differently by the government, and
> (2) there is no rational basis for the dissimilar treatment.

The plaintiff was assigned to work position PTR CC.293

FWG Porter on September 24,2002.  The plaintiff was a transfer

from a level 3(three) prison, May 2,2002 and had had a position

as education clerk for four years with a $36 dollar pay number.
Prisoner's transfer was non-adverse due to lowering of custody
points for 'good-behavior.' Upon assignment prisoner was first
told he would have a pay position. During the week plaintiff
then told counselor he could remove him from the clerk's wait-
ing for a job "since he thought" he had a pay position which
would allow him to have the mornings off to continue his court
battles. Plaintiff was told a couple of days later by C.O.
McGriff his pay positions were determined by the ethnic balance
of inmates on his shift, and he would have to wait until one
of the "Black-Pay Positions" were vacant, as per California
Code of Regulations Title 15 3041.1 (f), note Authority cited
Section 5058, Penal Code, Reference: Section 5054.

On January 9,2004 a "Black-Pay-Position" opened, as one
of the men in one of those positions was transfered to another
wing. On January 13, 2004 plaintiff was assigned pay position
PTRCC.289 FWG3 Porter. On January 14,2004 pay-position was
taken by C.O. Martinus, as directed by C.O. Soto to due. The
reason being a Hispanic whose assignment date was listed as
April 2003, was really August 2002, one month before plaintiff.
He never explained how the inmate had two hire dates, whether
the inmate came from another shift or any situation which would
have changed his senior date. In any event the Hispanics now
had four pay slots, and the Whites one, and Blacks one. The
change had come "ONLY AFTER TWO HISPANIC C.O.'s TOOK OVER THAT
SHIFT," AND SAID "TO REALIGN THE WORKFORCE." (See exhibit
'D' for complete information and filing record.

IV. Relief; The plaintiff requests Compensatory, punitive and
declaratory damages from each defendant , starting with back-pay

4-

The plaintiff requests an injunction against retaliation such
as we see through-out all of these claims, and which "triggered
the unjust actions of the prison officials, all the way up the
line, as a matter of **"oppressive acts designed to keep the
prisoners 'in their places' legally or not."** All of the act-
ions taken against plaintiff were voiced by the C.O.'s involved
to be done "because the can do anything they liked."

XI Count II (two)  "Violation American With Disability Act"
42 U.S.C. 12131 et Seg Refusal Reasonable Accommodation"

I.   Exhaustion of Adminstrative Remedies

    A.   Place of Confinement **CTF-8OLEDAD (Central)**

    B.   Grievance Procedure? **Yes, but not followed by staff**

    C.   Presented for review? **Yes**

    D.   Appeal number and date. **CTF 05-02426, CTF 05-01506**
    August 29,2005 ADA CDC-1854 denied, Aug. 17,2005 denied after
    bypassed due to 1854 afore-mentioned, At 2nd level denied
    Nov. 28,2005, denied March 9,2006.(these denials on 05-02426
    Adverse action of this appeal retaliation for 05-01506 appeal.
    Appeal CTF-05-01506 denied 1st level 5/8/05, formal level
    5/25/05, 2nd level 8/8/05, Director's level 11/7/05

    E.   Is last level higest? **Yes**

II. Parties

A. Name and present address of Plaintiff. **Same as above,(Bratton)**

  F(1)Plaintiff is informed and believes and thereon allege, that

that defendant L. Jeanette Salmons, is and was at all relevant

times herein, was the (SuperintendentI) of Prison Industries at

CTF-Soledad at all relevant times herein. Defendant Salmons is

being sued in her official and individual capacities. Plaintiff

is further informed and believes, and alleges the defendant was

responsible for the hiring and supervision of inmate personal.

  F(2) Plaintiff is informed and believes and thereon allege,

that defendant Greg Sheffield is and was at all relevant times

herein, was the P.I. Manager (A) At CTF-Soledad. Defendant

Sheffield is being sued in his official and individual capaci-
cities.  Plaintiff is further informed and believes, and al-
leges the defendant was responsibld for the hiring, and super-
vision of all P.I, employees at CTF-Soledad, inmate and free-
staff.

F(3)  Plaintiff is informed and believes and thereon allege,
that defendant A.P. Kane was the acting warden at CTF-Soledad
at all relevant times herein.  Defendant Kane is being sued
in his official and individual capacities. Plaintiff is fur-
ther informed and believes, and alleges the defendant was re-
sponsible for the supervision of inmate workers, and all staff at
all relevants times herein.

F(4) Plaintiff is informed and believes and thereon allege, that
defendant P.Early, is and was at all relevant times herein,
was the Supervisor, Prison Industry Authority, Textiles, CTF
and responsible for supervison and hiring of inmates at CTF.
F(5)  Plaintiff is informed and believes and thereon allege,
that defendant D. Salmons, PIA ___, CTF-Soledad was the Fabric-
Products-Supervisor  : at all relevant times herein.  Defendant Sal-
mons is being sued in his official and individual Capacities.
cicities.  Plaintiff is further informed and believes, and alleges
the defendant was responsible for the assignment of inmates
work positions, in the PIA.

F(6) Plaintiff is informed and believes and thereon allege,
that defendant P. Barker, was at all times relevant herein,
the Chief Deputy Warden at CTF-Soledad.  Defendant Barker is
being sued in his official and individual capacities.  Plain-
tiff is further informed and believes that defendant Barker
was responsible for job programs and supervision at CTF.

-6-

F(7)  Plaintiff is informed and believes and thereon allege,
that defendant N. Grannis, is and was at all relevant times
herein, the Chief of Inmate Appeals in the Department of Cor-
rections and Rehabilitation for the State of California.   De-
fendant Grannis is being sued in her official and individual
capacities.  Plaintiff is further informed and believes, and
alleges that defendant Grannis was reponsible for seeing all
appeals concerning ADA violations, and other "right violations,"
were to be bought into conformation with the laws of the fed-
eral and state legislation, throughout the prison system.
F(8)  Plaintiff is informed and believes and thereon allege,
that defendant P.G. Dennis, is and was at all times relevant
herein, the Appeals Coordinator at CTF-Soledad.  Defendant
Dennis is being sued in his/her official and individual cap-
acities.  Plaintiff is further informed and believes, and
alleges the defendant was responsible to see all ADA accom-
modation requests were handled properly, with-in reason and
according to federal and state laws.

III Statement of Claim (See exhibit 'G')  The defendants violated
first amendment rights by
retailiating against him for filing a '602' (free speach) and ADA reasonable
accommodation,
On July 13,2005 it became apparant that plaintiff became a
victim of "A RETALITORY CONSPIRACY," by the defendants afor-
mentioned.  Plaintiff was removed from his "earned by good
behavior" job, to a work with no pay and incentative system.
Because the plaintiff filed a '602' appeal concerning not
being allowed to work as other inmates similarily situated,
during a "lock-down" phrase at CTF-Soledad, on April 28,2005.
A 'falsely generated, and/or hadn't been used in at least two
year period restriction, was invoked to unfairly take away
the plaintiff's ability to buy toiletries regardless of his

'good conduct status.' (see exhibits "G".127)    The plaintiff's
ADA status was not considered or thought of, even though it was
the "only justified reason for the dismissal of plaintiff from
the program. To make matters worse, the officials here dismis-
sed four other inmates to "try to make it a blanket policy, which
simply had "been conviently forgotten until plaintiff filed his
"602.'    in a

    The plaintiff filed a civil suit in the state court's,(ex.
"F") and was eventually dismissed by the court which said plaintiff
had "no civil rights" to be protected by law, even though chapter
and verse was spelled out for them in the suit, as well as in
the appeal. ( G 129,G 142 _ ___) Coincidently, after receiving
notice of the suit Lt. Santiago called inmate and 'temporalarily
restored him to his position; stating "he thought the other
people involved had went throgh the proper channels to dismiss
him from his job." NOONE ELSE THROUGH-OUT THE ABUSIVE TERMIN-
ATION VOICED THIS TRUTH, INCLUDING ALL APPEAL-REVIEWING PERSONEL.

    One month after plaintiff was placed back on the job, he
was again terminated, this time the explaination being shortage
of out-side supervisors. Plaintiff was placed 'again on a no-
pay porter position, and told he would receive a pay-number when
his senoriity position came up.' *On April 19,2007 the plaintiff's
senority placement came up, he was passed over by Lt. Santiago
for the pay position, and lack of knowledge claimed by 'C' Wing of-
ficer staff. "FOR THE LAST FIVE AND ONE-HALF YEAR OUT OF SIX,
PLAINTIFF HAS BEEN PLACED WITH-OUT A PAYING JOB POSITION, ALL
UNDER THE 'GUISE OF NON-ADVERSE ACTION,' and following retali-
tory actions generated by 'plaintiff filing a '602.' (see ex.'G')

    To and insult to injury, the person put on in the plaintiff's

-8-

work slot not only lives in the same housing as was said 'plain-
tiff couldnot live in to hold a position in PIA, but in the same
cell.

XIII. **Relief requested;**

The plaintiff requests Comensatory, punitive and declatory
damages and relief froe each defendant, starting with $15,000
each for "Conspiring to deny an ADA prisoner his equal treat-
ment rights, under the United States Constitution, and those
formed by state statutes." Flagrant abusive retalilation and
insolent unredemptive oppression has continued by these defend-
ants since those blatant acts, and plaintiff has no other means
of restoring his favorably status, of non-conflicted prisoner.

Count three (3c) Violation Edqual Protection and Due Process Rights
                 Retaliation for the exercise of First Amendment Rights
I. Exhaustion of Adminstration Remedies

A.    Place of Confinement CTF-Soledad (Central)

B.    Grievance Procedure? Yes, but not followed by staff

C.    Presented for review? Yes

D.    Appeal number and dates; October 12,2005, CTF-05-03570
formal level (1) denied 12/8/02, (2) denied 1/26/06, (3) denied
5/12/06; CTF-05-01978 (1)granted 6/29/05 (Used as basis for
retaliation on afore-mention '602'

II. Parties

A.    Write the full name of plaintiff, Ronald Bratton

B.    Write names of each plaintiff, and address, Only adresses
known are work addresses, as plaintiffs CDCR employees

G(1) Plaintiff is informed and believes and thereon allege, that
defendant LR. Baker, is and was at all relevant times herein,
theCCI (Correctional Counselor) assigned to plaintiff's file
at all relevant times herein. Defendant Baker is being sued
in her official and individual capacities. Plaintiff if further
formed  and believes and alleges the defendant was in charge of

preparing plaintiff's case file for Parole Hearing Review.
G(2)  Plaintiff is informed and believes and thereon allege,
that defendant P.Barker was and at all relevant time herein,
the Acting Warden at CTF-Soledad.  Defendant Barker is being
sued in his/her official and individual capacities. Plaintiff
is further informed and believes and alleges the defendant is/was
in charge of staff supervision at CTF-Soledad, at relevant time.
G(3) Plaintiff is informed and believes and thereon allege,
that dedendant W.J. Hill, was the associate Warden at CTF-Soledad
at all relevant times here.  Defendant Hill is being sued in his/
her official and individual capacities.  Plaintiff is further in-
formed and believes and alleges the defendant is/was in charge of
staff supervision at CTF-Soledad, at relevant times herein.
G(4)  Plaintiff is informed and believes and thereon allege,
that defendant J.G. Arceo, was the Facilty Captain and Appeal
reviewer at the Inmate Appeals Branch of the Department of Cor-
rections and Rehabilitation at all relevant times herein.   De-
fendant Arceo is being sued in his official and individual ca-
pacities.  Plaintiff is further informed and believes and alleges
that defendant Arceo was responsible for Director Level Review
in the matter here-in.

G(4)  Plaintiff is informed and believes and thereon allege that
defendant N. Grannis was the Chief of Appeals for the CDCR at
all relevant times herein.  Defendant Grannis is being sued in
his/her official and individual capacities.  Plaintiff is fur-
ther informed and believes and alleges that defendant Grannis
was responsible for "all matters of appeals in the CDCR for in-
mate complaint during the relevant times herein.

Plaintiffs G(5) and G(6) are the Department of Corrections and

-10-

Rehabilitation and the State of California respectively, and
they are being sued in their official and individual capacities
as so allowed by law.

III **Statement of Claim** (See **exhibit** '**H**')  Violation First Amendment
    "Due Process violation for parole consideration; for retaliation from '602.'
                                                       and Fair-Hearing.
    A Staff complaint was filed by the Plaintiff against CCI

Baker on October 12,2005. The counselor had taken '**retalitory**'
**action against plaintiff for his filing a '602'· against her for**
**not making changes in his case in March 2005, when she had said**
**she would do so. She slandered the plaintiff, and lied in re-**
**ports to the parole board, stating the plaintiff had "no parole**
**plans and should continue to remain in prison."** Even though the
plaintiff had no negetive reports, nor disciplinary actions since
his arrival to CTF-Soledad, and 'one' falsified incident in prior
eight years of incarceration. (See (exhibits '**H' 180-185**)

    The parole board stated plaintiff had **"no parole plans,"**
parroting the lie of the counselor, even though they were in
the record, filed their by the counselor and/or her clerk.  The
parole board members did not even read the plans in their pos-
ession  electing to believe the lie, as they were looking for an
excuse to deny parole, since plaintiff had given them none, had
no prior adult record, juvenile 'blemish' twenty-eight years
prior.  This was the excuse as plaintiff has maintained his in-
nocence of the 'wrong-ful' conviction he is imprisoned for. The
'excuse the CCI Baker' gave board was all they had to go on, since
**"A retrying of the alleged crime,"** was not a legal means to deny
him parole.  The counselor had plenty of time to change her comments,
and/or delete them since they were given to the board at the same
time as petitioner's"statement of facts"(ex.'H'168)The counselor's
Superiors and CDC officials had plenty of time to delete the attack
as plaintiff did not go to board until September 2006, a year later.

**Relief:**

The plaintiff requests compensatory, punitive and declar-
atory damages. Since the counselors are supposed to be removed
from the parole process, it is deplorable that the hateful, veng-
ful, unethical denegrative comments were voice to the board, since
they had no basis in fact. A liberty interest of immence pro-
tion was taken from the plaintiff, being the ondy voiced basis
for his denial of parole. A minimun accessment of $25,000 should
be accessed on each of the conspirators, plus comparable punitive
damages, which probably will never have a high enough value as
the plaintiff's freedom has been taken and curtailed. The cal-
culated meaness of the counselor shows in the fact the "Parole
Plans and Programs' of the plaintiff were given to her prior to
the finishing of the collection of information shows in the fact
those 'Plans' were put in the plaintiff's folder, at the back of
his information under miscellaneous, with no 'labeling,'and after
the 'libel' against the plaintiff was firmly entrenched into the
minds of the parole board. The plaintiff in fact, gave the parole
plans to the counselor only two or three days after the date on
the'Plans', along with the 'Statement of the fact.' It shows
they were given to counselor in time, as the 'Statement' was re-
typed and put into the foldler at the front. Add to that, the
plaintiff was never given a time-table to have the 'Plans' turned
in, in the first place, and never told they had to be turned in until
the 3rd or 4th of August anyway." Yet, still the lying counselor
writes on the 'Plans' they were turned in to her on the 22nd of
September, still before the parole hearing,* By a Full Year. The
counselor's superiors still had "no firm resolve to make sure "No
Retaliation was taking place by removing the offending material
* (see exhibit 'H' 177-178 ) from the plaintiff's folder.

-12-

XIII Count four: The defendants have violated plaintiff's Due
Process Rights, Fifth Amendment Right of Dou-
ble jeopardy, Eight Amend. Equal Protection,
EX Post Facto Laws, Art., 1 Const.

I.  Exhaustion of Adminstration Remedies

    A. Place of Confinement,    CTF-Soledad

    B. Grievance Procedure,    CTF officials have scuttled it

    C. Presented for review?    Yes but denied at lower levels
because offending officials refuse to provide documentation of
offense. (128G given on May 19,2008, but no CSR notification copy;
See Exhibit 'I' pgs. 202-03)

    D.  Appeal number and dates; Appeals Coordinator refuses
to give appeal number on dates March 26, April7, and April 12.
2008, as action taken was illegal, underground movement.

II.  Parties

    A. Write the full name of plaintiff,    RONALD BRATTON

    B. Write names of each plaintiff & address,    CDCR employees
I(1) Plaintiff is informed and believes and thereon allege, that
defendant C. LOPEZ          is and was at all relevant times there-
in the CCI (Corectional Counselor) assigned to plaintiff's file
at all relevant times herein.  Defendant Lopez is being sued in
her official and individual capacities.  Plaintiff is futher in-
formed and believes and alleges the defendant was in charge of
preparing plaintiff's case file for classification review
I(2)  Plaintiff is informed and believes and thereon allege,
that defendant    D. CARNAZZO, FC(A)    was acting Captain at
all relevant time herein; Defendant    D. CARNAZZO    is being
sued in his/her official and individual capacities.  Plaintiff
is further informed and believes and alleges the defendant is/was
in charge of over-seeing classification scoring at CTF-Soledad
at relevant time.
I(3)  Plaintiff is informed and believes and thereon allege,
that defendant I. Guerra was and at all times relevant herein
the Captain at CTF-Soledad Unit III.  Defendant Guerra is being
sued in his/her official and individual capacities.  Plaintiff
is further informed and believes and alleges the defendant is/
was in charge of transfer movement in Unit III at relevant time.
I(4)  Plaintiff is informed and believes and thereon allege,
that defendant P.A. SANTIAGO was the Appeals Coordinator (CCII)
at all relevant times herein.  Defendant is being sued in his/
her official and individual capacities.  Plaintiff is further

-13 (a)

informed and believes and that defendant Santiago was respon-
sible for reviewing prisoners' appeals.

I.(5)  Plaintiff is informed and believes and therefore allege,
that defendant BEN CURRY was and at all relevant time herein,
the warden at CTF-Soledad.  Defendant Curry is being sued in
his official and individual capacities. Plaintiff is further
informed and believes and alleges the defendant is/was in charge
of staff supervision at CTF-Soledad, at relevant time herein.

I.(6)  Plaintiff is informed and believes and thereon allege that
Defendant SUZAN L. HUBBARD was and at all relevant time herein,
the Deputy Director(A) at CDCR, Institutions Division.  Defend-
dant Hubbard is being sued in herofficial and individual capa-
cities.  Plaintiff is further informed and believes and alleges
that defendant Hubbard was responsible for the errant misclassi-
fication as policy-maker for such unlawful transfers.

I.(7)  Jane and John Doe(s) 1 thru 20 are being sued in their
official and individual capacities.  Their names and osition will
be added as they become known during the investigation of this case.

III.   Statement of Claim (see exhibit 'I')Civil Case Retalitation." First Amendment(Free Speech
14th Amendment, Due Process Violation. Liberty Interest Viol. Ex Posto
                                                                Facto Viol
On March 26,2008 I was reclassified at my annual review and

put up for transfer to a Level 3 "Medical facility Prison, due
to a "new interpretation" of CDCR Regulations.  Per CCR title 15,
3375 "an inmate is classified in a uniform manner as he comes
through a reception center.  This classification is 'supposed' to
last throughout CDCR jurisdiction."  One of the purposes of an
annual review is to improve the inmate's condition(s) of confine-
ment by reducing or removing a previously imposed restriction.
Mandatory point levels are levied for life term convicted persons.
A 28 mandatory point level is noted for"execution type/style, un-

-13(b)-

usuallly violent, high **notoriety**, and multiple murders a level

3 placement score.  The commitee improperly determined me to be

in this category, I believe as retalitory punishment for a civil

suit prior to this. Title 15, 3375.2(A) If such restrictions were

not placed upon an inmate while coming through the reception cen-

ter then he does not fit that standard.  The plaintiff was forced

to move to Level 3-North Soledad on April 15., without CSR aproval-

notification, nor a 128(G) chrono verifying the "adverse action."

He was removed from his pay-position job, which he had worke 40

months to obtain (20 in 'F' wing, 20 in 'C' wing) after being trans-

fered to Soledad Central (level 2) in 2002, **"FOR GOOD BEHAVIOR."**

He was sent to a yard which has been on 'Lock-down' for two levels

of prisoners (Whites and Northern Hispanics) which essential put

the whole yard on 'ad-seg standards,' and because he was now unas-

signed, plaintiff could not come outside but one and a half-hours

on approximately three days a week, and not at all on weekends.

Literally the same conditions imposed on  him when he first came in-

to prison 14 years ago on a level 4 yard.  No program, and no job

for 14 years of good behavior?  I should have already paroled!!!

    The California Department of Corrections and Rehabilitation

has unilaterally initiated an illegal program whereby prisoners'

crimes of commitment are recharacterized negatively and those

prisoners, no matter how **exemplary** their conduct for many years, are

repunished by being forced to move to higher security level prisons,

where violence and rule violations are exponentially worse than

at.  level 2 institutions, where I have been housed for 6 years.

These violations endanger plaintiff's safety, and plaintiff's

necessity to stay discipline-free and involved in self-help pro-

-13(c)

grams while his case is in litigation before the courts on the
paroleboard's denial for parole "When his psychological evalu-
ation stated, "He had low to medium risk accessment to re-offend,
if he was paroled," and a clean prison record. This plaintiff
has liberty interest rights invested for his years of "Good con-
duct," because of the incentative program set-up by the CDCR to
encourage prisoners to self-discipline, and help programs. The
"transfer didnot advance legitimate goals of the of the correc-
tional institution, and was not tailored to achieve such goals."
The transfer served only to (1) retailiate against plaintiff for
filing civil suit against CDCR officials for violating his "pri-
soner's rights," and (2) Try to 'moot' the lawsuits filed by the
"Three-strikes prisoners" who had entered prison in the last ten
years with low custody points, (which this plaintiff had worked
his way down to) and were non-violent offenders, and have been
filing lawsuits for the past few years and were now at the end
of the "stalling process" the state was putting them through,
because they had no beds at the Level II levels.  Flip-floping
beds with lifers like myself by re-charactering the crimes (which
is ex-posto-facto violation), then stringing us along in Court
for the next few years, battleing a slow and over-burdened Court
system, to be placed back in the position from which we started.

     Arbitrary retaliation is not the way to avoid the legal
rights of one prisoner, "by punishing another" and starving off
goth of their rights.

IV     Relief

     The plaintiff requests compensatory, punitive, and declar-
atory relief.  Compensation at a rate of One-hundred dollars per
day for being housed in a higher, more dangerous prison "for unconsionable reasons.

-13(d)

-13(d)

The plaintiff has attached as evidence of "long term negli-
gent and/or improper care, deliberate indifference, intentional
infliction of pain and medical malpractice, multiple incidents of
"literal torture" by the CDCR and its' employees." The mistreat-
ment is 'sanctioned by the State Courts,' so therefore the CDC
functions and acts as if it is not obligated to follow the laws
concerning prisoner's rights.  The State Courts simply delay the
responses and hearings for years and/or declares the prisoner
to have "No Rights." Ex'D' 81-88  is a copy of a civil complaint
I filed with the Superior Court, in Monterey County in July 2003.
The medical 'torture' had gone on for six years, so I finally
filed the case "after trying to adjudicate the circumstance
through the state means." Four days after I filed the suit, the
medication "needed and prescribed from the only medical source
which recognized the affliction, doxepin, was reinstated." I
however had lived through six years of torture. The State Court
was still delaying the response one year after I filed it.  The
"moot" standard was then applied by the State Court. The 'dil-
ligent pursit' of resolution to the matter had continued since
December 1997. When the plaintiff thought it was resolved, he
found it to be a 'delay' until the time limit restraints for that
particular 'appeal' had passed.  A favorite 'trick' of the CDCR
officials is to separate your appeals from the 'prior attempts to
resolve the dispute in question, and or prior appeals which
would show clearly the adverse action taken by the official and/
or officials was retalitory, and not co-incidental to that ad-
verse action.  They would answer 'one of the parts separate
with, "you have no supporting documents with this complaint,"
and the other with, "This appeal was adjucated in the past."

-14-

I have had this happen several times.  Another 'ruse to deny appeal,'
is simply make up a lie for the offending official by the reviewer.'
Once you have been there, you next have to go to the State Court,
where **"where no prisoner's have any rights, even after you have
recited to them chapter and verse."**  It is no wonder most consti-
tutional predecent cases come either from California, or Texas. As
you will notice I have had several counts added to this civil case
covering a multitude of flagrant violations, all denied.  It would
have taken several years to go through the state system anyway just
to get 'Federal and State rights protected.' Several of the next
violations documented, yet to be resolved, or never adjucated due
to refusal to comply by State Officials follow.  Exhibit 'D' 89-90
first states the probable, and almost certain causation of now
what is the life changing, and threatening disease.  The CDCR
of course will not admit to what cannot be as of yet proven, but
the refusal to follow the treatment advised by the experts in the
field since given plaintiff's  medical case is unconsionable.  The
Oncologist reccommended the plaintiff be given iron, iron bind-
ing capacity and ferritin.  Dr. Shehzad Aziz named meat products
as the deficit, causing what is known to be anemia now.  One
time, and one time only has plaintiff be given iron supplement.
When his level of iron increased, it was taken away.  Duhhha!!
the only reason his iron was up was because of the supplement.
**For years now, plaintiff has been intentionally kept from life-
sustaining dietary treatment, by Doctors who have been advised
by experts.**  (See exhibit'D' 79-80____)

    Exhibit 'E' pgs.**91-93**  , shows the lack of care taken by
the staff in the handeling of plaintiff's medication, and his
attempt in resolving that issue, still ongoing.  Exhibit 'E,'

pgs. E 94-96 , ongoing request for dentures, following ten years
of dentists in the CDCR who refused to replace crowns on prior
dental work plaintiff had done before his incarceration, and
thus was "forced to have a minimum of twelve teeth pulled, sim-
ply because he could not stand the alsome pain when crowns, or
caps came off." Plaintiff was told he could either have the
teeth pulled at the times of incidents, or wait months, until
he could be put in the schedule. Consequently, plaintiff now
has no top teeth, and half of his bottom. He was first given
false teeth which were "mis-made," and has been spending, now,
going on two years to correct that.

In exhibit 'E' pgs. 97-106 plaintiff has been spending, now
going on two years, attempts to have glasses replaced which
were broken at worksight, refused service for over a year be-
cause of "unavailable or competent staff," and now going on the
third year, a decent pair of glasses. After the first year and
a half for the first pair, plaintiff received a pair which fell
apart with-in two months, and now finally in August           the
right prescription. (Ongoing since March 2004)

In April of this year in exhibit 'E'107-08 plaintiff waited
for a medication refill which never came, and when plaintiff
wrote an appeal the answering authority lied and said plain-
tiff had no such prescription. By the time it was resolved
the prescription had expired, even though it was plainly in file.

The following grounds for complaint have never been re-
solved and plaintiff is still suffering from the adverse deci-
sions taken against him, that only a Court can remedy. Even though
they went to highest level, they were still met with unconsti-
tutional answers, and distain of all prisoner's rights.

-16-

The flagrant abuse by the 'ap-
peal system of the CDC refuses to correct itself, or do justice
even when it states "Your appeal is granted." (See exhibit 'H'188, C71
Even when you are told "granted, or partially granted," the
higher levels (Sacramento) will tell any 'lie,'or set of circum-
stances that have never existed,to justify the oppression prac-
ticed through-out the system.

In ·the last instance, plaintiff is imprisoned for a murder
he never committed, has an exemplary prison record, with two
mis-deamor convictions in his adult life, yet this evil and
mean spitited 'counselor' trys to request he stay in prison,
because 'she never did a fiveminute function she should have
done six-months ago.' Her supervisor remarks, "she is not
obligated to do multi-purpose form requests." Hence the rea-
son for the '602.' Why, other than revenge, would someone disparage
a person whose misery 'feeds and clothes her? The rules and
regulations are made to prevent her from doing that, not me for
requesting she 'do her official job.'

The mental health 'care' is totally lacking in knowledge
or performance in petitioner's case. (see ex''D' 76-78,81-88
The stress put upon plaintiff for what is truly Post Tramatic
Stress Syndrome from years of oppression from various sources,
has made it necessary that he be housed in 'single-cell status,'
for all the reasons named, plus the lack of protection the
plaintiff is receiving from being housed with persons of filthy
habits 'whom constantly put plaintiff in jeopardy of infections'
from his weakened immuno-system bought on by his contraction
of leukemis, from conditions bought on by the unjust incarcer-
ation visited upon him. (see ex. 'D'.89-90) This has not been a
simple 'snatch and grab incarceration, but years of oppression.

To add 'insult to injury,' the plaintiff clearly has a
"Chronic, and life threatening disease which makes it idiotic
that he is going to do anything but seek proper medical help
when he is released.' The plaintiff is disabled, with-in all
bounds of the laws and requirements. If I return to any work
field I would have to be employed thru the State Department of
Rehabilitation in order to be bonded, and/or insured. The hate-
ful and cowardly attack upon this disabled person by disparaging
remark is surely the arrogance and insolence of person(s) gone
'power-happy,' vis sa vie, "acting under the color of authority."

"Count Four" became a continuing saga when plaintiff again,
was removed from a 'pay-position' from a "so-called non-adverse
reason," even though he again was put on a non-pay position, (3/06)
with the excuse "Not enough staff to keep job going." Of course
this created a 'neat-excuse' to relieve plaintiff from his job,
since he had gotten it back by filing the suit in exhibit 'G.'
He was given 'another non-pay position' as a porter in 'C' wing,
and told "He would receive the next pay-position that came up
when his seniority came up. On April 19,2007 after thirteen
months passed. He was not given the position. On August 1,
another position came up, which he was not also given. However
for the past two months other inmates had been asked if they
wanted a pay position. .(see 'F' 124 ) After the filing the
plaintiff was given a pay-number, but he had been working for
the past 20 months for no pay , which he should have rightly
had, in other words, over two hundred    dollars, plus all the
months he has been without pay since January 2004 unlawfully.

The continuous and unrestrained violations of prisoner's constitu-
tional rights, and oppressive conditions imposed upon them by the
CDCR and its' employees, simply because "they can," can only by ad-
judicated thru the Federal Courts, as the State Courts disavow them.

   I declare under penalty of perjury that the foregoing is true and correct.

Signed this 22ⁿᵈ day of May 2008.

Ronald Bratton

· RONALD BRATTON

   The aforementioned situations have been going on for the last five years here
at CIF, and the CDC's appeal responsees from the Director's office has been the same
"do nothing to acknowledge prisoner's rights," for the 13 years I have been in prison.
There is 'no such thing as a review in the CDCR on most issues, just a boiled room "NO."

   The medical staff has not responded to the reccommendations of the specialists
concerning my 'leukemia status, in five years.' (concerning my microcytosis and my
· diet) CDCR nor Medical has had me transferred to the medical facility at CMC where
other 'Chronic Blood Disorder patients are routinly held, and where the specialist
on my case have moved their offices, outside of the prison, to be near those patients,
most probably. The medical personal at the CMC facility would be more inclined to
take 'more care and notice' in handling patient's medicine, as the incidences concern-
ing the 'contamination of patient's medicine by 'transference' when handling inmate's
ID cards, and touching other surfaces. The timely innoculations needed, such as flu
shots for those with compromised immune systems would also be taken care of as a mat-
ter of everyday business, and not as a 'nusiance job' as those workers at this facil-
ity take it to be. Also, because of risk of personal infection because of the larger
number of inmates with contagious diseases and blood disorders, (HIV,hepatitis, etc.)
the workers take a greater notice of safeguards, instead of "trying to infect you as
punishment for your being in prison." (Thus forcing them to have to come to the job
they would not otherwise have)

   The "Granted and/or Partically Granted" concessions by 'appeal review' never
effects the result of the 'adverse action' taken against you. The records are never
changed such as "the vindictive remarks make to the parole board, and the 'hiding
of prisoner's parole plans by CCI Baker, even though 'The Board' didn't meet until
September '06,' which gave the authorities a full year to change. The 'non-adverse
job reassignments' also should have been straightened out, yet I still don't have a
pay-number three years later, "yet it's still non-adverse."

-19-

POINTS AND AUTHORITIES

The Information and Authorities of Drafted Suit have been gleaned from "Chronic Lymphocytic Leukemia," "CLL A Guide for Patients and Families," "Immunotherapy," all booklets put out by the Leukemia & Lymphoma Society, and "The Merck manual of Medical information," and "The John Hopkins Medical Handbook."

**Case Citings and References:**

U.S.C, Const. Amend. 1; Religious Land Use and Institutionalized Persons Act pf 2000.§ 3(a) 42 U.S.C.A § 2000cc 1(a); 15 CCR§§ 2062(m), 3287(b)3315(f), Mayweather v Newland 314 F.3d 1062(9th Cir 2002) Mayweathers v Newland 258 F.3d 930,934-35 (9th Cir 2001) CIV. S96-1582LKKGGH [FN1] 328F.Supp.2d 1086, Alameida v Mayweathers, 540 U.S. 815, 124 S.CT. 66,157 L.Ed. 2d 30 (2003, Thomas v Gunther, 32 F.3d 1258, 1260 (8th Cir. 1994), L4th Amend. U.S.C. 42 U.S.C. 1983, California Code of Regulations Title 15 3004(c), Holy Quran sura 5, ayat 3,5,;. California Penal Code § 2653, Williams v Morton, 343 F.3d 212 (3rd Cir 2003) Id pg 221 Id at 90-91, 107 S.Ct. 2254, Turner v Safley, 482 U.S. 78, 107Sct 2254, (6 Led. 2d 64 (1987), Will v Michigan Dept of State Police, (1989 491 U.S. 58 [109 S.ct. 2304, 105 L.ed. 2nd45], Estell v Gamble, (1976) 429 U.S. 294, 302 [111 S.ct. 2321; 115 L.Ed. 2d 64, American With Disabilities Act, and The Rehabilitation Act of 1973, 42 U.S.C. § 12131 et Seg (ADA) 29 U.S.C. § 794 (Rehabilitation Act) Pensylvania Dept of Corrections v Yeskeg, (1998) 524 U.S. 206 [118 S.Ct. 1952, 141 L.Ed. 2d 215]

# EXHIBIT  D

**INMATE/PAROLEE
APPEAL FORM**
CDC 602 (12/87)

Location: Institution/Parole Region **CTF**    **06-01670**    Category **8.21**

1. _____    1. _____    **OCT 26 2006**
2. _____    2. _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115's, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|-----------|------------------|
| RONALD BRATTON | J-45341 | C  WING PORTER | CW-133L |

**A. Describe Problem:** A mis-leading and sometimes false psychological "assessment has been written and forwarded to the parole board. I was scheduled, and met with Dr. Macomber on 5-6-06. While his report has some basis of the element of truth I found it to be mis-leading in spots, and downright false on some issues, making negative connotations which might seem critical to the board for parole consideration. It begins by first mistating the crime of which the inmate was convicted of, stating it was first degree murder, which would automatically draw the board toward their decisions of the past, many of which are viewed

If you need more space, attach one additional sheet. as "non-paroleable cases. The numbers released (pg.2

**B. Action Requested:** This inmate requests that the psychological report be revised to reflect the truth of the inmat's mental state. The disparaging remarks by the psychologist not only obfuscates the truth despite the inmate's clarity of mind in spite of the adverse circumstances he has been in. His classification as CCCMS is for medical necessity, for for psychotic behavior, or mentaly 'slow.'

Inmate/Parolee Signature: _Ronald Bratton_    Date Submitted: **May 17, 2006**

**C. INFORMAL LEVEL** (Date Received: 5/19/06 )

Staff Response: DR. MACOMBER USES HIS CLINICAL JUDGMENT IN ASSESSING YOUR REVIEW OF LIFE CRIME, LEVEL OF REMORSE, AND LEVEL OF DANGEROUSNESS, FOR THE REPORT. THIS IS HIS RESPONSIBILITY. IF THERE ARE SPECIFIC FACTUAL ERRORS (SUCH AS NAME, AGE, ETC), WE WILL CORRECT THESE.

Staff Signature: _B. Zika, Ph.D._    PH.D.    Date Returned to Inmate: 5/24/06

B. Zika, Ph.D.
Sr. Supervising Psychologist
CTF - Soledad

**D. FORMAL LEVEL**
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

The clinical judgment of the psychologist is erroneous and conveys false information to the parole board. If it is his responsibility to convey truthful and factual information then this should be forwarded to him. Until the report is corrected to reflect the truth, this non-action is not acceptable.

Signature: _Ronald Bratton_    Date Submitted: May 26, 2006

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

CDC Appeal Number: _____

**RECEIVED**    OCT 26 2006

**MAY 30 2006**

**CTF APPEALS**    CTF APPEALS

**06-01670**

(0168)
D 76

each year on parole decisions by the board attests to that fact.
.... The report immediately paints the inmate's family even worse than
it was by stating the inmate's mother 'deserted and abandoned' her family
which was not true, and inmate was never asked anything about this subject.
This 'slur' was a repeat of the mis-information relayed from the probation
report prior to inmate's confinement and seems to finger-point to the
'false psychotic temperment inmate is allegedly to have grown into.'

The report states I last saw my "legal wife" in '83', when actually
it was '93'. I may have mistakenly said the year error, as over the
years time seems to have 'melded' together, since there have been no
extra-ordinary events over the last twelve years.

The !witnesses' who allegedly described inmate as being seen in his
automobile drinking was limited to 'one man' who had an ax to grind and
came up with this 'unsubstantiated testimony' after being preped by the
D.A./ and or his investigatorss, months after the incident. This was
after the inmate had told the authorities he had been drinking prior to
the incident due to the "mis-diagnosis and treatment" of his pruritus.
As you can see from the spelling in Doctor's report, he doesn's even
know how to spell it, or how to diagnosisit. He tries to cover his lack
of knowledge about the condition by making a 'slur' of psychotic behavior'
and attaching it to the inmate. The perjured and rhetorical inflamatory
statements which were attributed to inmate, and claimed to be his "cir-
cumstantial motive for murder was "'illegally' admitted into trial to
prejudice jury against accused, most of which were caucasian and came to
'try to be put on O.J. Simpson's jury % and polled and reported to having
an 80% certainty he was quilty, a racial mind-set prior to coming to any
evidence in any trial, and mine was also being permeated with the same
racial accusations. The back-drop of this witness's prejudice stemming
from a argument three yearss prior to this incident. This witness was
miles away from this incident when it occured. "ANYTHING IN THE INMAT'S
FILE WHICH STATE "ALL OF HIS NEIGHBOR'S SAID" came from the unsubstantiated
testimony of this one person. No other persons testified to these un-
truths."

Inmate was diagnosed with "Atypical Psychosis" in 1980 following
evaluation by private and federal qualified psychiatrists. Atypical
Psychosis means it is not typical. The diagnosis is that it is caused
by "unkown organic or psychological origion," not the psychotic episodes
Dr. Macomber wants to belie inmate with.

Dr. Macomber mistates the truth when he states inmate "claims not
ever using alcohol after 14 years of age." Inmate related to the Dr. **077**

-1-                                          (over)

that the probation report belies truth of his answer when asked "when was the first time he tasted alcohol." He had replies he drank a beer at age 14 and remembers it tasted so nasty to him, he did not try alcohol again until he was 22 years old. The probation report stated inmate had been abusing alcohol since he was 14. Throughout the report thereafter Macomber represents inmate as a 'liar' and mentally impaired, because of his mental problems, and not in contact with reality. Simply because I voice the truth of oppression and victimzation by the then-authoraties in my case, and still voice the 'kangaroo-court antics surrounding my trial, and the bending of the truth of doctor's report does not qualify me to be labeled psychotic and out of touch with reality." **Just because I'm paranoid doesn't mean someone is not out to get me,"** and this doctor seemed "out to get me" from his report.

The doctor states when asked about feelings of remorse, inmate denies any. "The doctor never asked inmate this question." The doctor simply verbally referred to the inmate's "Statement of facts in his case" and made his own conclusions.

The doctor relates the incident of the "one 115" inmate had received, and makes a "racial connotation slur" against inmate. Inmate remembers he accused correctional officer of being unprofessional and "guilty of behavior the punks on the yard exhibit", after a profane oratory from C.O., yet the only mention of this incident is to try to highlight the inmate as having made a "racial remark," just as the same people who manufactured racist connotations in the 'wrongful conviction did.'

At the end of his report the doctor, along with the others that weren't there and wished to defame inmate's actions state, "alcohol was a significant factor which lead to inmate's committment "**False and perjured testimony, racism and religious intolerance are the only factors which led to inmate's unlawful incarceration.** No association in worship or falsehood against God's truth is going to change that, as AA and NA and other false indoctrination agencys advocate.

It is beyond the rational mind how the doctor would try to 'flim-flam' his report and adversely effect the parole board's decision by try to tell them a person who has practiced documentation of information in one form or another for thirty-five. (counting elementry and high school, college from 1967 through the nineties, all with a GPA of 3.5 or better, years of clerical work including his four as eligibility worker with 800 cases, and tutor and education assistant for four of the last eight years) would while sitting next to the doctor with inmate's "State of facts" before them, forget what he wrote, when he hasn't forgotten what happened twelve years ago. Only someone intent on mischief would advocate such an asinine conclusion.



# Los Falos Oncology & Hematology

## Center for Cancer Care and Blood Disorders

LOS PALOS
MEDICAL
ASSOCIATES
INCORPORATED

505 E. Romie Lane, Suite A
Salinas, California 93901-3906
(831) 755-1701    Fax (831) 755-1702

**Diplomates American Board
of Internal Medicine**

**Hematology/Oncology**
  Shehzad Aziz, M.D.
  Patrick W. Flanigan, M.D.

**Oncology**
  Laura V. Stampleman, M.D.

August 30, 2002

Inderjit Grewal, M.D.
Staff Physician and Surgeon
CTF-Soledad
P.O. Box 686
Soledad, CA 93960

RE:    **Ronald Bratton**
CDC #:  J-45341

Dear Dr. Grewal:

Your patient, Ronald Bratton, was seen in the office on 8/30/2002. This 54 -year-old
gentleman apparently developed symptoms of urinary frequency and incontinence
about two months ago. He describes some initial improvement, but his symptoms
subsequently returned. Apparently during evaluation of this problem, he was found to
have a white count of 24,900 with a repeat value of 29,400, and 60 percent
lymphocytes being described as mature cells by the reviewing pathologist. His
hemoglobin was 13.8, hematocrit 42.9 and, on both occasions, his MCV was
approximately 75. Platelet count was normal. Serum chemistry panel was essentially
normal except for an alkaline phosphatase of 116, normal being up to 115; and a
creatinine of 1.6. His cholesterol is 172, PSA is 0.6. When interviewed, he reports
that, except for mild fatigue, he's generally been doing satisfactorily. He does have the
urinary symptoms as noted above. He has not had fevers, sweats or chills. He had not
noted lumps or masses in his underarms, groin or abdomen. He has not been having
abdominal pain. He gives a history of hypertension for about 25 years and is on a
medicine that he's unable to name at this time. He has no family history of anemia,
blood diseases or other malignancies.

Multi-system review was largely unremarkable.

Physical examination showed the patient to be alert and cooperative. He was examined
with two guards present. There was no scleral icterus or oral inflammation. No
cervical, epitrochlear, axillary or inguinal lymphadenopathy. His chest was clear to
percussion and auscultation. He had no murmurs or gallops. No hepatosplenomegaly
or abdominal masses. No peripheral edema, clubbing or cyanosis.

IMPRESSION: The patient very likely has early stage chronic lymphocytic leukemia.
This diagnosis was discussed with him. The stress on the chronicity of the disease, and
the need for regular follow up and for prompt treatment of any infectious situations that
might arise. To further assess what is going on, I would suggest that you order a Direct
Coomb's test, serum protein electrophoresis, serum immunoelectrophoresis as well as a
leukemia/lymphoma panel for immunophenotyping of his peripheral blood white cells.

CONTINUED......

9/10

D79



**BRATTON, RONALD, pg. 2, 8/30/2002**

Because of his microcytosis, iron, iron binding capacity and ferritin are also
appropriate. It's possible that he could be a carrier of the thalassemia trait, but without
anemia I'm not suggesting further testing along this line at the present time. It would
be prudent to keep track of his blood count over the next few months and years to
assess the pace of his disease. Initially, I would suggest CBC and platelet counts every
two months. I would also like to see him here in the office in two months.

Thank you again for allowing me to participate in the care of your patient.

Sincerely,

Patrick W. Flanigan, M.D.

PWF:cah          PATRICK W. FLANIGAN, M.D.

Tue 9/21/07

866

RONALD BRATTON J-45341
CTF          FW-107L
P.O. BOX 689
SOLEDAD, CA 93960-0689

plaintiff in PRO. PER


SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF MONTEREY


RONALD BRATTON J-45341                    Case no:
                  Plaintiff,
                                          COMPLAINT FOR INTENTION-
                                          AL INFLICTION OF PAIN,
                                          AND/OR NEGLIGENT AND
Vs                                        IMPROPER CARE , DELIB-
                                          ERATE INDIFFERANCE OR
                                          MEDICAL MALPRACTICE

J. Hamlet
Warden; et a,l, C.T.F. SOLEDAD
MEDICAL DEPARTMENT, CHIEF MEDICAL
OFFICER, C.T.F. MEDICAL PERSONEL,
NORTH KERN STATE PRISON-DELANO
MEDICAL STAFF JANE AND JOHN DOES,
CTF MEDICAL STAFF-JANE AND JOHN DOES,1 thru 10.
M.FRIEDMAN, CTF Chief Medical Officer
Richard Early, Warden, North Kern State Prison
Dr. M. ESTNER, CTF Psychiatrist
Real party in Interest, J HAMLET, Warden
SOLEDAD CTF, ET., AL.


THE TRUE NAMES OR CAPACITIES, WHETHER INDIVIDUAL, CORPORATE,
ASSOCIATE, OR OTHERWISE, AND DEPENDARSHIP OF ABOVE NAMED
JANE AND JOHN DOES ARE UNKOWN AT THE TIME OF THE FILING OF
THIS COMPLAINT TO PLAINTIFF, WHO THEREFORE SUES SAID DE-
FENDANTS BY SUCH FICITITIOUS NAMES AND WILL ASK LEAVE OF THE
COURT TO AMEND THIS COMPLAINT TO SHOW THEIR TRUE NAMES OR
CAPACITIES AND DEFENDANT SHIP WHEN THE SAME HAVE BEEN ASCER-
TAINED.  PLAINTIFF IS INFORMED AND BELIEVES, AND BASED UPON
SUCH INFORMATION AND BELIEF, ALLEGES THAT EACH DEFENDANT DE-
SESIGNATED HEREIN AS A DOE WAS RESPONSIBLE, NEGLIGENTLY OR IN
SOME OTHER ACTIONABLE MANNER, FOR THE EVENTS AND HAPPENINGS
REFERRED TO HEREIN THAT PROXIMATELY CAUSED INJURY TO PLAIN-
TIFF AS HEREINAFTER ALLEGED.

Plaintiff is now, and has been since May 2,2002, a resident

of Monterey County as an an inmate housed at soledad, CTF.

-4-

081

1    In December 1994 plaintiff BRATTON was committed to and
2  and transferred to the California Department of Corrections,
3  to first be housed at North Kern State Prison, from the Los
4  Angeles County Superior Court. (Case no. BA 0992833) The
5  plaintiff had a long term illness, Pruritus since 1991, and
6  was on medication prescribed at the Los Angeles facility.
7  The inmate had had several medications prescribed in the
8  preceeding  12  years and the "only effective drug" which
9  controlled and relieved his condition had been the antide-
10  pressant, doxepin, called by brand name SINEQUAN.

11    The symptoms of inmate's illness was such "severe itch-
12  ing" to the point plaintiff experienced a feeling of "thou-
13  sands of knives" being slammed into the back of his head,
14  at one and the same time. Other times itching was so severe
15  plaintiff would scratch until bleeding, and ultimately in-
16  fection from bleeding.

17    After arriving at N.K.S.P. plaintiff was placed on dox-
18  epin.  After three months plaintiff was transferred to CSPS,
19  (CALIFORNIA STATE PRISON AT SACRAMENTO, FOLSOM LEVEL IV).
20  For two and one-half years the medication "doxepin" was con-
21  tinued, and plaintiff's pain, discomfort and illness was con-
22  trolled.

23    Plaintiff was transfered to N.K.S.P. Level III in Nov.
24  1997 where medication "doxepin was continued for one year
25  then terminated.  Plaintiff's symptoms (pain and itching dis-
26  comfort "immediately commenced."  The medical staff at De-
27  lano, and now Soledad, has refused to re-prescribe the "only"
28  medication which has controlled plaintiff's affliction.

(5)

1       The "regular  medical staff" doctors have "whole-hearted-
2 ly refused to prescribe the needed medication, with the excuse
3 "It is a Psychiatric problem," and the Psychiatric staff has
4 refused to administer the proper medication, DOXEPIN,, be-
5 cause they say , at least one other inmate has attempted to
6 committ suicide by saving-up the drug and taking many pills
7 at once.  The plaintiff has tried several other drugs on the
8 "approved list" and none have worked, and left severe side-eff-
9 ects.  The plaintiff has asked he be given liguid- doxepin
10 which would be given by the medical personal at pill-time,
11 which by the way has been told to plaintiff other institutions
12 do.  He has been refused.  All these medical staffs state,
13 "The No-Sinequan policy is goverened by the California De-
14 partment Of Corrections Headquarters.'

15       The result from the lack of proper medical care is that
16 plaintiff is in constant pain and discomfort and "snide re-
17 marks and badgering is all the plaintiff has received from
18 the medical staffs, at Delano, and now at CTF. ,Soledad.

19       The plaintiff has tried several other medications and
20 combinations of medications in the CDC's "pantry of medica-
21 tions" to try to alieve his pain and suffering in the past,
22 all to no avail.  Most of the medications have had severe
23 side-effects, such as stomach cramps, etc., without re-
24 lieving the itching or pain.

25       The plaintiff has currently seen and talked to no less
26 than three "regular medical doctors" and four psychiatrists,
27 as well as three psychologists to voice his complaints, all
28 with negative and/or snide remarks, since stay at CTF.



-6-

1   The plaintiff had complained to at least as many doctors
2   at Delano for the past two (or more) years as well with the
3   same negative results.

4   In the past five years the CDC officials have withheld
5   plaintiff's medication several times (prescription runs out
6   and CDC doctors take up to two months to renew and/or trans-
7   fer) and the result has been itching so severe the plantiff
8   scratches himself to infection.  Since plaintiff has been
9   diagnosed with chronic lymphocytic leukemia, and is surround-
10  ed by many contagious deadly deseases in current population,
11  risks of possible cross-contamination raises to even death.

12  The plaintiff hereby declares he has and continues to be
13  harmed and injured by the defendants violation of the EIGHTH
14  AMENDMENT OF THE CONSTITUTION under the cruel and unusual
15  punishment clause, "THE UNCESSARY AND WANTON INFLICTION OF
16  PAIN."  The defendantants are also in violation of California
17  § 844.6 d, "NEGLECTFUL OR WRONGFUL ACTS."

18  The plaintiff has found in "The Merck Medical Manuel,"
19  16th edition, diagnois and therapy, where the above named
20  drug Doxepin has been the recommended treatment for some time
21  for my affliction, yet the doctors who have been treating me
22  from CDC seem to "VAGUELY RECOGNIZE" the condition exists.

23  The plaintiff declares the defendants owe him a minimum
24  of Two-hundred Fifty thousand dollars ($250,000) for pain and
25  suffering,(or $5,000 per month for every month that has
26  elasped since the discontinuation of the drug Sinequan, which-
27  ever is more) and $750,000 (seven-hundred fifty thousand
28  dollars) in punitive damages, minimum).  (discont. Dec. 98)

-7-

1    The plaintiff further requests a "preliminary injunction"
2 be ordered, until the court can order a permanent one, to re-
3 quire the defendants to provide the * "medically recommended
4 medication doxepin " to plaintiff to relieve his suffering
5 and pain.  The dedendants have maintained that they no longer
6 issue the drug because inmates "stock-up" on the pills and
7 at least "one" tried to committ suicide.  The plaintiff has
8 always professed that he be administered the liquid form of
9 the drug, which would be given by medical staff at pill call.
10 That request was turned down even though plaintiff has been
11 told other institutions with-in the CDC do it.

12    Plaintiff is informed and believes based on the numerous
13 refusals of the California State Department of Corrections/
14 Medical Staff/ Representative's responses "intentional in-
15 fliction of pain and suffering is and has occured and court
16 action is his only course of reprisal.

17

18

19         July 24, 2003
20 Dated.  December 20, 2002              Ronald Bratton
                                        RONALD BRATTON
21                                      In Pro Per

22

23

24 *MERCK MEDICAL MANUAL OF DIAGNOSIS AND RECOMMENDED TREATMENT (1992)

25

26

27

28
                              -8-

                                        078   085

## PROOF OF SERVICE BY MAIL

### (C.C.P. §§1013A, 2015.5)

STATE OF CALIFORNIA )
                ) SS.
COUNTY OF MONTEREY )

I, RONALD BRATTON (J45341), am a resident of the State of California, County of Monterey. I am over the age of 18 years and I am/am not a party to the within action. My business/residence address is P.O. Box 689, Soledad, California 93960-0689.

On WEDNESDAY DECEMBER 25, , 2002 I served the foregoing: COMPLAINT FOR INTENTIONAL INFLICTION OF PAIN AND/OR NEGELIGENT AND IMPROPER CARE

on the parties listed below by placing a true copy thereof enclosed in a sealed envelope with postage fully prepaid in the United States mail at Soledad, California, addressed as follows:

MONTEREY COUNTY COURT
1200 AGUAJITO RD.
MONTEREY, CA 93942-4896

J. HAMLET, WARDEN
M. FRIEDMAN, CHIEF MEDICAL OFFICER
CTF SOLEDAD
P.O. BOX 689
SOLEDAD, CA 93960-0689

There is regular delivery service by the U.S. Postal Service between the place of mailing and the places so addressed.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this _____ day of _____, 20_____, at Soledad, California.

/S/ _Ronald Bratton_

RONALD BRATTON J-45341  086

STATE OF CALIFORNIA                                                          DEPARTMENT OF CORRECTIONS

**INMATE/PAROLEE
APPEAL FORM**
CDC 602 (12/87)

Location: Institution/Parole Region  Log No.  Category
1. _NKSP-A_    1. _97-1632_    _8_
2. _____    2. _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|-----------|------------------|
| Bratton | J45341 | unassigned | A4 128L |

A. Describe Problem: Suffering from a long time, nerve disorder which manifests itself through "severe itching pain," bumps, and itching rashes" accelerated by stress I requested I be moved to CMC for possible medical treatment and or cure. I found myself transferred here where so far I have been refused the only known relief for the itching discomfort, the drug centauran. I have been on the medication since my incarceration March 1994. I was receiving the medication until I was transferred here 11/19/97. The MTA tried to get me to go off the drug nilleval but when I had been put on it a year ago it gave no relief, gave sever indigestion and cramps and I had to be returned to the centauran. I put in a slip for the psychiatrist, was told by mta and psychiatrist a psychiatrist

If you need more space, attach one additional sheet. would see me soon and no results. The itching and discomfort is now becoming unbearable

B. Action Requested: The medication Centauran be reinstated as has always been prescribed since my entrance in the cdc, and or I be transferred to the medical facility of CMC where proper medical assistance might be sought. The itching and bumps are now so great as to keep me scratching 24 hours a day and infections follow!

Inmate/Parolee Signature: _Ronald Bratton_    Date Submitted: _12-18-97_

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response:

22 DEC 97

### 1st LEVEL REVIEW

Staff Signature: _____    Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

NOV - 4 1998

### 1st LEVEL REVIEW

Signature: _____    Date Submitted: _____
Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim

CDC Appeal Number: _____

RECEIVED
JUL 15 1998
INMATE APPEALS

DEC 80 06 03 11
RECEIVED
STATE APPEAL

D87

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

## DIRECTOR'S LEVEL APPEAL DECISION

Date:      September 11, 1998

In re:     Bratton, J-45341
           North Kern State Prison
           P.O. Box 567
           Delano, CA 93215-0567

           IAB CASE NUMBER:      9800706
           LOCAL LOG NO. (S):    NKSP 97-1632

           This matter was reviewed on behalf of the Director of the California Department of
           Corrections by Appeals Examiner Jack Batchelor.

### ISSUE

           This appeal is being withdrawn from consideration at the Director's Level Review
           pursuant to the appellant's request. It is noted that the appellant signed that he withdrew
           this appeal after the Second Level Response. The appellant stated the following, "602
           satisfied when he saw the Psych Mon 2-16-98."

           *J. Stocker*

      for  LINDA L. MELCHING, Chief
           Inmate Appeals Branch

           cc:    Warden, NKSP
                  Appeals Coordinator, NKSP

D88

RONALD BRATTON   J-45341
CTF              CW-133L
P.O. BOX 689
SOLEDAD, CA    93960-0689          December 30, 2005

*on your original letter and any docs you sent. *No copies retained*  εx

#### CONFIDENTIAL LEGAL MAIL

Referral Services Program
The

>, CA 94105



RECEIVED
JAN 1 2 2006
By____

Re:  Referral, Medical Causation

Dear Referral Service,

I am a fifty-seven year old man incarcerated in the California Department of Corrections since December of 1994.  When I arrived and up until May 2002 I had no hint of the medical condition I have now known as Chronic Lymphatic Leukemia.  I arrived at this institution, CTF at Soledad on May 2, 2002 in good health as far as I knew.  I was put in the "F" wing of this institution approximately May 5, 2002.  At this particular time inmates were "flooding" the cellblock by putting strips of sheets or blankets down the toilets.  The lower tier 'only' would have sewage water back up out of the toilets and flood the cells on that lower tier.  I was housed on that lower tier.  This was being done three to five days a week, and sometimes for at least two times a day.  The guards at times would wait up to a half-hour at a time before they would turn off the water to stop the sewage water from being forced up into the cells.  Sometimes we were not even allowed to shower after 'bailing' the water out of our cells and cleaning them for the hour or so it took to do so.

In August of 2002 I was then called into the infirmary and told I had contracted leukemia.  My white-cell count had risen to over 20,000.  Normal is 10.000.  It has stayed between

D89

-1-

between 16,000- 24,000 every since.  Now Chronic Lymphatic Leu-
kemia  unlike  "Acute Leukemia" does not eat up cells, but over-
produces the white cells which fight infection.  My conclussion
is that the severe exposure to the many viruses and diseased
materials contained in that sewage water I was consistantly ex-
posed to during those floodings caused this condition.   I further
conclude that the officials knew of this hazard for years and
took no steps to rectify the situation by placing drains in the
flooring or other preventative measures to lessen the serverity
of the exposures, and that by sitting back and sometimes laughing
at the inmates being flooded, through callous dis-reguard, and
not immediately turning off the water valves instead of letting
the water run for up to an hour before turning the water off,
thus increasing the exposure  and reason   my system reacted by
over-producing cells to protect my person.

I would like to have a referral to an attorney, who would
like to take the case, and knows of, or can link up to a doctor
who would back my position.

                                    Sincerely your,

                                    RONALD BRATTON

# EXHIBIT  E



STATE OF CALIFORNIA

**2ND LEVEL**

RECEIVED

DEPARTMENT OF CORRECTIONS

**INMATE/PAROLEE
APPEAL FORM**
CDC 602 (12/87)

Location: Institution/Parole Region    Log No.    AUG 2 8 2007    Category 8-18

CTF APPEALS

1 _____    1 _____

2 _____ CTF-S _____    2 **07-02262**

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

NAME Bratton, Ronald    NUMBER J-45341    ASSIGNMENT C-Wing Porter    UNIT/ROOM NUMBER CW-133L

A. Describe Problem: Two month ago I sent a '602' complaint to Medical as the nurses at the D.O.T. window were handling my pills bare-handed after collecting tens of I.D. cards from inmates, the majority of which don't wash their hands after using the rest room. I have had multiple infection in the last three years, the last of which was two months ago. I have Leukemia and easily may be infected as I have a suppressed or weaken immune system. The '602' I filed two months ago was evidently thrown away as every week a different nurse on relief at the D.O.T. window continue to handle my medication bare-handed, and cross-contaminate my pills. Tonight, 5/30/07 the nurse at the window said I will take the medication

If you need more space, attach one additional sheet. as she delivers it, and will not follow safety procedures to avoid contamination.

B. Action Requested: That all of the nurses be advised to follow "clean safety procedures" at all times to avoid possibly endangering the lives of some of us who already have chronic disease and weakened immune systems. I have been getting infections at least every three months and need sanitary procedures in place and used at all times.

Inmate/Parolee Signature: Ronald Bratton    Date Submitted: May 30, 2007

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: Nursing staff are trained to use ~~Universal~~ Universal precautions your informal is granted.

Staff Signature: J. Olivas SSA    Date Returned to Inmate: 6-5-07

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

This complaint is not directed necessarily toward "the way the nursing staff is trained, 'but toward the sterile methods they refuse to employ," as the instance I have noted, as well as the deviation "many of the relief nurses employ when monitoring the D.O.T. med line which takes more of the direct contact with patient's medication. Specific cautions need to be employed.

Signature: Ronald Bratton    RECEIVED    Date Submitted: June 19, 2007

Note: Property/Funds appeals must be accompanied by a completed    JUN 04 2007    CDC Appeal Number: 591

Board of Control form BC-1E, Inmate Claim    CTF
MEDICAL APPEALS

RECEIVED    RECEIVED    RECEIVED    **07-02262**

JUN - 18    JUN - 1 2007    AUG - 1 2007

CTF APPEALS    CTF APPEALS    CTF APPEALS

First Level    ☐ Granted    ☐ P. Granted    ☐ Denied ☐    JUN 20 2007

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: _____ Due Date AUG 2 - 2007

Interviewed by: _Hand Sanitizers are installed in all the rooms that is used for pt. care and handling medicati to ensure cleanliness and pts. safety. Also staff wear gloves and carry some hand sanitizers in their pockets using them as needed after their handling dirty materials like IDs or passes from pts._

Staff Signature: _____ Title: PN    Date Completed: 7/24/07
Division Head Approved:
Signature: _____ Title: CDD    Returned    JUL 26 2007
                                                              Date to Inmate: _____

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

THE INMATE REPEATS "THE COMPLAINT IS NOT AGAINST THE WAY THE NURSES ARE TRAINED, BUT AGAINST THEIR STAUCH REFUSAL TO EMBODY THE SAFETY PROCEDURES, AND ESPECIALLY AGAINST THE Nurse (TOLD TO ME TO BE) NAMED "MORRIS OR NORRIS" who BLANTLY TOLD THE INMATE "HE WILL TAKE THE MEDICATION ANYWHAY SHE SERVES IT," AND REFUSE TO FOLLOW SAFETY PROCEDURE. It has happened four times since the original filing of this 602, by her and other nurses. Fecal transference is a true danger.

Signature: _Ronald Bratton_    Date Submitted: _July 31, 2007_

Second Level    ☐ Granted    ☐ P. Granted    ☐ Denied    ☐ Other    8-1-07

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: _8-1-07_    Due Date: _8-29-07_
☐ See Attached Letter

_See Attached_

Signature: _____    Date Completed: _____
Warden/Superintendent Signature: _____    Date Returned to Inmate: AUG 28 2007

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

I HAVE BEEN APPEALING TO THESE NURSES FOR SIX MONTHS TO STOP THE PRACTICES OF BEAR-HANDLING" MY MEDICATION, INSTEAD OF JUST "SQEEZING THEM OUT OF THE PACKET." OUT OF THE APPROXIMATELY TEN DIFFERANT NURSES WHO ROTATE THRU THE D.O.T. WINDOW (FOUR OR FIVE EACH WEEK) I HAVE ONLY BEEN ABLE TO GET THREE OR FOUR OF THEM AT THE MOST TO DISTRIBUTE THEM PROPERLY. AT LEAST TWO OF THEM FLAGRANTLY AND/OR BLANTLY REFUSING TO DO SO (MORRIS & ONE OTHER NURSE) I PICK UP THE MEDICATION SEVEN DAYS A WEEK, AND AT LEAST ON THREE DAYS MIS HANDLING OCCURS. I SUSPECT AS A PERSON GETS USED TO THE ROUTINE THEY ARE CIRCULATED TO LEARN ANOTHER. STILL "NO BLANKET PRACTICE IS USED.

Signature: _R.W. Bratton_    Date Submitted: _Aug 30, 2007_

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION:    ☐ Granted    ☐ P. Granted    ☐ Denied    ☐ Other _____
☐ See Attached Letter

Date: _____

CDC 602 (12/87)

E92



STATE OF CALIFORNIA

DEPARTMENT OF CORRE⎯ .IONS AND REHABILITATION

CORRECTIONAL TREATMENT FACILITY -SOLEDAD

# Memorandum

Date:    August 24, 2007

To:    ~~Braton, I45341~~ Braton, I45341

Subject:  **CTF APPEAL LOG # CTF-S-07-02262**
    **SECOND LEVEL RESPONSE**

**ISSUE:** Your CDC 602 appeal states that your complaint is that nurses at the D.O.T. window are handling your pills bare handed after collecting tens of I.D. cards from inmates and the majority of which don't wash their hands after using the rest room. You claim you have suppressed or weaken immune system. You are requiring all of the nurse's bed advised to follow clean safety procedures "all times to avoid possibly endangering the lives some who have chronic disease and weakened immune systems.

**APPEAL RESPONSE:**  Your CDC appeal was partially granted at the first level of review.    D.O.T. medications are dispensed in paper cups. Hand sanitizers are installed in all rooms used for patient care and rest rooms as well as personal carry. Safety precautions are in place for medical staff to follow for protection of medical staff as well as patients.

**APPEAL DECISION:** Your Second Level appeal has been **PARTIALLYGRANTED.**

If you are dissatisfied with this decision, you may appeal to the Director's Level by completing section "H" on your appeal form, and submitting it by mail within 15 days of receipt of this response.

**J. Chudy, M.D.**
**Chief Medical Officer**
**CTF-Soledad**

E93

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

**INMATE/PAROLEE** MAR 2 0 2007    Location:   Institution/Parole Region    Log No.    Category $8 - 8$
**APPEAL FORM**

1.    07 - 01243

CDC 602 (12/87)

2.      2.

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|------------|------------------|
| Bratton, R | J.45341 | C Wing Porter | CW.133L |

A. Describe Problem: I have been waiting for dentures (to be fitted and ordered) for nine months. I received a dental request confirmation last year and have never heard anything since.

If you need more space, attach one additional sheet.

B. Action Requested: That I be fitted and given upper dentures A.S.A.P.

Inmate/Parolee Signature: Ronald Bratton      Date Submitted: March 24, 07

C. INFORMAL LEVEL (Date Received: _____

Staff Response: _____ BYPASS

Staff Signature: _____ Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

BYPASS

Signature: _____      Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed Board Control form BC-1E, Inmate Claim

CDC Appeal Number:

RECEIVED
MAY 18 2007
CTF APPE.

$07 - 0124$

$\varepsilon$ o.1

Inmate: Bhatta

Housing Unit:
C 133 L

C.D.C# J 45341

Date Request received
7-6-06

Your **DENTAL REQUEST** has been received,
Please wait for a **DENTAL DUCAT**,
If you are in pain, go to the **SICK CALL WINDOW**
Between the hours of (0700-0900) **ONLY!!**

The **DENTAL DOCTORS** are assigned to inmates with the
following C.D.C numbers:

| Dr. Repasky | 00-33 |
| Dr. Layus | 34-66 |
| Dr. Babienco | 67-99 |

Е95

First Level  ☒ Granted  ☐ P. Granted  ☐ Denied  ☐ Other

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: 5-30-07   Due Date: 10-11-07

Interviewed by: Interviewed patient on 4-18-2007
Discussed issues in 602. Granted patients
request for a dental prothesis. Discussed
when the patients next appointment, for dental
treatment, would be.

Staff Signature: David Varela DDS  Title: Dentist  Date Completed: 5-1-07
Division Head Approved:
Signature: _____  Title: CMO  Returned MAY 8 2007
Date to Inmate:

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

Dr. Verela was not the initial dentist when the prisoner's request was made.  He responded to request in over three times the limit of 15 days.  He told prisoner he would be bought in for fitting in two weeks, three wks. at most.  It is now ~~about~~ a month and still counting.  The total "wait holding pattern" is now almost a year.  Nothing has yet been resolved.

Signature: Ronald Bratton   Date Submitted: May 14, 2007

Second Level  ☒ Granted  ☐ P. Granted  ☐ Denied  ☐ Ot  MAY 1 8 2007  Due Date JUN 18 2007

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: _____  Due Date _____
☐ See Attached Letter

See Attached

Signature: _____  Date Completed: _____
Warden/Superintendent Signature: _____  Date Returned to Inmate: JUN 18 2007

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

It has been a full calander year since I have been seeking dental services, this time.  in 13 years I have been put off from receiving dental services until I have ten-thousand dollars of repair work pulled because the respective dentists would only 'pull teeth' at the institutions I was held (Including this one).  Finally on June 19 this current dentist filled three of my remaining teeth on the bottom. (All of the top have been pulled) At this point in time I still have had no fitting for neither the top or bottom, even though again, I am told to wait.

Signature: Ronald Bratton   Date Submitted: July 1, 2007

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION: ☐ Granted  ☐ P. Granted  ☐ Denied  ☐ Other _____
☐ See Attached Letter
Date: _____

CDC 602 (12/87)

E96

STATE OF CALIFORNIA                                                                DEPARTMENT OF CORRECTIONS

**INMATE/PAROLEE**
**APPEAL FORM**
CDC 602 (12/87)

| Location: | Institution/Parole Region | Log No. | Category |
|---|---|---|---|
| 1. | | 1. | |
| 2. | | 2. | |

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| BRATTON, RONALD | J-45341 | C-Wing Porter | CW-133L |

A. Describe Problem: ON OR ABOUT November of 2006, after a year's wait, I ordered new glasses because the ones I had received the previous year fell apart after two or three months. I received th glasses ordered on about April of this year. They did not have the 'change to dark feature I had asked the optometrist. for. He had said something about UV when I asked him for the feature and I presumed they would have this along with the change to 'sunglass dark' feature. I received the glasses and was told to wait a couple of months until my eyes adjusted to them. My eyes have not adjusted to them. They do not give me a clear sight from three feet on to distance, which the replaced glasses did, and I am not pleased. they didnot have the darkening

If you need more space, attach one additional sheet. feature requested.

B. Action Requested: I request the glasses be replaced with the glasses desired and requested, and especially with the distance prescription I can see with.

Inmate/Parolee Signature: _Ronald Bratton_                     Date Submitted: July 18, 2007

C. INFORMAL LEVEL (Date Received: _____
Staff Response: You will recieve a ducat to have your Rx glasses checked against your new order. Glasses that "change in color" are given to pt. that have a "medically indicated" condition or have to be purchased by having pt. money @ the time of order.

Staff Signature: _____                     Date Returned to Inmate: 8/13/07

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response. .

THIS MUSICAL CHAIRS WITH THE "appointment" TO GET FITTED FOR GLASSES HAS GONE ON FOR A SOLID YEAR "THIS" TIME, AND FOR A YEAR PRIOR BEFORE I GOT THE GLASSES WHICH FELL APART ALMOST IMMED-IATELY WHEN I RECEIVED THEM. WHEN I ORDERED THESE GLASSES I ASKED FOR "NEW GLASSES WITH THE SAME PRESCRIPTION I ALREADY HAD, ONE I COULD SEE WITH." All I'M ASKING FOR IS THAT SAME THING.

Signature: _Ronald Bratton_                     RECEIVED   Date Submitted: AUGUST 13, 2007

Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim

JUL 30 2007
MEDICAL APPEALS CTF

CDC Appeal Number:

E97

STATE OF CALIFORNIA

**INMATE/PAROLEE APPEAL FORM**
CDC 602 (12/87)



DEPARTMENT OF CORRECTIONS

2ND LEVEL

Location. Institution/Parole Region
1. CTF-C
2. JUL 2 8 2005

Log No.
1. 05-02030
2. SEP 0 6 2005

Category
8-10

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|------------|------------------|
| Ronald Bratton | J.45341 | TEX-I.165 TYA | ZW.210L |

A. Describe Problem: On Sat March 13 2004 I was working as a porter when my glasses fell off my face and broke while I was cleaning the shower. The incident was recorded and a chrono was written and sent to medical. Due to scheduling mistakes lack of personel and break down medical staff appointment I was not called into the optometrist for replacement glasses until November 2004. I was then charged on 11/17/2004 (hold code H 102)$67 sixty-seven dollars for glass replacement. I told the MTA

If you need more space, attach one additional sheet. that the glasses were for the replacement

B. Action Requested: The $67 taken from my account be put back in as the proper incident report and chrono were filed at the time of the "on job" accident resulting in the breaking of the glasses

Inmate/Parolee Signature: Ronald Bratton    Date Submitted: June 22 05

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response:

BYPASS

BRANCH

NOV 16 2005

RECEIVED

Staff Signature: _____    Date Returned to Inmate:

SEP

BR

2005

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

BYPASS

RECEIVED

Signature: _____    Date Submitted: _____
Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim

RECEIVED
RECEIVED
JUN 2 3 2005
CTF APPEALS
CTF APPEALS

RECEIVED
JUL -6 2005
CTF APPEALS

RECEIVED
JUL 2 8 2005
CTF APPEALS

RECEIVED
SEP 0 6 2005
CTF APPEALS

CDC Appeal Number:
05-02030

9.98

First Level   ☐ Granted   ☑ P. Granted   ☑ Denied   ☐ Other _____

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: JUN 23 2005   Due Date: AUG 05 2005

Interviewed by: There is no documentation that staff witnessed the glasses being broken and in your examination 10/28/04 you stated you broke your glasses 2yrs ago see attached form

You are a liar as I never talked to MD MTA told me he would look in file but never did after taking months to call inmate in. RWB

Staff Signature: _____   Title: MTA   Date Completed: 7/22/05

Division Head Approved:

Signature: _____   Title: OPD   Returned Date to Inmate JUL 28 2005

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

The MTA is a liar. I have never told anyone I broke the glasses two years ago as I have a copy of the chrono in my possition. A misprint on the origine chrono has a date on front left as two years ago but is dated at the time of incident. That shows documentation is in his file where MTA claims it isn't

Signature: R W Bralton   Date Submitted: 8-1-05

Second Level   ☐ Granted   ☐ P. Granted   ☑ Denied   ☐ Other _____

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: AUG 02 2005   Due Date: AUG 30 2005
☐ See Attached Letter

Signature: N. Dayal (MDA)   Date Completed: 9/1/05

Warden/Superintendent Signature:   Date Returned to Inmate SEP 06 2005

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

the glasses were not broken on March 2003 but March 2004 as you can see from the chrono which was done 3-13-04 but mistakenly dated 2003 at the top of chrono, I am sending a copy of that chrono as it was never asked for because from what the MTA said it was thought the chrono must have been in the file as inmate had never talked to doctor so the only way he could have got the mesinformation was from mistake on chrono

Signature: Ronald Bralton   Date Submitted: Sept 8 2005

For the Director's Review, submit all documents to:   Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION: ☐ Granted   ☐ P. Granted   ☑ Denied   ☐ Other _____   JAN 27 2006
☐ See Attached Letter   RECEIVED   Date: _____

CDC 602 (12/87)

AUG - 2 2005

CTF APPEALS

of these charges. I told the clerk that the charge should not be to inmate. He sent in the withdrawal slip anyway. I was expecting the charges to be reversed and the money returned to my account, but as of yet that has not happened. I request the Chief Medical Officer have that charge reversed as the documentation was in the medical file as to the circumstance of the glasses replacement.

Thank You

You can see from inmate's copy of the Chrono it was done on March 13, 2004, the date of the incident, not 2003. The mistake came from a typo "0" error by the clerk. However inmate's copy and copy to hospital were sent at the same time. The glasses were broken while inmate was working, cleaning the shower and the long delay is simply because institutional staff took so long in calling the inmate in for replacement, then replacing the glasses. Inmate was never asked about his "copy" of Chrono. Just told it would be looked up in medical records. The request for new glasses was put in 4/13/04

NAME and NUMBER   **BRATTON**   J–45341   **FW–107–L  UNIT III**

CDC-128-B Rev. 4/74

On Saturday March 13, 2003, Inmate **BRATTON**, J-45341, housed in FW-107-L reported that while preforming his duties as a Fox Wing Porter, cleaning the third tier shower, his eye glasses broke. The left eye glass lens popped out and shattered. Correctional Officer H. Espinoza, retrieved the broken pieces of glass and disposed of them in the Central Facility Hot Trash.

**Orig** : Central File
**cc** : Medical File
: Inmate
: Unit III File
: Writer

R. D. Wingo,
Unit III Sergeant 3/W
CTF-Central Facility

DATE       03/13/04       (BROKEN EYE GLASSES)                    **GENERAL CHRONO**

**STATE OF CALIFORNIA**

**DEPARTMENT OF CORRECTIONS**
CORRECTIONAL TREATMENT FACILITY

# Memorandum

Date:     August 25, 2005

To:       BRATTON, J45341

Subject:  **CTF APPEAL LOG # CTF-C-05-05-02030-2**
          **SECOND LEVEL RESPONSE**

**ISSUE:**     Your CDC 602 indicates that March 13, 2003 you were working as a porter when your glasses fell off your face and broke while you were cleaning the showers. The incident was recorded and a chrono was written and sent to medical. You state due to scheduling mistakes, lack of personnel and breakdown of medical staff appointment you were not called into the optometrist for replacement glasses until November 2004. You were then charged November 17, 2004 $67.00 for glass replacement. You told the MTA that the glasses were for the replacement pair broke while working and should not be charged to me. You state that he sent in the withdrawal slip anyway. You were expecting the charges to be reversed and the money returned to your account. You are requesting that the charge be reversed as the documentation was in your medical file as to the circumstance of the glass replacement.

**APPEAL RESPONSE:**   MTA Meyer interviewed and reviewed your medical file July 22, 2005. You were advised that there was no documentation in the medical file. You state that the incident was recorded and a chrono was written and sent to medical. A copy of that chrono was not found in your medical file nor did you provide a copy with your CDC 602. A thorough review of your medical file finds no CDC 7362 requesting optical for replacement glasses. You were examined October 28, 2004 by the optical department and ordered a new pair of glasses. You received those glasses January 11, 2005.

Please note that you also filed a CDC #CTF-C-00144 dated January 21, 2005 stating that the glasses you ordered were $52.00 but you were charged $67.00 and you requested $15.00 to be refunded to your account. That CDC 602 was denied. There is no documentation or any statement from you that it was job related, or from medical staff that charges would be reversed.

**APPEAL DECISION:** Your Second Level appeal has been **denied** in accordance with the policy and procedures as set forth in CCR Title 15 and DOM.

If you are dissatisfied with this decision, you may appeal to the Director's Level by completing section "H" on your appeal form, and submitting it by mail within 15 days of receipt of this response.

**Michael L. Friedman, M.D.**
**Chief Medical Officer**

E102

CALIFORNIA DEPARTMENT OF CORRECTIONS
CTF SOLEDAD/TRUST ACCOUNTING
INMATE TRUST ACCOUNTING SYSTEM
INMATE TRUST ACCOUNT STATEMENT

FOR THE PERIOD: OCT. 01, 2004 THRU JAN. 06, 2005

ACCOUNT NUMBER : J4534J                    BED/CELL NUMBER: CFZWT2000000210L
ACCOUNT NAME   : BRATTON, RONALD           ACCOUNT TYPE: I
PRIVILEGE GROUP: A

TRUST ACCOUNT ACTIVITY

| DATE | TRAN CODE | DESCRIPTION | COMMENT | CHECK NUM | DEPOSITS | WITHDRAWALS | BALANCE |
|------|------|-------------|---------|-----------|----------|-------------|---------|
| 10/01/2004 | | BEGINNING BALANCE | | | | | 582.30 |
| 10/18 | FC01 | DRAW-FAC 1 | 1286 MAIN | | | 30.00 | 552.30 |
| 11/15 | FC01 | DRAW-FAC 1 | 1618 ML | | | 30.00 | 522.30 |
| 11/22 | FR01 | CANTEEN RETUR | 401684 | | | 30.00- | 552.30 |
| 11/22 | FC01 | DRAW-FAC 1 | 1689 CAN 2 | | | 30.00 | 522.30 |
| 12/13 | FC01 | DRAW-FAC 1 | 1924 MAIN | | | 70.00 | 452.30 |
| ACTIVITY FOR 2005 | | | | | | | |
| 01/05 | D550 | INMATE PAYROL | 2151 P2 | | 13.60 | | 465.90 |

CURRENT HOLDS IN EFFECT

| DATE PLACED | HOLD CODE | DESCRIPTION | COMMENT | HOLD AMOUNT |
|-------------|-----------|-------------|---------|-------------|
| 11/17/2004 | H102 | EYEGLASSES HOLD | 1664 OPTIC | 67.00 |

TRUST ACCOUNT SUMMARY

| BEGINNING BALANCE | TOTAL DEPOSITS | TOTAL WITHDRAWALS | CURRENT BALANCE | HOLDS BALANCE | TRANSACTIONS TO BE POSTED |
|-------------------|----------------|-------------------|-----------------|---------------|---------------------------|
| 582.30 | 13.60 | 130.00 | 465.90 | 67.00 | 0.00 |

CURRENT
AVAILABLE
BALANCE
-----------------
398.90
-----------------

E103

NAME: _Bratton_   
Last _____ First _____ Middle _____   Date Of Birth ___3/11/48___ (70)   DATE: _9/3/04_

CHIEF COMPLAINT(S) _____ ↓NVA ↑DVA ~glass broke 2yr 2mo ?

HISTORY AND SYMPTOMS
Eye Health: _____ LEE sevenal w _____
General Health: Ø DM  HTN X 30 yrs   Med: Ø _____   Psych, PCN
Family History: _____   HA: Ø

Allergies: _____ NKDA

VISION REQUIREMENTS (Occupation, Avocation, Recreation, etc.) _____

| Old Rx #1 | | | Date of Rx: | | | | | | | Date of Rx: | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Sphere | Cylinder | Axis | Prism | Base | I.P.D. | Base Curve | | Sphere | Cylinder | Axis | Prism | Base |
| R | | | | | | | | R | | | | | |
| L | | | | | | | | L | | | | | |

| | Add | Seg. Hgt. | Seg. Width | Lens Type: | | | | | Add | Seg. Hgt. | Seg. Width | Lens Type: |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| R | | | | Tint/Coating: | | | | R | | | | Tint/Coating: |
| L | | | | Glass   Plastic | | | | L | | | | Glass   Plastic |

Additional Information _____   Additional Information _____

| | | | | |
|---|---|---|---|---|
| Visual Acuity (no Rx) | 6M  R  20/ | L  20/ | Binoc 20/ | Near ___ cm  R ___ L ___ Binoc ___ P.D. |
| Visual Acuity (with Rx) | 6M  R  20/ | L  20/ | Binoc 20/ | Near ___ cm  R ___ L ___ Binoc ___ |
| Cover (no Rx) | Distance | | | Binocular Near Pt. of Accommodation |
| Tests (with Rx) | | | | |

Stereopsis _____ Color Vision _____ Hirschberg Prim. _____ Jard. _____ Converg. N.P. _____
Pupil Reflexes _____ Dir. R __ L __ Cons. R __ L __ Acc. _____ Swing _____ Versions _____
Keratometry _____ R _____ L _____

| Static Retinoscopy | R | +1.25 −1.25 X 160 | 2⁵ | L | +1.25 −1.75 X 007 | 30 |
|---|---|---|---|---|---|---|
| (1) Monocular | R | | 20/ | L | 20/ | |
| (2) Binocular | R | +1.50 −1.00 X 100 | 7⁵ | L | +1.25 −7.00 X 200  007 | 30 |
| (3) Trial Lenses | R | | 20/ | L | 20/ | |
| (4) Other | R | worse w/ pluse cyl, AKs | | L | 20/ | |

Tentative Near Rx __ R _____ va: _____ L _____ va: _____
Relative Accom. at ___ cm Through _____   Neg. _____   Pos. _____

Additional Tests _____
DM + 7.00   20 − 270
Heterophoria  d: _____
n: _____
Vergences _____

Rx See Prescription Order  R +1.50 −1.00 X 100   L +1.25 −7.00 X 007  Add +2.00
No Charge _____ Subjective MVA _____ Distance Only _____ Near Only _____ Special Purpose _____

Modified Subj. (Purpose) _____   Frame: COBA 486 _____ 15
Special Instructions to Lab: _____   20 − 18 − 140
EVALUATION AND DIAGNOSIS: _____

① hyperopic astigmatism
② large C/D c low IOP

TREATMENT AND ADVICE TO PATIENT:
① RTA RTF

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

## DIRECTOR'S LEVEL APPEAL DECISION

Date: **JAN 2 7 2006**

In re:   Bratton, J-45341
Correctional Training Facility
P.O. Box 686
Soledad, CA 93960

IAB Case No.: 0505406          Local Log No.: CTF 05-02030

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner A.A. Read. All submitted documentation and supporting arguments of the parties have been considered.

**I   APPELLANT'S ARGUMENT:** It is the appellant's position that on March 13, 2004, the appellant was working as a Correctional Training Facility (CTF) porter cleaning a shower. The appellant claims that his glasses fell off his face and broke while performing his duties. The incident was recorded and a CDC Form 128-B, General Chrono was written and sent to the medical department. The appellant states that due to scheduling mistakes, lack of personnel and a breakdown by medical staff for his appointment, the appellant was not called into the optometrist for replacement glasses until November of 2004. The appellant contends that on November 17, 2004, he was charged $67.00 for the replacement of his glasses. The appellant contends that he should not be charged for the glasses since they were broke while working at his work assignment. The appellant requests that the $67.00 taken from his trust account be returned since an incident report and CDC Form 128-B were filed at the time of the "on-the-job" accident that caused the breaking of his glasses.

**II   SECOND LEVEL'S DECISION:** The reviewer found that the appellant's concerns have been properly addressed by involved and/or assigned CTF staff. The reviewer states that Medical Technical Assistant Meyer interviewed and reviewed the appellant's medical file on July 22, 2005, and the appellant was advised that there was no documentation in the medical file. The appellant indicated that the incident was recorded and a CDC Form 128-B was written and sent to the medical department. The reviewer states that a copy of that CDC Form 128-B was not found in the appellant's medical file nor did he provide a copy with his CDC Form 602, Inmate/Parolee Appeal Form. It was also stated that a thorough review of the appellant's medical file found no CDC Form 7362, Health Care Services Request, requesting the optical department for replacement glasses. The appellant was examined on October 28, 2004, by the optical department and staff ordered a new pair of glasses, which the appellant received on January 11, 2005. The reviewer noted that the appellant also filed another appeal, log #CTF-C-05-00144, dated January 21, 2005, stating that the glasses he ordered were $52.00 but the appellant was charged $67.00 for which he requested the $15.00 to be refunded to his trust account. That CDC Form 602 was denied and there was no documentation or any statement from the appellant that it was job related or from medical staff that the charges would be reversed. Based upon the aforementioned information, the Second Level of Review denied the appeal.

**III   DIRECTOR'S LEVEL DECISION:** Appeal is denied.

**A. FINDINGS:** The documentation and presented arguments are persuasive that the appellant has failed to support his appeal issue with sufficient evidence or facts to warrant a modification of the SLR. The examiner reviewed California Code of Regulations, Title 15, Section 3350, Provision for Medical Care and Definitions, and CCR 3358, Artificial Appliances, and concurs with the assessment of the institution that the appellant's appeal issues have been appropriately and properly addressed. The examiner noted the attached CDC Form 128-B, dated March 13, 2004, authored by Correctional Sergeant R. L. Wingo, which explained the incident regarding the appellant's glasses becoming broken while he was performing his job assignment. It is stated in the document that the appellant's left eye 

BRATTON, J-453
CASE NO. 0505406
PAGE 2

glass lens popped out and shattered. Correctional Officer H. Espinoza retrieved the broken pieces of glass and disposed of them in the Central Facility Hot Trash. There is nothing stated in this document that would indicate that another inmate or a staff member caused the lens to pop out of its frame nor has the appellant ever stated that this was the reason for the lens to fall out of the frame. It is the appellant's responsibility to perform normal maintenance on his glasses to ensure that all screws that hold the lens in place are tightened and in good working order. There is no basis for the appellant to assume that it is the responsibility of the institution and/or CDCR to replace his glasses under these circumstances. The examiner finds that the appellant has failed to present any new documentation and/or evidence that would substantiate his claim; therefore, justification for intervention at the Director's Level of Review is not warranted nor been established by the appellant.

**B. BASIS FOR THE DECISION:**
California Code of Regulations, Title 15, Section: 3350, 3350.1, 3354, 3354.2, 3358
CDC Operations Manual Section: 13030.10, 54046.2.3, 72010.7.2

**C. ORDER:** No changes or modifications are required by the institution.

This decision exhausts the administrative remedy available to the appellant within CDCR. If dissatisfied, the appellant may forward this issue to the California Victims Compensation and Government Claims Board, (formerly known as the State Board of Control), Government Claims Unit, P.O. Box 3035, Sacramento, CA 95812-3035, for further review.

N. GRANNIS, Chief
Inmate Appeals Branch

cc:    Warden, CTF
       Health Care Manager, CTF
       Appeals Coordinator, CTF
       Medical Appeals Analyst, CTF



STATE OF CALIFORNIA

**INMATE/PAROLEE**
**APPEAL FORM**
CDC 602 (12/87)

DEPARTMENT OF CORRECTIONS

Location: Institution/Parole Region

JUN 3 - 2007

Category $-16$

1. _____ **CTF-S**

2. _____  $_2$ 0 7 - 0 1 8 9 1

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME Bratton, R | NUMBER J-45341 | ASSIGNMENT C-Wing Porter | UNIT/ROOM NUMBER CW. 133L |

A. Describe Problem: On March first(1) I had all my medication renewed except one. When I found out when I went to my follow-up visit the first week of April I asked Dr Green to renew that medication which was the 190 antifungal cream. I watched him write it on the chart along with an order of some blood tests. I did not receive the ointment at pick-up window and finally the nurse at the window said it came back to her may that medication was not re-prescribed, I knew that was not so as I watch the doctor write it.

If you need more space, attach one additional sheet.

B. Action Requested: The medication (ointment) be given to me per the doctors order

Inmate/Parolee Signature: Ronald Bratton    Date Submitted: April 18, 2007

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: You were seen on 5/7/07. Medication was ordered for you including ointment cream.

Staff Signature: _____    Date Returned to Inmate: 5-11-07

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

This is not the truth since the ointment was ordered April 6, 2007. On 5/7/07 and other medications and ointment were prescribed. Not the Tolnaftate 10% upon which they 602 is concerned. When I went in on 5/7/07 I had the doctor look at the order which was 4/6/07 and until 8/07 (Refills).

Signature: Ronald Bratton    Date Submitted: May 16, 2007
Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim

CDC Appeal Number:

0 7 - 0 1 8 9 1

RECEIVED
MAY 18 2007
CTF APPEALS

RECEIVED
MEDICAL APPEALS
CTF
2007 05 20 APR

CTF APPEALS

**STATE OF CALIFORNIA**  **DEPARTMENT OF CORRECTIONS AND REHABILITATION**

CORRECTIONAL TREATMENT FACILITY -SOLEDAD

# Memorandum

Date:   June 28, 2007

To:   BRATTON, RONALD   J-45341

Subject:   **CTF APPEAL LOG # CTF-S-07-01891**
**FIRST LEVEL RESPONSE**

**APPEAL ISSUE:**  Your CDC 602 appeal states that you failed to receive medication which was ordered by your doctor.  You also stated that another medication was received one time only.  You are requesting your Tolnaftate and Mycolog be filled by the pharmacy.

**APPEAL RESPONSE:**  You were interviewed on 06/26/07.  After researching your file, I found out that the stickers on both were not properly signed and dated by the pick up.  The medications also expired.  I checked your feet and you still have an ongoing fungal rash in between toes and groin.  The medical doctor reordered Tolnaftate for your feet and Mycolog for your groin rash.  I advised you to pick it up in a couple of days at the pill line window.  I reminded you about good personal hygiene and proper foot care.  You stated you know because you were a medical technician in the past.

**APPEAL DECISION:**   Your First Level appeal has been **GRANTED** in accordance with the policy and procedures as set forth in CCR Title 15 and DOM.

If you are dissatisfied with this decision, you may appeal to the Director's Level by completing section "F" on your appeal form, and submitting it by mail within 15 days of receipt of this response.

**L. Fernandez, R.N.**
**Registered Nurse**
**CTF-Soledad**

**Kyle B. Sather, DDS**
**Chief Dental Officer**
**CTF-Soledad**

# EXHIBIT  F

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS
CDC 1858 (2/97)

# RIGHTS AND RESPONSIBILITY STATEMENT

*The California Department of Corrections has added departmental language (shown inside brackets, in non-boldface type) for clarification purposes.*

**Pursuant to Penal Code 148.6, anyone wishing to file an allegation of misconduct by a departmental peace officer must read, sign and submit the following statement:**

**YOU HAVE THE RIGHT TO MAKE A COMPLAINT AGAINST A POLICE OFFICER** [this includes a departmental peace officer] **FOR ANY IMPROPER POLICE** [or peace] **OFFICER CONDUCT. CALIFORNIA LAW REQUIRES THIS AGENCY TO HAVE A PROCEDURE TO INVESTIGATE CITIZENS'** [or inmates'/parolees'] **COMPLAINTS. YOU HAVE A RIGHT TO A WRITTEN DESCRIPTION OF THIS PROCEDURE. THIS AGENCY MAY FIND AFTER INVESTIGATION THAT THERE IS NOT ENOUGH EVIDENCE TO WARRANT ACTION ON YOUR COMPLAINT; EVEN IF THAT IS THE CASE, YOU HAVE THE RIGHT TO MAKE THE COMPLAINT AND HAVE IT INVESTIGATED IF YOU BELIEVE AN OFFICER BEHAVED IMPROPERLY. CITIZEN** [or inmate/parolee] **COMPLAINTS AND ANY REPORTS OR FINDINGS RELATING TO COMPLAINTS MUST BE RETAINED BY THIS AGENCY FOR AT LEAST FIVE YEARS.**

**IT IS AGAINST THE LAW TO MAKE A COMPLAINT THAT YOU KNOW TO BE FALSE. IF YOU MAKE A COMPLAINT AGAINST AN OFFICER KNOWING IT IS FALSE, YOU CAN BE PROSECUTED ON A MISDEMEANOR CHARGE.** [An inmate/parolee who makes a complaint against a departmental peace officer, knowing it is false, may be issued a serious disciplinary rule violation, in addition to being prosecuted on a misdemeanor charge.]

| COMPLAINANT'S PRINTED NAME | COMPLAINANT'S SIGNATURE | DATE SIGNED | |
|---|---|---|---|
| Ronald Bratton | Ronald Bratton | | |
| INMATE/PAROLEE PRINTED NAME | INMATE/PAROLEE'S SIGNATURE | CDC NUMBER | DATE SIGNED |
| Ronald Bratton | Ronald Bratton | J 45341 | Jan.16, 2004 |
| RECEIVING STAFF'S PRINTED NAME | RECEIVING STAFF'S SIGNATURE | DATE SIGNED | |
| | | | |

DISTRIBUTION:

ORIGINAL-
Public - Institution Head/Parole Administrator
Inmate/Parolee - Attach to CDC Form 602
Employee - Institution Head/Parole Administrator
COPY - Complainant

F-109

**INMATE/PAROLEE**
**APPEAL FORM**
CDC 602 (12/87)

Location:  Institution/Parole Region       Log No.        Category
1. ——————— CTF-C   1. **04-00256**      **13**
2. —— **MAR 02 2004**

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|------------|------------------|
| RONALD BRATTON | J-45341 | PTRCC.291  FWG3  Porter | FW-107L |

A. Describe Problem: Inmate was assinged to work position PTR CC.293 FWG3 Porter
on Sept. 24, 2002.  Inmate was a transfer from a level 3 prison, May 2, 2002,
and had had a position as education clerk for four years with a $36 pay number.
Inmates transfer was a non-adverse transfer due to lowering of custody points.
    Upon assignment inmate was first told he would have a pay position.
Inmate, during the week, called his counselor and told him he could remove him
from the clerk's waiting assignment list since he "thought" he had a pay
position which would allow him to have the mornings off to continue his fight
If you need more space, attach one additional sheet.                    (continued on attached page)

B. Action Requested: The pay number which inmate is entitled to by regulation be re-
stored to inmate.  The system by which inmates receive their pay number has
been in place for years and inmate does not want to be first to be victimez
by racism or favoritism.  Also any days pay lost be added to inmate's credit.

Inmate/Parolee Signature: Ronald Bratton             Date Submitted: January 16, 2004

C. INFORMAL LEVEL (Date Received: see attached
Staff Response: C/O Answered on copy of 602 attached with
typed response on white paper

Staff Signature: _____   Date Returned to Inmate: MAY 05 2004

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.
See attached typed formuly response Unsatisfactory
See 602 answer given by staff member

Signature: Ronald Bratton                 Date Submitted: Jun 22 2004
Note: Property/Funds appeals must be accompanied by a completed                    CDC Appeal Number:
Board of Control form BC-1E, Inmate Claim.            JUN 22 2004   MAY 07 2004

RECEIVED  RECEIVED
JAN 20 2004  JAN 23 2004

**04-00256**

F110

in the courts, by saving the use of the law library.

Inmate, a couple of days later, was told by the supervisor (C/O McGrif
his pay position was determined by the ethnic balance of inmates on his shi .
He was told that there were only six pay positions on that shift and two
belonged to Whites, two to Hispanics, and two to Blacks.   Since two Blacks
had paying positions on that shift he would have to wait until a "Black Pay
Position" opened, as per CALIFORNIA CODE OF REGULATIONS TITLE 15 3041.1 (f)
note Authority cited: Section 5058, Penal Code, Reference: Section 5054, P.Cod

During the 16 months inmate worked, at least two pay positions opened,
and inmate was again told they were Hispanic pay positions, and again assured
he would have a pay number on the first "Black Pay Position" open.   He was
also told his job would change because the pay position required a higher
level of work.   This assurance was re-inforced by the lead porter (inmate
Clay), and the clerk, both who had years on job and positive information
that this system was how it was worked here at CTF on their shift.

On January 9, 2004 a "Black Pay Pofition" opened, as one Black with a
pay position was transfered to "Y" wing.   On January 13, 2004 inmate Bratton
was assigned pay position P TRCC.289 FWG3 Porter, and given the showers to
clean, a job requiring more work.

On January 14, 2004 when C/O Martinus returned to work, he told inmate
he was taking his pay position because an Hispanic, whose assignment date was
listed as April 2003, was really August 2002, one month before inmate Bratton.
(He never explained how the inmate had two dates; whether the guy was transfer
from one shift to another, went to one wing and back, or any other situation
which would have changed his senior date)

Martinus then wrote a chrono for inmate Bratton to have another job
number issued, P TRCC.291 FWG3, a non-paying position.   A job ducat was issued
to inmate Bratton 1/16/04 with that number.   Now, only one Black has a
pay number, one White, and four Hispanics, three of which have the lesser
work jobs.   Now the harder working job for Blacks, which I have, has no pay
number.   The job which I acquired by seniority, regulation, custom, and Penal
code has been taken by either racism, or favoritism, A adverse decision had
been made without consideration or due-process.

A copy of this 602 was given to C/C Martinus January 15, 2004.   He gave Chrono
to inmate within one hour, he has had 24 hours to respond, and chooses not
to do so.   It makes me think he is seeking means of retaliation for
this obvious wrongful decision, and my reporting it.

F111

First Level  ☐ Granted  ☐ P. Granted  ☒ Denied  ☐ Other _____

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned **JAN 2 3 2004** _____ Due Date: **MAR 0 9 2004**

Interviewed by: _____ ( PLEASE SEE ATTACHED ) _____

_____

_____

_____

_____

_____

Staff Signature: _BRReynley_  Title: _Sergeant_  Date Completed: 02-28-04

Division Head Approved:

Signature: _____  Title: _____  Returned Date to Inmate: **MAR 0 2 2004** 3-5.04

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

A more rational decision is requested.  The reviewer's agreement to the use of the euphemism "alignment of work force," (which still only equates to "We may choose to give or take pay-numbers based solely on your race or likability") does not remedy the fact the accusations are true and demand reparation for th flagrant offense.  _Ronald Bralton_

Signature: _____  Date Submitted: March 9, 2004

Second Level  ☐ Granted  ☐ P. Granted  ☒ Denied  ☐ Other _____

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: **MAR 1 5 2004** _____ Due Date: **APR 1 3 2004**

☒ See Attached Letter

Signature: _Hackett, AW_  Date Completed: 4.5.04

Warden/Superintendent Signature _by QWL Brown_  Date Returned to **APR 0 7 2004**

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

The reviewer clearly out-right lies when he/she states Officer Martinus took inmate's pay-position because of work performance.  He clearly states this on the 128.  INmate has a five-year working history, all above average. C/O Martinus was the one who issued the pay-number to inmate "because he earned it by work and senority."  For reviewer to lie against documented record and for a C/O who wouldn't even tell that lie for himself is unconscionable

Signature: _____  Date Submitted: 4/11/2004

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION ☐ Granted  ☐ P. Granted  ☒ Denied  ☐ Other _____
☐ See Attached Letter

**RECEIVED**

CDC 602 (12/87)

MAR ~~1 5 2004~~ **JUL 1 2 2004**

Date: _____

~~APPEALS~~

F112

Though many factors went in the final decision to remove inmate Bratton from a pay number position (PTRCC.289) and place him into position (PTRCC.291),a non pay number it is ultimately the judgement of the supervisor to choose which individual occupies the "pay numbers". Due to the above stated I am unable to grant the request of inmate Bratton it my opinion that inmate Keller E26344 retain pay position number (PTRCC.289).

Further more inmate Keller has proved to the other officers and I that he deserves this position based on his job performance and dependability.I have attached a time sheet from the month of December reguarding inmate Bratton.

C/O Martinus,W

1-17-04

F113

FORMAL LEVEL:

The racist plott by c/c Martinus, c/o Soto and two clerk in-
mates (witnesed by inmate Bratton, inmate Clay-336U, and inmate
Anderson-218L; who also wrote the assignment chrono), to deprive
inmate Bratton of his pay number has again thickened.  C/O Martinus
now says he can take inmate's pay number and give it to who he
wants.

When inmate Bratton was given pay number it was because he
earned it and deserved it on January 13, 2004.  When c/c Martinus
returned from his off-day, he was seen and heard, first talking
to inmate clerks, then to C/o Soto.  Then he gave the lie
inmate did-not deserve pay-number because of seniority, only.
He wrote on chrono it had nothing to do with inmate's work ethnic
or ability, that it was to "align the work force."(Yes, with His-
panic inmates having the majority of the pay numbers, along with
the easier jobs) After inmate Bratton responded by serving a "602"
on c/o Martinus outlining the regulations and reasons why c/o had
no justification to take his pay number, c/o stated he could do
what he wanted because he was the supervisor.  He began expounding
other inmate' qualities why he deserved inmate Bratton's pay
number, and implying inmate Bratton did-not now deserve his pay.
number, by attaching a December record which showed inmate Bratton
had "One A day.   Other 15 months of records noticeably missing."
Inmate Bratton has had, for six working years in CDC, exceptional
work record, receiving ones and twos on work reports.  When inmate
was given chrone to take his job, he was given a "down-graded work
report, showing satisfactory only, although the only comments ever
given by any C/O's is that "he cleaned his area better than anyone
they had ever seen do it." (these comments also came from inmates.)
The one "A" day was given to inmate by the plotting of c/o Soto
after he noticed inmate did't come out to work Christmas night.
Inmate up until that point had been under the impression he had
holidays off.  If you look at the pay-sheet, you can see where
the inmate was credited with the day listed as a holiday, and hours
credited, and then with a line through it.  C/O Soto was the first
to approach inmate and have Martinus tell inmate he was being
given an "A" day, even though c/o Martinus has worked here Six
months or thereabout, and c/o Soto had been here only two.    F114

(turn over)

Inmate was qualified and had good enough work record, but after
talks with c/o Soto, Martinus though he could now justify taking
away pay-number just because he wanted to give it to "one of his
race? In the six months Martinus had been in "fox" wing, inmate
never remembers working on a holiday, even though we have locked
down for most of them.

Inmate Bratton requested information from assighment
officer on whether or not he was off on holidays, and was answered
by counselor Carnazzo that he was not. That ended that. The
comment about the giving of the "A" day has been the only commet
inmate has ever received about his work. "for the entire six-teen
months inmate has been on job."

Again c/o Martinus simply states he can take inmat's pay-
number just because he wanted to. This position was already inmate
Bratton's prior to racist plotting, and not subject to another
inmate retaining it.

"Clearly this is flagrant racism and favoritism at work!"
C/O's abuse of his authority is clearly simply, "Nigger, I gave
you the pay-number and I can take it away when-ever I want. Keep
scrubbing out the toilets for nothibg." It is the c/c who is
obviously doing the niggardly deed.

F-115

NAME and NUMBER    **BRATTON    J-45341    FW-107L    UNIT III**          CDC-128-B Rev. 4/74

On 01/13/2004, Inmate **BRATTON**, CDC# **J45341**, CELL **FW-107L**, was assigned to position **PTRCC.289    FWG3**, a paid position. He is being re-assigned to position **PTRCC.291    FWG3**, a non-pay position at the request of his supervisor. This re-assignment is non-disciplinary and does not indicate a lack of effort or ability on this inmate's part. This change is being made to realign the workforce.

**Orig**    :    Central File
**cc**    :    Inmate Assignments
          :    Inmate

                                        W. Martinus, C/O
                                        F-Wing Officer 3rd/W
                                        CTF-Central Facility

**DATE**    01/14/2004    **(JOB POSITION RE-ASSIGNMENT)**    **GENERAL CHRONO**

---

STATE OF CALIFORNIA
CDC 101 (1/92)                     **WORK SUPERVISOR'S REPORT**              DEPARTMENT OF CORRECTIONS

| GRADES | GRADE | | GRADE | |
|---|---|---|---|---|
| 1 = EXCEPTIONAL | 5 | A. DEMONSTRATED SKILL AND KNOWLEDGE | 3 | F. TEAMWORK AND PARTICIPATION |
| 2 = ABOVE AVERAGE | 3 | B. ATTITUDE TOWARD FELLOW INMATES AND WORKERS | 3 | G. LEARNING ABILITY |
| 3 = SATISFACTORY | 3 | C. ATTITUDE TOWARD SUPERVISORS AND STAFF | 3 | H. USE OF TOOLS AND EQUIPMENT |
| 4 = BELOW AVERAGE | 3 | D. INTEREST IN ASSIGNED WORK | 3 | I. QUALITY OF WORK |
| 5 = UNSATISFACTORY | 3 | E. EFFORT DISPLAYED IN ASSIGNED WORK | 3 | J. QUANTITY OF WORK |

| PAY STATUS: FROM $ .17¢ | TO: $ N/P | FROM: JOB NO. PTRCC.289 | TO: JOB NO PTRCC.291 |
|---|---|---|---|

| TOTAL # Hours Assigned: | TOTAL # Hours Worked: | | |
|---|---|---|---|

| INMATE ASSIGNED TO | DATE ASSIGNED | ACTUAL WORK CONSISTS OF | PERIOD COVERED BY REPORT |
|---|---|---|---|
| Unit III | 01/13/04 | Wing porter duties | 10/15/03-01/15/04 |

| RECOMMENDED FOR: | [X] REASSIGNMENT | [ ] RETAIN | [ ] PAY INCREASE | [X] PAY DECREASE | INMATE'S INITIALS |
|---|---|---|---|---|---|

| COMMENTS (IF MORE SPACE REQUIRED, USE REVERSE SIDE) | CODE OF SAFE PRACTICES REVIEWED SUPV'S INITIALS: | INMATE'S INITIALS: |
|---|---|---|

| SUPERVISOR | LENGTH OF SUPERVISION | WORK DETAIL | ETHNICITY |
|---|---|---|---|
| M. Hollis | 90 Days | 3rd Watch | Black |

| INMATE'S NAME | CDC NUMBER | INSTITUTION | DATE |
|---|---|---|---|
| BRATTON | J-45341 | CTF-Central | 01/15/04 |

F116

INMATE WORK SUPERVISOR'S TIME LOG

DISTRIBUTION:
WHITE - WORK SUPERVISOR
YELLOW - INMATE

DC 1697 (5/92)

| Field | Value |
|---|---|
| NUMBER | J45241 |
| INMATE'S NAME | BRATTON |
| ETHNICITY | BLACK |
| MONTH | DECEMBER |
| YEAR | 2003 |
| TITLE | WING PORTER |
| POSITION NUMBER | PTRCC.293 |
| PAY RATE (HOURLY) | N/P |
| REGULAR DAYS OFF | SU/MO |
| HOURS OF ASSIGNMENT | 1430-2130 |
| TIME CARD NUMBER | |
| SUPERVISOR'S NAME (PLEASE PRINT) | M. HOLLIS |
| TITLE | CORRECTIONAL OFFICER |
| DATE INITIATED | 12/01/03 |

| | TIME IN | TIME OUT | TIME IN | TIME OUT | TOTAL HOURS | TYPE OF TIME | MIN MET | TIME KEEPER'S SIGNATURE | DAY | | TIME IN | TIME OUT | TIME IN | TIME OUT | TOTAL HOURS | TYPE OF TIME | MIN MET | TIME KEEPER'S SIGNATURE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ☒ RDO ☐ HOL | | | | | | S | Y | | 17 | ☐ RDO ☐ HOL | 1430 | 1700 | 1730 | 2130 | 6.5 | Y | Y | |
| ☐ RDO ☐ HOL | | | | | | S | Y | | 18 | ☐ RDO ☐ HOL | 1430 | 1700 | 1730 | 2130 | 6.5 | Y | Y | |
| ☐ RDO ☐ HOL | | | | | | S | Y | | 19 | ☐ RDO ☐ HOL 1430 | 1430 | 1700 | 1730 | 2130 | 6.5 | Y | Y | |
| ☐ RDO ☐ HOL | | | | | | S | Y | | 20 | ☐ RDO ☒ HOL | 1430 | 1700 | 1730 | 2130 | 6.5 | X | Y | |
| ☐ RDO ☐ HOL | | | | | | S | Y | | 21 | ☒ RDO ☐ HOL | | | | | | R | Y | |
| ☐ RDO ☐ HOL | | | | | | S | Y | | 22 | ☒ RDO ☐ HOL | | | | | | R | Y | |
| ☒ RDO ☐ HOL | | | | | | S | Y | | 23 | ☐ RDO ☐ HOL | 1430 | 1700 | 1730 | 2130 | 6.5 | Y | Y | |
| ☒ RDO ☐ HOL | | | | | | S | Y | | 24 | ☐ RDO ☐ HOL | 1430 | 1700 | 1730 | 2130 | 6.5 | Y | Y | |
| ☐ RDO ☐ HOL | 1430 | 1730 | 1800 | 2130 | 6.5 | Y | Y | | 25 | ☐ RDO ☒ HOL | 1430 | 1700 | 1730 | 2130 | 6.5 | A Y | N Y | |
| ☐ RDO ☐ HOL | 1430 | 1730 | 1800 | 2130 | 6.5 | Y | Y | | 26 | ☐ RDO ☐ HOL | 1430 | 1700 | 1730 | 2130 | 6.5 | Y | Y | |
| ☐ RDO ☐ HOL | 1430 | 1730 | 1800 | 2130 | 6.5 | Y | Y | | 27 | ☐ RDO ☐ HOL | 1430 | 1700 | 1730 | 2130 | 6.5 | Y | Y | |
| ☐ RDO ☐ HOL | 1430 | 1730 | 1800 | 2130 | 6.5 | Y | Y | | 28 | ☒ RDO ☐ HOL | | | | | | R | Y | |
| ☐ RDO ☐ HOL | 1430 | 1700 | 1730 | 2130 | 6.5 | Y | Y | | 29 | ☒ RDO ☐ HOL | | | | | | R | Y | |
| ☒ RDO ☐ HOL | | | | | | R | Y | | 30 | ☐ RDO ☐ HOL | 1430 | 1700 | 1730 | 2130 | 6.5 | X | Y | |
| ☒ RDO ☐ HOL | | | | | | R | Y | | 31 | ☐ RDO ☐ HOL | 1430 | 1700 | 1730 | 2130 | 6.5 | Y | Y | |
| ☐ RDO ☐ HOL | 1430 | 1700 | 1730 | 2130 | 6.5 | Y | Y | | TOTAL DAYS MINIMUM MET 30 | TOTAL X HOURS WORKED 105.0 | X PAY RATE 0 | | | | TOTAL PAY 0 | | | |

R DATE(S) AND REASON(S) IF EXCEPTIONAL TIME (A,E, AND / OR S) USED: 12/1, 12/2, 12/3 Lockdown 12/4, 12/5 Lockdown
2/6 - 12/8 Lockdown 12/25 - A No stub Claimed, "I Never have worked Any Holidays."
In over a year

| TRANSFERRED IN (DATE): | DMS # | TRANSFERRED OUT (DATE): | DMS # |
|---|---|---|---|
| 09/26/02 | 02-268 | | F117 |

STATE OF CALIFORNIA
CORRECTIONAL TRAINING FACILITY

DEPARTMENT OF CORRECTIONS
INMATE/PAROLEE APPEALS SCREENING FORM

*** YOUR APPEAL IS BEING RETURNED TO YOU FOR THE FOLLOWING REASON(S) ***

| Name | CDC Number | Housing | Unit | Category |
|---|---|---|---|---|
| Bratton | J45341 | FW-107L | | |

**Your appeal is being returned to you for the following reason(s):** **Note:** *Log numbers are not assigned to screen out appeals, or informal level appeals.*

[ ] This is a BPT issue. Resubmit your appeal on a BPT 1040, Appeal Form, and send to the C&PR.

[ ] 1. The action or decision being appealed is not within the jurisdiction of the department. See **CCR 3084.3(c)(1).**

[ ] 2. You have submitted a duplicate appeal on the same issue: See **CCR 3084.3(c)(2).**

a [ ]Your first appeal is currently [ ] Completed or [ ] under review at the ______________level. Log #______________
b [ ]Your first appeal was screened-out to you with instructions. Note:______________

[ ] 3. You are appealing concerns or an action not yet taken. See **CCR 3084.3(c)(3).**

[ ] 4. You have not attempted to resolve the problem on an Informal Level pursuant to **DOM, Section 54100.8.1.** See **CCR 3084.3(c)(4).** Obtain an Informal Level response by sending your appeal directly to the following:

a [ ] Your counselor　b [ ] CCII　c [ ] Med Clinic　d [ ] Ad-Seg Prop Off　e [ ] Trust Office
f [ ] Unit Sgt.　g [ ] Dental Clinic　h [ ] R & R　i [ ] Mail Room　j [ ] Unit Officer
k[ ] Other ______________　l [ ] Records

[X] 5. You have not adequately completed the Inmate/Parolee Form (CDC 602) or attached the proper documents. See **CCR 3084.3(c)(5).** Please attach the following items or explain why they are not available and send what you have.

a ☐ CDC115 (Completed)
b ☐ CDC 115A, IE/DA information
c ☐ Supplemental Reports
d ☐ CDC 128G UCC/ICC/Ad Seg ICC/CSR
e ☐ CDC 1030 Confidential Disclosure
f ☐ CDC 114D Lockup Order
g ☐ Trust Account Statement
h ☐ OTHER: SEE COMMENTS BELOW
i ☐ CDC 839/840
j ☐ CDC 7219 Medical Report
k ☐ Legal Status Summary/Abstract of Judgment
l ☐ CDC 128C Medical Chrono
m ☐ CDC 1819 Denied Publication
n ☐ CDC 128A [X] CDC 128B
o ☐ CDC 1083 Property Inventory Receipt
p ☐ CDC 143 Property Transfer Receipt
q ☐ Cell Search Slip
r ☐ Receipts
s ☐ Failed to Complete______________
t ☐ Sign and Date Section______________
u ☐ Emergency Processing Not warranted per CCR3084.7

[ ] Attach only <u>one</u> additional page of comments (front and back). **CCR 8084.2(a)(1)**

[ ] CDC 602 or CDC 1824 is not legible, rewrite in <u>ink.</u> (Not only is this a legal document, but pencil/red ink does not copy well)

[ ] **"Reasonable Modification," CDC Form 1824** or **"Accommodation Request,"** your appeal issue and reasonable accommodation requested do not meet the criteria to be filed. Resubmit on a **CDC 602,** Inmate/Parolee Appeal Form.

[ ] You have not reasonably demonstrated your appeal issue has adversely affected your welfare, per **CCR 3084.1.(a).**

[ ] Your appeal is a request for information or services; it is not an appeal. Use form CTF 304, MULTI – PURPOSE FORM.

[ ] 6. <u>Time lapse</u> between the action or decision occurred and when you filed you appeal. **CCR 3084.3(c)(6)**
Issue occurred ______________, appeal filed ______________.

REVIEWED BY THE HIRING AUTHORITY

[ ] 7. You may not submit an appeal on behalf of another inmate. **CCR 3084.3(c)(7)**

[ ] 8. Abuse of the appeal procedure. **CCR3084.3(c)(8)**
[ ] Excessive filing. [ ] Inappropriate Statements. [ ] Excessive Verbiage. [ ] Lack of Cooperation.

**COMMENTS:** attach CDC 128B noting non pay demotion
Reviewed and categorized as work incentive and not a staff complaint
See attached 602 RWB

[X] 1st Resp [ ] 2nd Resp [ ] 3rd Resp [ ] Cancelled/Rejected **Date:** 12/04

WB Childress
**W. B. Childress, CCII**
**Appeals Coordinator**

**NOTE:** Failure to follow instruction(s) will be viewed as non-cooperation and your appeal will be automatically dismissed pursuant to CCR 3084.4(d). This screening decision may not be appealed unless you allege the above reason is inaccurate. In such a case, please return this form to the Appeals Coordinator with the necessary information. You have only 15 days to comply with the above directives

CDC 695　**PERMANENT APPEAL ATTACHMENT - DO NOT REMOVE**　E18　(CTF 07/03)

**DEPARTMENT OF CORRECTIONS**
**Correctional Training Facility**
**Soledad, California**

# First Level Reviewer's Response

**DATE:**      February 25, 2004

**TO:**      *INMATE BRATTON*      *J-45341*      *FW-107L*

**APEAL LOG No.**   *CTF-C-04-0256*

**APPEAL DECISION:**      **DENIED**

**APPEAL ISSUE:** (Work Incentive)

**APPEAL RESPONSE**:

Mr. Bratton, in your appeal you state the following:

(1) That your paid number job as a porter in F-Wing was taken from you undeservedly due to racism or favoritism, without any classification action or adverse action having taken place.

(2) That it appears the officers in F-Wing make decisions with disregard to regulations, rules or customs.

On 02-08-04, I interviewed you and you made the made the statements in addition to the aforementioned comments:

(1) That the assigned pay number be restored and that you receive all back pay since the beginning day that you were assigned the pay number porter's job.

(2) That the officers be admonished about unfair treatment in ethical relationship matter.

Based upon the aforementioned, your appeal is DENIED at the First Level of Review. Per California Code of Regulations Section 3041.2 (d), Inmate Pay Rates; In that the reduction in your rate of pay was appropriately documented on a CDC Form 128B, General Chrono, as your reassignment was non-disciplinary and did not indicate a lack of effort or ability on your part. This change was made to realign the work force. If a work supervisor has another inmate in mind for a paid position, it is that work supervisors' responsibility to produce a 128B informing the inmate he or she is being moved from the pay position.



First Level Reviewer's   se
CTF-C-04-0256
Page 2

This investigation has clearly established that the F-Wing staff member actions were not a violation of law or departmental policy and if any action or counseling were necessary, they would be conducted in confidentiality and you would not be privy to them.

Inmates shall get paid for actual time worked, this excludes "S" time, ETO and "A" time and back pay is not authorized. It is recommended that you be paid for all X-time hours that you worked while in a paid position and subsequently placed on the waiting list for an appropriate paid position when such becomes available.


B. R. Peoples
Correctional Sergeant
CTF-Central/Unit-III

I. Guerra
Facility Captain
CTF-Central/Unit-III

DEPARTMENT OF CORRECTI(
Correctional Training Facility
Soledad, California

## S U P P L E M E N T A L   P A G E

**RE:**   CTF APPEAL LOG No. *CTF-C-04-0256*
**Second Level Reviewer's Response**

*BRATTON*                 *J-45341*                      *FW-107L*

### APPEAL DECISION:

> *DENIED*

### APPEAL ISSUE:   (Work Incentive)

### APPEAL RESPONSE:

Inmate Bratton, in your appeal you state the following:

(1) That without any classification or adverse action having taken place, your pay-number job as a porter in F-Wing was taken.

(2) That you feel that the taking of this pay-number is due to racism or favoritism.

(3) That it appears the F-Wing officers make decisions with no regards to the rules, regulations and/or procedures at CTF.

(4) That the assigned pay-number be restored to you.

(5) That you receive all back pay due.

(6) That the F-Wing officers be disciplined / counseled about unfair treatment.

A thorough review of your appeals package, all of your attachments and your Central File has been completed and reveals the following:

(1) On 02/08/04, you were interviewed by Correctional Sergeant B. Peoples to provide you the opportunity to explain your appeal and present supporting information or documents. You stated that the assigned pay number be restored and that you receive all back pay since the day that you were assigned the pay number porter's job. Also that the officers be admonished about unfair treatment in ethical relationship matter.

(2) Sergeant Peoples denied your appeal at the First Level of Response.

F121

Dissatisfied with the First Level Response you submitted your appeal for a Second Level of Review.

(1) On 03-18-04, Assignment Correctional Lieutenant P. Gulley was interviewed by Correctional Lieutenant S. V. Truett, concerning this appeal. Lieutenant Gulley stated that an inmate can be released from an inmate pay-number job to a non-paying job position due to a realignment of the work force. All that was needed was a CDC-128B, General Chrono, indication that the reassignment was non-disciplinary.

(2) On 03-18-04, Correctional Officer D. Soto was interviewed by Lieutenant Truett. Officer Soto verified that as per the CCR, Title 15, Section 3041.2 (d) (2), the reduction in Inmate Bratton's rate of pay was appropriately documented on a CDC-128B.

(3) Pursuant to CCR 3040 (f), Participation:

"Any staff request for removal of an inmate from a program shall be submitted to the inmate's correctional counselor on a CDC-128B. The counselor shall refer the request to a classification committee for consideration and action."

(4) Pursuant to CCR 3041.2 (d) (2), Inmate Pay Rates:

(d) "The reason for any reduction in the rate of pay provided an inmate, including either removing the pay status from their assignment or reassigning the inmate to a non-paying position, shall be documented for the inmate's Central File as follows:

(2) "When the reason is not the fault of the inmate, including their inability to satisfactorily perform after a reasonable effort to do so, the matter will be documented on a CDC-128B."

Inmate Bratton, Correctional Officer Martinus placed you into a non-paying job number (PTRCC.-291) from the pay job position number (PTRCC.289). Officer Martinus based this decision on work performance.

You have been provided with a thorough response. You have not provided any additional information upon which to change the disposition of the First Level of Review. Therefore, based on the above, your appeal is being **DENIED** at the Second Level of Review.

Reviewed By: _____          4.5.04
              W. J. Hill, Associate Warden                 Date

              _____          4/7/04
              J. R. Solis, Warden                          Date

                                                           F-122

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA  94283-0001

## DIRECTOR'S LEVEL APPEAL DECISION

Date:  ˹JUL 1 2 2004

In re:    Bratton, J-45341
Correctional Training Facility
P.O. Box 686
Soledad, CA  93960

IAB Case No.: 0311214         Local Log No.: CTF  04-00256

This matter was reviewed on behalf of the Director of the California Department of Corrections (CDC) by Appeals Examiner Janet D. Peters, Facility Captain. All submitted documentation and supporting arguments of the parties have been considered.

I    APPELLANT'S ARGUMENT: It is the appellant's position that he transferred from a Level "III" prison for non-adverse reasons, retaining his Work Group/Privilege Group (WG/PG) "A-1/A" status. He was told he would be assigned to a pay position and initially he was. He held a job that was a paid position when he was transferred. He wants to be paid for his work.

II   SECOND LEVEL'S DECISION: The reviewer found that the appellant was assigned a pay number as the 3rd watch "F" Wing porter. The appellant then received a non-pay assignment as a porter, due to a realignment of the workforce. Apparently the work supervisor had another inmate in mind for the job and the appellant received a CDC Form 128-B, General Chrono noticing him that he would be placed in a non-pay position. The appellant was informed that the realignment was not due to a disciplinary issue. The appeal was denied at the Second Level of Review.

III  DIRECTOR'S LEVEL DECISION: Appeal is denied.

A.  FINDINGS: It appears that the appellant is enjoying all of the privileges associated with his WG/PG, including work time credits and yard access; however, he has no right to a pay position because of his previous pay position. The documentation and arguments presented are persuasive that the appellant has failed to support his appeal issue with sufficient evidence or facts to warrant a modification of the Second Level response. The appellant has no right of pay associated with the transfer. Another inmate, with higher seniority received the pay position that had formerly been assigned to the appellant. He must earn a paid assignment as one becomes available pursuant to the rules cited herein.

B.  BASIS FOR THE DECISION:
California Code of Regulations, Title 15, Section: 3001, 3040, 3041, 3041.1, 3043.6, 3044

C.  ORDER: No changes or modifications are required by the institution.

This decision exhausts the administrative remedy available to the appellant within CDC.

*T. Surges*

N. GRANNIS, Chief
Inmate Appeals Branch

cc:    Warden, CTF
Appeals Coordinator, CTF

F123

**INMATE/PAROLEE
APPEAL FORM**
CDC 602 (12/87)

| Location: | Institution/Parole Region | Log No. | Category |
|---|---|---|---|
| 1. _____ | 1. _____ | | 13-10 |
| 2. _____ | 2. _____ | | |

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| Bratton, R | J-45341 | C-Wing Porter | CW-133L |

A. Describe Problem: Every since, April 19, 2007 when one pay-porter position changed, I have wondered what happened to that pay position since I had seniority on my shift for the next pay position. I have just found out the "new hire" was given the pay number instead of me. I have been working for three months under a non-pay number since then when I should have been given that pay-number. I am on my fourth year as a porter with no pay. (2 in F wing) There seems to be a conspiracy to retaliate against me for seeking my prisoner rights by filing "602's" and appealing oppressive and abusive actions against me by some of those employed here, thus denying me my rightful

If you need more space, attach one additional sheet.    Pay positions.

B. Action Requested: The pay position questioned be switched to me retroactively, and I be paid for the back pay for the work I've been doing and unjustly not been paid the last four months

Inmate/Parolee Signature: _Ronald Bratton_    Date Submitted: _August 1, 2007_

C. INFORMAL LEVEL (Date Received: _August 6, 2007_ )

Staff Response: The inmate assignment office assigns inmates to job assignments. You were assigned to Position # PTRCC-145 on 03/16/06 which is a non-pay number. You are currently assigned to the same number, therefore no back-pay is owed to you.

Staff Signature: _C/O Lokall_    Date Returned to Inmate: _August 8, 2007_

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

This 602 Appeal addresses the "non-assignment of this prisoner from the time the pay-position opened on April 2007," not his assignment in '06, which only substantiates prisoner's claim that he was by seniority, the rightful heir to the next open pay number on his shift, and that but for the over-sight of favoritism and retaliation, by passes

Signature: _Ronald Bratton_    Date Submitted: _August 8, 200_

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

CDC Appeal Number: _____

RECEIVED
___ -2 2007
___.S

F124

# EXHIBIT  G

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

**INMATE/PAROLEE
APPEAL FORM**
CDC 602 (12/87)

2ND LEVEL

Location: Institution/Parole Region

1. _CTF-C_    AUG 2 2 2005

Log No.

1. **05 - 02426**
2. DEC 0 5 2005

Category

B-2

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| Bratton, R | J.45341 | Tex. I. 165 / unassigned | 2D 210↑ |

A. Describe Problem: On July 12.05 inmate was given a satisfactory rating on his cdc 101 and a raise at his Job (raise to start 7/1) On July 13 inmate was recalled to his cellblock as "Z" wing was recalled for a lockdown. On July 21 inmate was given an "adverse" job change to unassigned on Job change sheet. No reason was given nor inmate was contacted. The only explanation can be a discriminatory move made because this inmate was not able to transfer to East Dorm! A move that was not a criteria for the position when hired nor for inmates on "Z" shift who are also housed in Central. No classification hearing nor 128 B was generated to show Any infraction by inmate warrenting this action. (See attached page 2)
If you need more space, attach one additional sheet. TITLE 15 Rule 3040.

B. Action Requested: Inmate be returned to his job assignment immediately with the pay increase which started July 1.05. Also that he be paid for any work days in lock because of this "adverse" and illegal policy. The discrimination should be obvious. inmate has a medical condition which does'nt effect his work is arbitrary and at least mate put on "Z" shift

Inmate/Parolee Signature: _Ronald Bratton_    Date Submitted: _7-21-05_

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response:

BYPASS

Staff Signature: _____    Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

BYPASS

RECEIVED    RECEIVED    CTF APPEALS

RECEIVED

Signature: _____    Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

JUL 2 9 2005    AUG 2 2 2005    AUG 2 9 2005    NOV 2 9 2005

CDC Appeal Number G.1.25

CTF APPEALS    CTF APPEALS    CTF APPEALS    RECEIVED

**05-02426**

Exhibit C 2

I (page 2 cont.)
found

also that other inmates who had been assigned to textiles were
also transferred to unasigned. (Those on 'Y' shift who lived in
Central housing) Not anyone on 'Z' shift who lived in Central.
"It had been rumored that the supervisor did not particullary
'like' inmates who lived in Central housing on 'Y' shift and
were not willing to move to East Dorm", and were sometimes forced
to move or be transfered" Now it seems this has happened.
Although inmate had not refused to move to East Dorm, he was
restricted from going there because he has leukemia and the medi-
cation he takes to suppress extreme itching accompanying his
condition , he has to have a 'CCCMS' rating to receive his med-
ication.   His Medication is not distributed to inmates in East
Dorm (nor would they let inmate go to Central to get it, so
the medical condition demands he stay in Central.

Inmate was housed in Central and on these meds when he was
assigned to job and no criteria that he move was in institutional
policy for him nor any of the inmates on 'Y' or 'Z' shift in Cen-
tral.   Inmates have periodically, from year to year, been moved
back and forth from Central to East Dorm (lifers) and have not
been terminated from their jobs.   In fact many just moved back
to East Dorm about six months ago.

inmate was "asked" by Sargeant Warfield in the first week
of july was their any reason he could not be housed in East Dorm,
and inmate told him of medical situation.   Nothing more was said.
Nothing was in institutional policies where an inmate could be
adversely affected for not conforming to non-specified policies.
In any event inmate should have been at least transfered to 'Z'
shift if they were to make living at East Dorm a requirement to
work on "Y' shift.   They did not inform inmate of such a policy
nor made an attempt to transfer him to another shift.   Of the
five inmates terminated, they had lived in Central up to two years.

6126

STATE OF CALIFORNIA
CDC 101 (Rev. 4/82)

**WORK SUPERVISOR'S REPORT**

DEPARTMENT OF CORRECTIONS

| GRADES | GRADE | | GRADE | |
|---|---|---|---|---|
| 1 = Exceptional | 3 | A. Demonstrated Skill and Knowledge | 3 | F. Teamwork and Participation |
| 2 = Above Average | 3 | B. Attitude Toward Fellow Inmates and Workers | 3 | G. Learning Ability |
| 3 = Satisfactory | 3 | C. Attitude To Supervisors and Staff | 3 | H. Use of Tools and Equipment |
| 4 = Below Average | 3 | D. Interest in Assigned Work | 3 | I. Quality of Work |
| 5 = Unsatisfactory | 3 | E. Effort Displayed in Assigned Work | 3 | J. Quantity of Work |

| PAY STATUS: From $ 5B.35 | To $ 5A.40 | From Job No. | TEX-I.165 To Job No. SAME |
|---|---|---|---|
| Total No. Hours Assigned | | Total No. Hours Worked | LENGTH OF SUPERVISION |

| SUBJECT ASSIGNED TO | DATE ASSIGNED | ACTUAL WORK CONSISTS OF: | | PERIOD COVERED BY REPORT |
|---|---|---|---|---|
| CENT TEXT AM-Y | 11-03-04 | HEM SLEEVES | | 90 DAY |
| RECOMMEND FOR: ☐ REASSIGNMENT | ☒ RETAIN | ☒ PAY INCREASE | ☐ PAY DECREASE | INMATE'S INITIALS |

COMMENTS (IF MORE SPACE REQUIRED, USE REVERSE SIDE)

QUIET, STEADY WORKER. DEVELOPING GOOD WORK HABITS.

| SUPERVISOR | | WORK DETAIL | ETHNICITY |
|---|---|---|---|
| R. Gomez, Supervisor | 6/1/05 | P.I.A. | B |
| INMATE'S NAME | NUMBER | INSTITUTION | DATE |
| BRATTON | (46) J-45341 | CTF-C | EFF: 07-01-05 |

4920 21 or 22

---

**NAME and NUMBER:** BRATTON     J45341     **HOUSING:** ZW / 210L     CDC-128-G (4/74)

Custody:     MEDA     CTF/411 (1/96)

Screened in Absentia/Temporarily Remove from present assignment. Subject will appear in person before Classification Committee within ten (10) days for Program Evaluation.

'S' has been removed from his current assignment due 'S' moved from East Dorm to Central Mainline. Assignment requires housing in East Dorm. Classification is required This action is non-adverse. CCR Title 15 3041.2 (2) applies.

| **FROM :** | TYA S | TEX-I.165 | A1 | A | **TO :** TEMPORARILY UNASSIGNED (G) |
|---|---|---|---|---|---|
| | Location Code | Assignment | Work | Privilege | Assignment |

Committee:

P.A. Santiago, LT

CC:     Central File
        Assignment Lieutenant
        CC-II
        CC-I
        Inmate

**DATE :**     7/20/2005     **UCC Classification**     **Inst: CTF**     **CLASSIFICATION CHRONO**

---

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS
CDC-128 B (8-87)

**NAME and NUMBER**     BRATTON     J45341     ZW210L

On 04/04/05 a review of Inmate **BRATTON** CDC Number. **J45341** Central File was performed. Inmate **BRATTON** meets the criteria for placement in East Dorm.

J.L. Sareli
CCII
Unit II, CTF - Central

| ORIG | : | C-File |
| cc | : | Writer |
| | : | Inmate |

EAST DORM CLEARANCE     CTF-C     INFORMATIVE CHRONO

NUMBER: **J45341**        NAME: **BRATTON**        HOUSING: **Z-244L**        CDC-128G (Rev. 4/74)

**SUMMARY: SPECIAL – REMOVE FROM TEXTILES NON-ADVERSELY DUE TO CDC-128B DTD 7/20/05. P/O S/S & CLERICAL W/L.**

| | | | | | | |
|---|---|---|---|---|---|---|
| Custody: | MED A | Release: | MEPD 11/16/06 | Level: | II | |
| GPL: | 12.9 | Reclass: | 3/06 | CS: | 19 | |
| Priv. Group: | A | Work Group: | A1, Eff. 1/23/98 | RPS: | Lifer | |

COMMENTS: Bratton appeared before Unit II U.C.C. today for Special Review. Committee acts to remove subject non-adversely from Textiles assignment due to CDC-128B dated 7/20/05.  Committee further acts to acknowledged that all inmate's working in P.I.A. that are not housed in East Dorm has been removed from that assignment and placed in other assignments per the waiting list. Committee further acts to place subject on Support Services and Clerical waiting lists. During today's Committee, Inmate Bratton advised that he did not want to be placed on Support Services waiting list, however at the same time subject did not want to be classified as C/C status. Chairperson acted to advise that per Title 15, Section 3040 (c) (3) indicate that the basic fundamental of IWTIP requires Committee to place all inmates on a work waiting list. No other case factors noted.

CHAIRPERSON: J. L. CLANCY, FC        RECORDER: L. R. BAKER, CC-I
PANEL: J. L. CLANCY, FC; G. PEABODY, CC-I; L. R. BAKER, CC-I / jkj

Dist.:  C-file
        Inmate

Date:  8/3/2005        Classification: **SPECIAL**        Inst: CTF-C

**STATE OF CALIFORNIA**
DEPARTMENT OF CORRECTIONS

**REASONABLE MODIFICATION OR ACCOMMODATION REQUEST**
CDC 1824 (1/95)

| INSTITUTION/PAROLE REGION: | LOG NUMBER: | CATEGORY: |
|---|---|---|
| | | REGEIVED |

*NOTE:* THIS FORM IS TO BE USED ONLY BY INMATES/PAROLEES WITH DISABILITIES

AUG - 4 2005

*In processing this request, it will be verified that the inmate/parolee has a disability which is covered under the Americans With Disabilities Act.*

CTF APPEALS

| INMATE/PAROLEE'S NAME (PRINT) | CDC NUMBER | ASSIGNMENT | HOURS/WATCH | HOUSING |
|---|---|---|---|---|
| Bratton, Ronald | J.45341 | uness(gned) Textiles | P2 | 2w·144L |

In accordance with the provisions of the Americans With Disabilities Act (ADA), no qualified individuals with a disability shall, on the basis of disability, be excluded from participation in, or be denied the benefits of the services, activities, or programs of a public entity, or be subjected to discrimination.

You may use this form to request specific reasonable modification or accommodation which, if granted, would enable you to participate in a service, activity or program offered by the Department/institution/facility, for which you are otherwise qualified/eligible to participate.

Submit this completed form to the institution or facility's Appeals Coordinator's Office. A decision will be rendered within 15 working days of receipt at the Appeals Coordinator's Office and the completed form will be returned to you.

If you do not agree with the decision on this form, you may pursue further review. The decision rendered on this form constitutes a decision at the FIRST LEVEL of review.

To proceed to SECOND LEVEL, attach this form to an Inmate/Parolee Appeal Form (CDC 602) and complete section "F" of the appeal form.

Submit the appeal with attachment to the Appeals Coordinator's Office within 15 days of your receipt of the decision rendered on this request form.

If you are not satisfied with the SECOND LEVEL review decision, you may request THIRD LEVEL review as instructed on the CDC 602.

## MODIFICATION OR ACCOMMODATION REQUESTED

DESCRIPTION OF DISABILITY:
Inmate has leaukemia. Because of severe itching exasperated by stress, inmate must take medication which necessitates inmate have ccms classification and be housed in Centra

WHAT VERIFICATION DO YOU HAVE OF YOUR DISABILITY?
CDC ccms rating

DESCRIBE THE PROBLEM: On July 21 inmate was removed from job assignment (Central textiles) ith the excuse he was not housed in East Dorm. I have been ccms since 12/94 and on Job assignment since 7/04 and heaving was not a criteria. I am able to perform every job task with satisfactory ratings (see 101's) Due to this discriminatory action taken and adverse effect on my effort has accured. Monetarily and mentally. The decision to remove me from job was made without assistifcation heaving or 128 chrono issued. "2" shift inmates housed in central retained their jobs.

WHAT SPECIFIC MODIFICATION OR ACCOMMODATION IS REQUESTED? I would like my job back or reassigned t
2" shift where central housing is apparently @k as room on that shift lost their job. I am requesting to retain my AiA status until I am reinstated. Back pay for all days missed from work due to discriminatory practices.

Ronald Bratton
INMATE/PAROLEE'S SIGNATURE

Aug. 3, 2005
DATE SIGNED

ADA Appeal Screen-Out Form (Rev. 8/13/04)

# CDC-1824 ADA APPEAL SCREENING FORM

| To: I/M  BRATTON | CDC #:  J-45341 | Housing:  Z-144/L | Appeal Log # |
|---|---|---|---|

## YOUR APPEAL IS BEING RETURNED TO YOU FOR THE FOLLOWING REASON(S):

☐ The action or decision you are appealing is not within the jurisdiction of CDC, (CCR 3084.3(c)(1). ☐ Effective May 1, 2004, the BPT 1040 appeal process is no longer utilized. Issues concerning due process, grant or denial of parole, parole revocation, attorney or witness requests, early discharge, or good cause findings for hearings cannot be appealed. These types of appeal issues may now be forwarded to the court asking them to change the BPT action or decision. ☐ Issues concerning BPT clerical mistakes, mandatory discharge, credit eligibility during revocation terms, or other BPT rules of law may be addressed via a letter addressed to the BPT Quality Control Unit, 1515 "K" Street, Sixth Floor, Sacramento, CA, 95814.
☐ If the issue is related to a disability before, during, or after the hearing you may file a grievance on a BPT 1074 to the Chief Deputy Commissioner. (ARP §IV.J)

☒ You have already submitted an appeal on this same issue. CCR 3084.3(c)(2). Refer to Log # 05-02426

☐ In your appeal, you are requesting a transfer solely for medical treatment. This request is a non-American with Disabilities Act issue; therefore, your appeal was recategorized as a CDC–602 Inmate Parolee Appeal Form. (APR §IV.23.b).

☐ In your appeal, you are complaining about pain and requesting medical treatment with no indication that program access is denied or impeded. This request is a non-Americans with Disabilities Act issue; therefore your appeal was recategorized as a CDC-602 Inmate/Parolee Appeal Form. (ARP§IV.23.b).

☐ In your appeal, you do not allege that you have a disability that substantially limits a major life activity as defined in the Armstrong Remedial Plan. This request is a non-Americans with Disabilities Act issue; therefore, your appeal was recategorized as a CDC-602 Inmate/Parolee Appeal Form. (ARP§IV.23.b).

☐ You are requesting a Second Level review. However, you have not adequately explained your dissatisfaction with the First Level review. Pursuant to the Armstrong Remedial Plan, you must explain your dissatisfaction with the First Level Response and suggest an appropriate resolution. (ARP§IV.23.e).

☐ Your appeal includes both Americans with Disabilities Act (ADA) and non-ADA issues. Staff shall address your ADA issue(s) only. Your non-ADA issue(s) may be recorded on a CDC-602 Inmate/Parolee Appeal Form. (ARP§IV.23.b).

☐ You are requesting a Second Level review. However, you failed to submit the appeal within 15 working days of receipt of the First Level decision by the Division Head. Therefore, your appeal is rejected. (APR §IV.23e / CCR 3084.3(c)(6)).

☐ You have inadequately completed the CDC Form 1824 or 602 (e.g., no signature, section incomplete, missing appeal attachments etc). Correct the missing information and forward the appeal back to the Appeal Coordinator's Office. (CCR 3084.3(c)(5)).

☐ You are requesting extended Reception Center (RC) stay credits, however, you have not been in the RC for more than 60 days. Therefore, your appeal is rejected. If you have a disability that impacts placement (CDC 1845 Section C) or undergoing dialysis treatment and still in the RC more than 60 days you may file another appeal. (APR §III.A / CCR 3084.3(c)(3)).

☒ Remark(s): YOU LOST YOUR JOB BECAUSE "Y" SHIFT INMATES ARE HOUSED AT THE EAST DORM & YOU ARE NOT. STILL RETAIN A I A WG/PG STATUS.

| ☐ Please correct the indicated problems and return your appeal. | Number of Times Screened Out |
|---|---|
| Note: Failure to follow instruction(s) will be reviewed as non-cooperation and your appeal will be automatically dismissed pursuant to CCR 3084.4(d). This screening decision may not be appealed unless you allege the above reason(s) are inaccurate. In such a case, please return this form to the Appeals Coordinator with the necessary information. You have only 15 days to comply with any of the above directives. (CCR 3084.3(c)(8) / 3084.6(c)). | Date: 8-29-05  Appeals Coordinator  CC II  P.G. DENNIS |

# PERMANENT APPEAL ATTACHMENT – DO NOT REMOVE !

cc:    Inmate
       Appeal Attachment
       Appeal Office

(EX AT) 6130
LT DAS

**DEPARTMENT OF CORRECTIONS**
**Correctional Training Facility**
**Soledad, California**

## S U P P L E M E N T A L   P A G E

**RE:**   CTF APPEAL LOG No. *CTF-C-05-02426*
First Level Reviewer's Response

**NAME: Bratton, R.**          **CDC#-J45341**          **HOUSING: ZW-210-L**

**APPEAL DECISION: DENIED**

**APPEAL ISSUE:** (CAT# 13-2

**APPEAL RESPONSE:**

*Your request in this matter does not fall within the authority of this writer to grant and therefore must be denied.*
*PIA Fabric Products staff have no involvement in the selection and housing of assigned workers. It should be noted*
*that should you appeal thru the proper channels and be granted re-assignment, PIA does not pay for time not*
*worked and therefore your request for pay compensation for time lost would not be approved.*

On August 17, 2005, you were interviewed by D. Salmons to provide the opportunity to
explain your appeal and present supporting information or documents.

Mr. Bratton, you have been provided with a thorough response.
You have not provided additional information upon which to change this disposition. All
disputes which you did address, have been spoken to.

Based on the above, your appeal is *DENIED*.

D. Salmons                                              Date: August 17, 2005

CTF-PIA Fabric Products

Ext. 4921

cc:   Inmate's Central File
Appeals File

G131

First Level ☐ Granted  ☐ P. Granted  ☒ Denied  ☐ Other _____

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: JUL 2 8 2005 ___ Due Date: SEP 1 2 2005

Interviewed by: _See Attached dated 8/17/2005_ _____

_____

_____

_____

_____

_____

Staff Signature: _____  Title: SUPT. I  Date Completed: 8/17/2005

Division Head Approved: _____

Signature: _____  Title: PIA(A)  Returned Date to Inmate: AUG 22 2005

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

This 602 was not addressed to the Supervisor but to Sgt Warfield or Lt Santiago, whoever was responsible for the "unauthorized ~~transfer~~ removal" of inmate from his work assignment. This 602 had been funneled around for a month and inmate has received "no satisfactory answer for the "adverse unauthorized ~~removal~~." I request further review from those responsible.

Signature: Ronald Bratton  (see attached 1824 also)  Date Submitted: 8/26/05

Second Level  ☐ Granted  ☐ P. Granted  ☒ Denied  ☐ Other _____

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: AUG 29 2005 ___ Due Date: SEP 27 2005

☒ See Attached Letter

Signature: _____  Date Completed: 11-28-05

Warden/ Superintendent Signature: C. ___  Date Returned to Inmate: DEC 0 5 2005

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

SEE ATTACHED DATED DECEMBER 11, 2005  (pg 10-11 these forms)

_____

_____

_____

Signature: Ronald Bratton  Date Submitted: Dec 11 2005

For the Director's Review, submit all documents to:  Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

6132

DIRECTOR'S ACTION:  ☐ Granted  ☐ P. Granted  ☐ Denied  ☐ Other _____

☐ See Attached Letter

MAR 0 9 2006

CDC 602 (12/87)

## DEPARTMENT OF CORRECTIONS AND REHABILITATION
### Correctional Training Facility
### Soledad, California

## SUPPLEMENTAL PAGE

**RE:**   CTF APPEAL LOG No. **CTF- C -05-02426**
Second Level Reviewer's Response

*INMATE NAME:* **BRATTON, R**   *CDC#:* **J-45341**     *HOUSING:* **CW-133L**

**APPEAL DECISION:**     *DENIED*

**APPEAL ISSUE:**   **13 – *Work Incentive Program***

**APPEAL RESPONSE:**

In your appeal you state the following:

   (1) That you were unassigned from PIA position TEX-I.165 on July 21, 2005.

   (2) That you were unassigned without a Classification Committee authority.

A thorough review of your appeal's package, all of your attachments, and your Central File has been completed and reveals the following:

   (1) On August 17, 2005 you were interviewed by D. Salmons, PIA Textiles Supervisor for a First Level Response.

   (2) D. Salmons DENIED your appeal and stated that your removal from position TEX-I.165 due to your assigned housing was not within the authority of PIA and could not be addressed by him.

Dissatisfied with the First Level Response, you submitted your appeal for a Second Level Review.

6\33

CTF APPEAL LOG No. **CTF- C -05-02426**
Second Level Reviewer's Response
Page 2 of 2

On November 19, 2005 at my instruction, Lieutenant P. Santiago conducted a telephonic interview of you, to provide you with an opportunity to further explain your appeal and provide any supporting documentation. The information you requested to be considered, was that your removal, from position TEX-I.165, was not based on you moving from the East Dorm to the Central mainline general population. Lt. Santiago explained to you that a review of your assigned housing history, did establish that you were never housed at the East Dorm. However it was explained to you that, the Textile Y-shift positions are categorized in the Distributed Data Processing System (DDPS) as well as the current Inmate Job Descriptions, as work assignments that require those inmates to be assigned housing in the Central East Dorm. Based your assigned housing on the Central Mainline, your removal from the Y-shift textiles position TEX-I.165 on July 21, 2005 was appropriate. Further research into this appeal notes that you were placed on the appropriate textiles waiting list (Textiles Z-shift) by a Classification Committee. Your placement on this waiting list will enable you to receive a work assignment that is appropriate based on your housing on the Central Mainline.

Your position on a waiting list is related to your Work Group (WG) and Work Group Date (WGD). Mr. Bratton your WG is A1A with a WGD of 1/23/98. All A1A inmates with a work group date prior to 1/23/98 are ahead of you. You are ahead of all A1A inmates with a work group date after 1/239/98. You are ahead of all A2B inmates. If the institution receives an inmate with a "higher" WG and/or WGD he will be automatically placed on the list ahead of you. There is no maximum time limit an inmate can wait on a list before he is assigned. When your name reaches the top of a waiting list, based on your WG and WGD, you will be placed in a program, where your custody and housing allows. It is the policy of the California Department of Corrections that all vacant inmate assignment positions be filled utilizing the Distributed Data Processing System (DDPS). The Correctional Training Facility Inmate Assignment Office (IAO) follows this policy.

You have been provided with a thorough response. You have not provided any additional information upon which to change the disposition of the First Level Reviewer.

Therefore, based on the above, your appeal is being DENIED, at the Second Level of Review.

Reviewed By: _____        11-28-2005
                P. Barker, Chief Deputy Warden                Date

               _____        11/28/05
                A. P. Kane, Warden (A)                Date

cc:    Appeals Office File
       Inmate's Central File

G-134

State of California
CDC FORM 695
Screening For:
CDC 602 Inmate/Parolee Appeals
CDC 1824 Reasonable Modification or Accommodation Request

RE: Screening at the INFORMAL Level

*August 8, 2005*

**BRATTON, J45341**
*CFZWT2000000244L*

Log Number: CTF-C-
(Note: Log numbers are not assigned to screen out appeals, or informal level appeals)

The enclosed documents are being returned to you for the following reasons:

*Your appeal issue and reasonable accommodation requested do not meet the criteria to be filed on a CDC Form 1824. Please resubmit on a CDC Form 602, Inmate/Parolee Appeal Form.*

W. B. Childress / P. G. Dennis
Appeals Coordinators
Correctional Training Facility

**NOTE:** Failure to follow instruction(s) will be viewed as non-cooperation and your appeal will be automatically dismissed pursuant to CCR 3084.4(d). This screening decision may not be appealed. If you believe this screen out is in error, please return this form to the Appeals Coordinator with an explanation of why you believe it to be in error, and supporting documents. You have only 15 days to comply with the above directives.

6135

**PERMANENT APPEAL ATTACHMENT – DO NOT REMOVE**

EX A3

The answer given to this 1824 informal request by W.B. Childress
and co-signed by p.g. Dennis is in contridiction to the reason-
able request standards.  On 4/4/05 inmate clearly meets the cri-
terion to be lived in East Dorm.  "THE ONLY REASON INMATE COULD NOT
BE TRANSFERED TO EAST DORM WAS BECAUSE HIS DISABILITY REQUIRED HIM
TO BE GIVEN TREATMENT WHICH WOULD NOT HAVE GIVEN HIM IF HE WAS
HOUSED AT THE EAST GATE DORM."

        In spite of the fact inmate was terminated against CDC policies,
inmate's medical condition was the only "false excuse" which could
have been used for this abuse and arbitrary decision.

        The inmate has been diagnosed with Chronic Leukemia and along
with that a condition diagnosed as "Pruritus." (L fr pruie to itch
relating to generalized itching due to irritation of sensory nerve
endings from organic or psychogenic causes)  THE RECOMMENED TREAT-
MENT ACCORDING TO THE PHYSICIAN'S HANDBOOK IS THE PRESCRIBED MEDI-
CATION "DOXIPIN."  The medication which the DDC institution at CTF
Central, Xoledad, will not distribute to inmate if he is moved to
East Dorm.

        As you can see from the chrone issued 7/21/05 the "only reason
stated for inmate's removal from the textiles work program was 'S'
moved from from East Dorm to Central mainline.  assignment requires
housing in East Dorm."  (see attached exibits)

        The first lie is that the inmate moved from East Dorm to Cen-
tral.  This inmate has never been housed at East Dorm.  The second
is that it has never been voiced that a inmate had to be housed in
East Dorm to work at textiles.  While it has been known that "most
of the inmate's that work on 'Y' shift have lived at East Dorm while
the inmate's which work on 'Z' shift have been housed at Central,it
has not been known as the "etched in stone rule."  Of the five
workers who were 'fired' we have been housed in central from eight
months to two years.  None of us ever bewing housed at East Dorm.

        "If there was to be a change in policy and a rule instituted
that inmates would have to be housed at East Dorm, a modification
or accommodation for the inmate due to his disability would have
been to have him transfered to the 'Z' shift which is still housed
in Central."

        The inmates removed from the 'Y' shift textiles assignment
were neither counseled, nor allowed to change shifts before they
were removed from the program.  The Title 15 and DOm read as follows:
                                              (see other side)

3044 Title 15

(4) A permanent change of an inmate's privilege group shall
be made "only by classification committee action under provisions
of section 3375

3375 (f)(1)

Inmates shall be given written notice **at least 72 hours in
advance of a hearing which could result in an adverse effect**

Adverse effect as defined as;

(d) Involultary removal from an assigned program

(d) the frason for any reduction in the pay rate of pay provided
an inmate, including either removing the pay status from their
assignmant or reassigning the inmate to a nonpaid position, shall
be documented fro the inmate's central file as follows

(2) **When the reason is not the fault of the inmate, including
their inability to satisfactorily perform after a reasonable effort
to do so, the matter shall be documented on a cdc form**

The inmate's contention is that the wholesale removal of
inmates housed in Central and working on 'Y' shift **was a vindictive
and retaliatory strike because this inmate filed a '602' for an**
**act of discrimination by the supervisors on his job on April 28,**
2002. This action was not answered until 7/28/05, after the inmates
were terminated from their jobs.

There was no answer for the act in April that was satisfactory,
and this act of removal was a cowardly way to retaliate for it.

G137



RONALD BRATTON    J-45341
CTF              CW-133L
P.O. BOX 689
SOLEDAD, CA 93960-0689
In Pro Per

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF MONTEREY


In re

No._____

PETITION FOR WRIT OF
HABEAS CORPUS AND
RONALD BRATTON    MEMORANDUM OF POINTS
A.P. KANE, Warden, et al    AND AUTHORITIES IN
Sgt Warfield, Corrections Officer    SUPPORT THEREOF.
On Habeas Corpus Lt. Santiago, assignment Lt.
Capt Pope, Supervisor

I

## INTRODUCTION

Petitioner was removed from his prison job in prison indus-
tries without due process and in violation of Federal Rights
under Subtitle A of Title II of The Americans with Disabiltly
Act (ADA) 42 USC 12131 et seg

## PARTIES

Petitioner, RONALD BRATTON, is a prisoner of the State of
California incarcerated at CTF, Soledad, CA. A.P. KANE is the
warden of the prison and the legal custodian of petitioner. Sgt.
Warfield is the corrections officier charged with initiating the
removal of petitioner from his job with the co-operation of Capt.
Pope and Lt. Santiago, the assignment lieutenant.

The petitioner was employed as a sewing maching operator
in the "textiles" factory, a divison of prison industries. By the
exclusion of petitioner from working in the textiles P.I.A, the
above named persons conspired to cause a deprivation of a federal
right, the right to an opportunity to work in a program sponsered

-1-

G138

and provided by a public entity. By imposing an arbitrary and never before heard of requirement to be working in the position that the petitioner had been working in for eight months, and the other inmates involved for two years, the respondents set a standard which could not be met by the disabled petitioner, and did not seek to even attempt to make a reasonable accommadation, which was easily and readily available. The respondents neither counseled or warned the indiviuals involved, nor made any attempt to contact the committee, which was set in place to check such arbitrary adverse actions

## STATEMENT OF FACTS

On April 28,2005 this petitioner filed a '602' appeal against his supervisor and custody authorities protesting a prejudicial policy against himself and four other assigned workers on "Y" shift testile crew. A copy of that appeal is attached (exhibit 'A'). The appeal response was drawn out for several months, and instead of dealing with the appeal justly, a retalitory counter-attack was initiated by the prison officials, and the five workers involved which were prejudicially exempted from privileges which other wokers had received were terminated by a 'false' and arbitrary condition never before observed at this prison. (at least not known by any of the workers or staff which had been working for the last ten years in any position in textiles) That condition was that here-to-fore all workers working on "Y" shift (the shift we were working on) was to be housed at East Dorm, here-to-fore a privileged unit, by choice only. The 'ruse' was that it had to do with security issues.

This answer and ruse does not fly in the light of the fact none of the five inmates terminated had ever lived at East Dorm, and even the supervisor who had worked at his job for years had never heard such a policy enforced before. The rest of it is that

-2-

G139

thirty-eight other inmates, all with the same level of security as
those terminated still maintained their jobs, but were assigned to
"Z" shift textiles, were housed also in Central, as petitioner and
others terminated.  The worked the same hours, just different days
from "Y" shift.  There were also a hundred or so other inmate wor-
kers working in  carpentry, plumbing, and print-shop to name a
few who also had the same level of security as the "Y" shift inmates
persecuted, and who also housed in Central.  In the event of lock-downs
the supervisors simply put in a "critical-workers list" and the
"Z" shift or any other worker who was listed, was to be still al-
lowed to go to work, with only extreme situation exemptions.

This petitioner had the same security rating as those housed
at East Dorm and the only thing keeping him from living there was
his medical condition. (see exhibit  B 4)  I suffer from a condition
condition diagnosed as 'pruitus'.

This affliction demands I use the medicine "Doxipin" to cur-
tail the severe effects of the itching caused by it.  That medi-
cation is considered a anti-depressant and the prison officials
demand a CCCMS classification be attached to the person who uses
it.  (This is a classified mental disability status)  The authorities
here will not dispense that medicine to inmates who are housed in
East Dorm.  Thus, my disability which is chronic, demands an ac-
comodation be made by the public entity by whom I am employed and
housed to utitilize  the services provided by that entity, the work
to which I had been employed.  In this case the accommadation would
have been transfer me to "Z" shift, a shift which is housed in Cen-
tral housing, not terminated from a job in which if not for my dis-
ability I would have been otherwise qualified to still work.

-3-

6140

## CONTENTIONS

Again, the truth of the matter is that the termination was for retalitation against this inmate for writing up the supervisory and custody staff for prejudicial actions gainst the five inmate workers "formally on "Y" shift and housed at Central. <u>None of the inmates housed in East Dorm has any less of a security clearence than the five inmates terminated nor wá's there any special factor involved for them to work in textiles</u>, except inmates with life sentences who have alternately been housed at 'both' Central and East Dorm. This has gone on for years. The '602' filed for prejudice was not even answered until July 28,2005 (see Exhibit A5), over a month after inmates were wrongfully terminated.

Even though the "drag" is that this was a non-adverse removal from job position the truth is inmate has not only suffered monetary loss of approximately fifty dollars per month (plus two pay grades), but the worst effect is the unfavorable report to The Board of Prison Terms because now the vocational training he was involved in which had given inmate a favorable outlook for work edicate etc. has now been negated, and or neutralized.

This petitioner requests the prison officials return this inmate to his former position with all priveleges and raises due him **immediately** and if the official then want to transfer him to the "Z" shift instead of having him work the "Y" shift proceed as they should have done in the first place for the proper transfer. The petitioner requests this be done with an injunction before the litagation of this case as petitioner will continue to continue to be oppressed by this unjust circumstance until he is made whole.

It is vital that problem be resolved promptly, because the CDC has met none of the response times, nor given any indication

G14\

they intend to do so.  In fact they have missed two responses by

a margin of over thirty days.  I have written the appeals coordinator

three times in the last month for a response that was due from him

September 27,2005 to no avail.  At the informal level the "602"

was delibertly sent to the wrong person, my supervisor, who could

only respond that he had nothing to do with the transfer, nor knew

of it until after it was done.  That took over a month.  The 602

was then sent to the second level, the appeals coordinator and was

rightfully due in Aug., but has not been responded to.

    I argue that the court should proceed to hear this case be-

cause the appeal system within the CDC is inadequate to resolve

this matter and frankly don't give a damn about inmate rights.

A timely and just fashion is not and has not been forthcoming

through the appeal channels within the prison system and irrepair

able injury is resulting as prisoner await the non-decisions

of the prison officials.

The petitioner asks that the court intervene and order the officials

at this prison reinstate petitioner to his former work status immed-

iately with the pay raises he would have otherwise earned, prior

to his unjust termination.

    The petitioner's removal from his job program via the 'alleged

causation' was arbitrary, against prison protocol, and in violation

of federal law under Subtitle A of Title II of The Americans With

Disability Act (ADA) 42 USC 12131 et seg.  Inmate was removed with-

out consideration of making a reasonable accommodation which was

available simply by transfering him to the 'Z' shift workforce,

after this "new policy was being implemented." TITLE 15. Dept of Corr. § 3085

    The actions of petitioner's removal did nothing to enhance

firmer custody controls or safety of inmates or staff.  All "Z" 6142

shift workers still travel back and forth each shift.   The East
Dorm wing had prior to this incident been a voluntary move or pri-
vilege dorm, and forced housing had not been a part of working there
for some time, if ever.  Nowhere in orientation, nor during length
of any of the five inmates who were terminated, had mandatory hous-
ing at East Dorm been voiced, nor any official regulation been
presented.

The on-going harm done to this inmate is that I am a life-
serving inmate.  Part of the conditions of possible parole which
must be met is upgrading my education and/or learn another trade.
Since I have been in prison I have waited eleven years to be put
in the prison industries.  In the three prisons I have been housed
the waiting list has been so long is was next to impossible to be
hired.   Now I've beenput to the back of the list simply because
of someone's spite. Housing in East Dorm was not a prerequsite when
I was hired, nor any of the time I worked there.  A reasonable ac-
commodation was in order before termination should have been im-
plemented.  Fulfilling a possible condition of parole by learning
a trade has been put out of my reach by illegal and unconstitutional
actions of the prison custody officials   For the last eleven years
this prison has and continues to manufactor a "false record of
petitioner not working at improving his chance for parole by fur-
thering my work skills.

The failure of prison officials to counsel petitioner and
discuss the possible transfer to "Z" shift as a accomodation
for his disability was prejudicial and reauires the immediate
reversal of the "adverse removal" of petitioner from his P.I.A.
job assignment.

$G143$

-6-

## PRAYER FOR RELIEF

Petitioner is without remedy save by writ of habeas corpus

WHEREFORE, petitioner prays the Court

1. Issue an injunction granting immediate reinstatement to his textiles job position

2.  issue a writ of habeas corpus

3.  declare the rights of parties

4.  appoint counsel-award reasonable attorney fees;and

5.  grant any other and further relief the Court deems proper.

## CONCLUSION

For the above-stated reasons, the relief sought in the petition should be granted.

Dated:    November 6,2005                    Respectfully submitted

*Ronald Bratton*

Ronald Bratton

In Pro Per

## VERIFICATION

I, RONALD BRATTON state:

I am the petitioner in this action.  I have read the foregoing petition for writ of habeas corpus and the facts stated therein are true of my own knowledge, except as to matters that are therein stated on my own information and belief, and as to those matters I believe them to be true.

I declare under penalty of perjury that the forgoing is true and correct and that this declaration was executed at Soledad on November 6,2005.

*Ronald Bratton*

RONALD BRATTON J-45341

G144

1

SUPERIOR COURT OF CALIFORNIA

**FILED**

2

COUNTY OF MONTEREY

DEC 0 9 2005

3

LISA M. GALDOS
CLERK OF THE SUPERIOR COURT
_____ DEPUTY

4

In re:

) Case No.: HC 0520T

Sandra Hirai

5

Ronald Bratton (J-45341)

)
)
) ORDER

6

On Habeas Corpus. )

7

8      Petitioner contends he has been terminated from prison employment in violation of the

9 Americans with Disabilities Act and applicable prison regulations. Specifically, Petitioner

10 contends that the medication he takes for his skin condition precludes him from being housed

11 in the "East Dorm" and that prison officials have cited his removal from "East Dorm" as

12 rendering him ineligible for work on the "Y shift" at the prison's textile facility. Petitioner

13 claims that a reasonable accommodation would have been to move him to "Z shift" at the

14 facility, a shift composed of inmates from his current facility.

15      Inmates seeking habeas relief must exhaust their administrative remedies through the

16 Director's Level of Review. *In re Strick* (1983) 148 Cal.App.3d 906, 911. Petitioner claims

17 that prison officials have refused to process his Inmate Appeal. However, he fails to attach a

18 complete copy of the Inmate Appeal form (the copy submitted does not show the reverse side

19 of the form) showing when the Appeal was submitted for Second Level and Director's Level

20 Review. Absent such information, the Court cannot address Petitioner's claim. In addition, the

21 Court notes that prisoners do not have a Due Process right to be assigned to a job or

22 rehabilitative program. *Moody v. Daggert* (1976) 429 U.S. 78, 87. The Petition is DENIED.

23 Dated: December 9, 2005

24

Hon. Marla O. Anderson

25

6145

1

RONALD BRATTON J-45341
CTF         CW-133L
P.O. BOX 689
SOLEDAD, CA 93960-0689          December 11, 2005

SUPPLEMENTAL PAGE

RE: CTF APPEAL LOG No. CTF-C-05-02426

APPEAL ISSUE: Reinstatement of job and compensation for wrongful
              termination from P.I.A. workforce.
REQUEST FOR DIRECTOR'S LEVEL REVIEW

The irony of this last denial is that at each level the re-
sponse was held up for over a month as those involved in what was
a "retalitory dismissal conspiracy" groveled for a "plausible de-
nial." On August 3, 2005 inmate requested assistance from attor-
neys who were monitoring ADA claims. When this vindictive and un-
lawful dismissal was made none of those involved looked at the
disability status of any of the inmates involved. After this
inmate filed a writ of habeas corpus in the Superior Court of
the County of Monterey on Aug. 6, 2005 seeking injunctive relief
for the "criminal act" against him, and attorneys for Rosen, Bien,
and Asaro (legal team for Armstrong vs Schwarzenger scheduled this
inmate for a interview, Lt. Santiage called this inmate and held
an "over the telephone interview" on November 19, 2005, admitted to
his part in the wrongful termination of inmate, and hired inmate
on the "Z" shift textiles, which sonuld have been done in the
place, excent for the fact the dismissals were retalitory vindic-
tive assualts and not for the "red-herring defenses" made to
cover the actions. This inmate was given a new position in tex-
tiles, but his level of pay was not restored. I was told I would
have to start over at thirty-cents an hour again, and was not
the four months back nay due me for the illegal dismissal. I was
given the six-teen dollars nay for the discrimination I suffered
from the filing of the '602' which triggered the retalitory vin-
dictive action myself and the four other inmates involved.

This inmate was also not compensated for the fifty dollars
a month compensation due for the illegal and wrongful firing,
nor the fifty dollars or so spent on legal copies and postage,
or legal fees for the hours spent to fight this unjust action.

6146

-1-

CTF APPEAL LOG No. CTF-C-05-02426
Director's Leview Review Request
page 2 of 2

Also inmate would have been making fifty-cents an hour by now
from two level raises pay periods, and requests his pay be raises
to this level, where it would have been except for the "conspiracy
of vindictiveness lodged against him.

The documents accompanying this '602' reflect the picture of
the pattern of events which back inmate's allegations.  Some of
the exhibit documents were removed by staff at different levels
to deny knowledge of the order of events or so to act as if they
didn't know the vindictive conspiracy was going on.

I accept the "partial granting" of my request, but also seek
compensation for the vindictive actions taken against me, and the
compensation due me.  I see also not only has this '602' suffered
the maze of the "Burmuda triangle" with information being removed,
but I put the exhibits back in so they could be seen.

Review requested by _Ronald Bratter_        date _December_

6147

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

## DIRECTOR'S LEVEL APPEAL DECISION

Date: **MAR 0 9 2006**

In re: Bratton, J-45341
Correctional Training Facility
P.O. Box 686
Soledad, CA 93960

IAB Case No.: 0506567        Local Log No.: CTF 05-02426

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner Michael H. Jensen, Facility Captain.    All submitted documentation and supporting arguments of the parties have been considered.

I    **APPELLANT'S ARGUMENT:** It is the appellant's position that it appears he was unassigned from his assignment based upon his inability to move to the East Dorm. The appellant states he was unassigned from his Prison Industry Authority (PIA) assignment without being provided a reason or cause for the action. The appellant believes it is due to the fact that he takes medication that is not distributed in East Dorm, and staff wanted all the PIA workers on Y-shift to be housed in the East Dorm.  According to the appellant, Correctional Sergeant (Sgt.) Warfield questioned him his first week on the assignment about whether or not he could be housed in the East Dorm.  The appellant reflects he told Sgt. Warfield the reason he could not he housed there.  The appellant stated nothing further was said about the issue.  The appellant contends that since there was not a written policy stating inmates were required to be housed in the East Dorm, the unassignment was illegal. The appellant requests to be returned to his assignment, to be provided back pay as well as the pay raise that he would have received last July.

II   **SECOND LEVEL'S DECISION:** The reviewer found that the Textile workers Y-shift positions are assigned to inmates housed in the East Dorm.  It was stated that the Textile workers Z-shift are housed on the Central Mainline and a Unit Classification Committee has assigned the appellant to that waiting list. The Second Level of Review (SLR) explained the appellant was being retained on Work Group/Privilege Group (WG/PG) "A-1/A" and he would be assigned as his name appeared on the top of the waiting list according to his WG seniority. The appeal was considered denied by the SLR.

III  **DIRECTOR'S LEVEL DECISION:** Appeal is denied.

   **A. FINDINGS:** In writing the Director's Level of Review (DLR) the appellant stated that an Americans with Disabilities Act appeal he filed for this same dismissal resulted in his being hired on the Textiles Z-shift, however he was not reimbursed for back pay, missed raises nor was his prior pay reinstated.

   Correctional Training Facility (CTF) has followed California Code of Regulations, Title 15, Section (CCR) 3041.2 in documenting the basis of the appellant's pay being modified. CTF followed the CCR and placed this information in the appellant's central file. Pursuant to CCR 3045.3(b) the appellant continued to receive full work credits while involuntarily unassigned.  The appellant retained his WG/PG status. Nothing in the regulations requires back pay to be awarded or missed pay raises to be granted.

   The appeal documentation reflects that CTF had established that inmates on the Y-Shift would all be housed in East Dorm so that any lockdown of the Central Mainline housing units would not affect the production of the Y-shift Textile operation.  The DLR understands the reasoning behind having all the assigned workers being housed together.  The DLR has reviewed the appellant's complaint and the regulations pertaining to this issue.  The DLR has determined the appellant's rights were not violated by his not receiving the monetary compensation he was seeking, or being allowed to be reassigned to the Y-shift in PIA. The DLR shall not modify the SLR.

   **B. BASIS FOR THE DECISION:**
   CCR: 3040, 3041.2, 3043, 3044, 3045.2, 3045.3, 3375



BRATTON, J-45341
CASE NO. 0506567
PAGE 2

**C. ORDER:** No changes or modifications are required by the institution.

This decision exhausts the administrative remedy available to the appellant within CDCR. If dissatisfied, the appellant may forward this issue to the California Victims Compensation and Government Claims Board, (formerly known as the State Board of Control), Government Claims Unit, P.O. Box 3035, Sacramento, CA 95812-3035, for further review.

N. GRANNIS, Chief
Inmate Appeals Branch

cc:     Warden, CTF
        Appeals Coordinator, CTF

G149

State of California                                Department of Corrections and Rehabilitation

# Memorandum

**Date:**     September 21, 2005

**To:**       **Inmate Bratton J45341**
              **Z Wing  Z-244l**
              **CTF  Central**

**From:**     **Correctional Training Facility - Soledad, CA.  93960**

**Subject:**  **Correspondence To Warden A. P. Kane Dated 8-18-05**

This is in response to your correspondence dated July 18, 2005, addressed to Warden A. P. Kane. Your correspondence was referred to my office for response.

You are writing regarding concerns you have about being removed from your job assignment and temporarily unassigned. You were assigned to the Textiles Y shift and are currently housed at Central Facility. The Textile Y Shift positions are designates as East Dorm PIA positions. This designation is in accord with CCR 3041.1 (a) (6) and is a matter of institutional security and operational needs.

Inmates who are assigned to East Dorm PIA positions are required to be housed at the East Dorm. It was determined that you do not meet the criteria to be housed at East Dorm per Operational Procedure #20. Based upon the aforementioned, you were temporarily unassigned, maintaining and continuing  your A1A status with no adverse affect.

I hope this information provides clarification for your concerns. Should you have additional questions regarding this matter, you may contact me at the Unit I Program office via the institutional mail.


**L. M. Moore**
**Unit I Program Lieutenant**
**CTF/Central Facility**


**cc: Warden's Office**

6\50

CDC 1617 (3/89)

STATE OF CALIFORNIA

**INMATE / PAROLEE
APPEAL FORM**
CDC 602 (12/87)

DEPARTMENT OF CORRECTI'

Ext t (A)

2ND LEVEL

Location/Institution/Parole Region
1.  CTF-C
2.  JUN 2 4 2005

Log No.
1.  05-01506
2.  AUG 08 2005

Category
73-17

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME Ronald Bratten | NUMBER J.45341 | ASSIGNMENT TEX. I.165 | UNIT/ROOM NUMBER ZW 216 |

A. Describe Problem: A system of prejudicial exclusion has been implemented to deny myself and '3 to 5 other "select inmate workers' the privilege of earning work fees as all of the other assigned workers to textiles are doing, during the searching of "North Facility. All of the East Dorm workers assigned to our shift, as well as the entire "Z Shift workers housed at Central are approved and allowed to work during the "first watch status" periods. The "punishment" meted out to myself and the three to five others assigned "Y shift and housed at Central is

If you need more space, attach one additional sheet. arbitrarily discriminaterial and aga

B. Action Requested: I be paid full pay for all the days missed during the entire discrimination period

Inmate/Parolee Signature: Ronald Bratten          Date Submitted: April 28/05

C. INFORMAL LEVEL (Date Received: 5/3/05)

Staff Response: See Attach Response written to Mr. Bratten dated 05/04/05...

Staff Signature: Rip Early          Date Returned to Inmate: 5/8/5

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

The reason for the 602 is that shift "2" was authorized to work while shift "Y" from central was not. It was for a total of five days, not four as stated by the supervisor. The prejudice and discrimination is for the restriction on shift "Y" And

Signature: Ronald Bratten          Date Submitted: 5-13-05

RECEIVED

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

CDC Appeal Number:

RECEIVED     RECEIVED     RECEIVED

MAY 1 6 2005

MAY 1 2 2005

CTF APPEALS

CTF APPEALS

JUN 2 3 2005

AUG - 3 2005

05-01506

CTF APPEALS     (A) G151

Title 15 and "DOM" procedures.  The excuse has been that no one from Central facility was allowed to come to work because of its' first watch status.

However fifteen to 20 workers assigned to textiles 'Z' shift have been allowed to work with "no break" in their schedule.  They were approved even before the "first-watch status began" (working 4/18/05-4/23/05, and 4/24/05 to 4/30/05)  These 'Z' shift workers reported they were also approved to work the 'Y' shift schedule because of the depletion of the work-force because us 'Y' shift workers were not submitted to be approved for work on our days.  The East dorm 'Y' shift inmates were allowed to work over-time both weeks.

The arbitrary discrimination against us five to seven inmates on the 'Y' shift has left us meager earnings for the month while the other forty or so assigned workers make record pay.  My-self and four other inmates reported to work everyday, and we were the only ones refused to enter our work area while thirty or forty others were.

The 'Act of Discrimination' and prejudice caused harm to the inmate in the form of five work days pay.    The modified program was enforced only on 'Y' shift workers housed from Central, not on 'Z' shift workers, also housed from Central, or 'Y' shift workers from East Dorm.  This inmate 'did perfore his assigned duty by re-porting to the East Gate for work all five days.

"THIS INMATE SEEKS COMPENSATION ONLY TO THE EXTENT OF THE HARM DONE BY 'THE ACT OF DISCRIMINATION OF PREJUDICE, FIVE DAYS PAY!

6152

# DEPARTMENT OF CORRECTIONS
## Correctional Training Facility
### Soledad, California

## SUPPLEMENTAL PAGE                              LOG # N/A
Informal Level response

**NAME: Bratten**        **CDC#: J-45341**        **HOUSING: ZW-210L**

**Appeal Decision: Denied**
**Appeal Issue request**: He be paid for days missed from work assignment

**Appeal Response:** Phillip Earley, PIA Textile, Industrial Supervisor interviewed
Mr. Bratton on 05/02/2005. At this time he was given an opportunity to explain his
appeal and present supporting information or documentation. Bratton, provided
no additional information," stating all the information referring to the problem had
been adequately documented in the 602 and there was nothing further to add,
everything is there".

Inmate Bratten is assigned to Central TextileY-Shift with rdo's of Thursday,
Friday, Saturday and alternate Wednesdays. During the time frame referred to in
his 602,Bratton was unable to program a total of 4 days, on the following dates
April 18,19,20 26, 2005. On these dates listed above CTF Soledad had been
placed on a 30 day State of emergency and all inmates had been placed on a
modified program. Central Facility mainline inmate Textile workers were placed
on restricted movement. Only inmates from the EAST Dorm was permitted to
attend their regularly scheduled work assignment. Since Bratton is assigned to y-
shift but housed on the Central mainline in Z-Wing, he may have felt excluded
from his work assignment.
PIA does not dictate where workers are housed.

The mainline Central facility, Z-shift textile workers were only allowed to report to
their regularly assigned shift because a critical workers list was approved and
signed by the PIA Manager A. Caron and the Warden A. Kane. Since Bratton is
not a assigned to Z-shift he was not on the approved critical workers list.

The DOM 51121.11, states PIA inmates shall be paid for the following activities
only: Actual work time, since Bratten did not perform any work related activities
and all issues have been addressed this appeal is denied.

P. Earley, Supervisor                             Date:  05/04/2005
Prison Industry Authority, Textiles
Correctional Training Facility

6153

# DEPARTMENT OF CORRECTIONS
## Correctional Training Facility
### Soledad, California

## First Level Reviewer's Response        LOG #CTF-C-05-01506

**NAME: Bratten R.        CDC#: J-45341        HOUSING: CTF-C-ZW-210L**

*Interviewed:*      *Inmate Bratten    on         05/25/2005*
*By:*      *L. Jeanette Salmons, Industrial Superintendent I, PIA Fabric Products*

*Mr. Bratten:*

*In my interview with you on this date, you stated that there was a practice of discrimination and prejudicial action taken towards you for not being allowed to report to your regularly scheduled work assignment for 5 days in April. In your appeal you requested to be paid for those same 5 days.*

*Mr. Bratten, your 602 appeal is being denied for the following reasons:*

*Your request to be allowed to report to your work assignment during a modified program does not fall within the authority of this writer to grant. DOM 51121.11, states inmates shall be paid for actual work time only. You have not provided any additional information upon which to change the disposition of the first level response.*

*Therefore, your appeal is being denied at this time.*

*L.Jeanette Salmons*

*Superintendent I PIA Fabric Products, CTF Soledad*

6154

# DEPARTMENT OF CORRECTIONS
## Correctional Training Facility
## Soledad, California

**SUPPLEMENTAL PAGE**                    **LOG #CTF-C-05-01506**
Second Level Reviewer's Response

**NAME: Ronald Bratten  CDC#J45341**          **HOUSING:ZW-210L**

## APPEAL DECISION: **DENIED**

## APPEAL ISSUE: **WORK INCENTIVE**

## APPEAL RESPONSE:

Mr. Bratten,

   In your appeal you request to be compensated, to the extent of the harm caused by the act of discrimination and prejudice, for five days of pay.

   On May 2, 2005 you were interviewed by P. Early (Industrial Supervisor) and on May 25, 2005 by L. Jeanette Salmons (Superintendent I) to provide the opportunity to explain your appeal and present supporting information or documents. During these interviews, you produced no further information in which to grant your appeal.

   A thorough review of your appeal's package and all of your attachments have been completed and reveals that you were treated fairly within the guidelines of the Department of Corrections Operations Manuel Section 51121.11.

   Based on the above, your appeal is **Denied.**


Greg Sheffield, P.I. Manager (A)                    Date: 7/28/05


A.P. Kane, Warden (A)                    Date: 8/4/05


Cc:  Inmate's Central File
    Appeals File

G155

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

## DIRECTOR'S LEVEL APPEAL DECISION

Date: **NOV 0 7 2005**

In re:    Bratton, J-45341
          Correctional Training Facility
          P.O. Box 686
          Soledad, CA 93960

          IAB Case No.: 0502384        Local Log No.: CTF 05-01506

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner S. Ortiz, Facility Captain. All submitted documentation and supporting arguments of the parties have been considered.

**I    APPELLANT'S ARGUMENT:** It is the appellant's position that he has been subjected to discrimination and prejudicial action by not being allowed to report to his regularly scheduled work assignment for five-days in April 2005. The appellant requests that he receive pay for the five-days he was not allowed to report to his assignment.

**II    SECOND LEVEL'S DECISION:** The reviewer found that the appellant was afforded an interview. The appellant was advised that he was not allowed to report to his work assignment for the five-day period due to a modified program. Furthermore, the appellant's request for pay is denied based on CDC Operations Manual Section (DOM) 51121.11, which states; "Inmates shall be paid for actual work time only." The appeal was denied at the Second Level of Review (SLR).

**III    DIRECTOR'S LEVEL DECISION:** Appeal is denied.

**A.    FINDINGS:** The examiner found that the appellant was not allowed to report to his regularly scheduled work assignment for five-days due to a modified program. In this case, the safety and security of the institution, inmates and staff take precedence over all other considerations. In accordance with the DOM 51121.11, the appellant shall be paid for actual work time only. The appellant stated that he did not report to work five-days. Therefore, he is not entitled to receive pay for the five-days. The SLR response and decision are appropriate and in accordance with departmental regulations. The appellant has provided no additional information in support of his appeal. The appeal is denied at the Director's Level of Review.

**B.    BASIS FOR THE DECISION:**
California Code of Regulations, Title 15, Section: 3040, 3041.1, 3375, 3376, 3383
DOM: 51121.11

**C.    ORDER:** No changes or modifications are required by the institution.

This decision exhausts the administrative remedy available to the appellant within CDCR. If dissatisfied, the appellant may forward this issue to the California Victims Compensation and Government Claims Board, (formerly known as the State Board of Control), Government Claims Unit, P.O. Box 3035, Sacramento, CA 95812-3035, for further review.


N. GRANNIS, Chief
Inmate Appeals Branch

cc:    Warden, CTF
       Appeals Coordinator, CTF

6156

# EXHIBIT H

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

CDC 1858 (2/97)

# RIGHTS AND RESPONSIBILITY STATEMENT

*The California Department of Corrections has added departmental language (shown   inside brackets, in non-boldface type) for clarification purposes.*

**Pursuant to Penal Code 148.6, anyone wishing to file an allegation of misconduct by a departmental peace officer must read, sign and submit the following statement:**

**YOU HAVE THE RIGHT TO MAKE A COMPLAINT AGAINST A POLICE OFFICER** [this includes a departmental peace officer] **FOR ANY IMPROPER POLICE** [or peace] **OFFICER CONDUCT. CALIFORNIA LAW REQUIRES THIS AGENCY TO HAVE A PROCEDURE TO INVESTIGATE CITIZENS'** [or inmates'/parolees'] **COMPLAINTS. YOU HAVE A RIGHT TO A WRITTEN DESCRIPTION OF THIS PROCEDURE. THIS AGENCY MAY FIND AFTER INVESTIGATION THAT THERE IS NOT ENOUGH EVIDENCE TO WARRANT ACTION ON YOUR COMPLAINT; EVEN IF THAT IS THE CASE, YOU HAVE THE RIGHT TO MAKE THE COMPLAINT AND HAVE IT INVESTIGATED IF YOU BELIEVE AN OFFICER BEHAVED IMPROPERLY. CITIZEN** [or inmate/parolee] **COMPLAINTS AND ANY REPORTS OR FINDINGS RELATING TO COMPLAINTS MUST BE RETAINED BY THIS AGENCY FOR AT LEAST FIVE YEARS.**

**IT IS AGAINST THE LAW TO MAKE A COMPLAINT THAT YOU KNOW TO BE FALSE. IF YOU MAKE A COMPLAINT AGAINST AN OFFICER KNOWING IT IS FALSE, YOU CAN BE PROSECUTED ON A MISDEMEANOR CHARGE.** [An inmate/parolee who makes a complaint against a departmental peace officer, knowing it is false, may be issued a serious disciplinary rule violation, in addition to being prosecuted on a misdemeanor charge.]

| COMPLAINANT'S PRINTED NAME | COMPLAINANT'S SIGNATURE | DATE SIGNED | |
|---|---|---|---|
| INMATE/PAROLEE PRINTED NAME<br>Ronald Bratton | INMATE/PAROLEE'S SIGNATURE<br>Ronald Bratton | CDC NUMBER<br>J·45341 | DATE SIGNED<br>11·1·05 |
| RECEIVING STAFF'S PRINTED NAME<br>L.R. Baker, CC 1 | RECEIVING STAFF'S SIGNATURE<br>L.R. BAKER | DATE SIGNED<br>11-23-05 | |

DISTRIBUTION:

ORIGINAL-
Public - Institution Head/Parole Administrator
Inmate/Parolee - Attach to CDC Form 602
Employee - Institution  Head/Parole Administrator
COPY - Complainant

H157

**INMATE/PAROLEE APPEAL FORM**

CDC 602 (12/87)

Location: Institution/Parole Region **CTF-C**  Log No. **0 5 - 0 3 5 7 0**  Category **7**

1. _____  1. _____

2. **DEC 1 2 2005**  2. _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME BRATTON | NUMBER J-45341 | ASSIGNMENT A1A Unassigned | UNIT/ROOM NUMBER CW · 133L |

A. Describe Problem: I am making a INMATE/citizens complaint, § 3391(d) title 15 against C.C.I Baker, Unit II CTF central, charging unprofessional and unethical conduct, disrespectful, hateful, and abusive speech and demeanor and retalitory, spiteful and negative report/portrayal of inmate to parole board seeking denial of possible parole with no basis or foundation for such except as personal vendetta for a "602" filed against her for failure to do her job for a inmate request, after stating she would do so.

This inmate was transfered to Unit II "4" wing in 2004.

If you need more space, attach one additional sheet.    (see attached sheet)

B. Action Requested: Counselor be removed from inmate's case. Note be sent to Board denouncing counselor vengeful attitude and ill will toward inmate. Counselor be disciplined to utmost, including removal from position which carries weight to BPT for unethical behavior.

Inmate/Parolee Signature: Ronald Bratton    Date Submitted: October 12, 2005

C. INFORMAL LEVEL (Date Received: _____)

Staff Response: _____

BYPASS

Staff Signature: _____    Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

BYPASS

Signature: RECEIVED    RECEIVED    RECEIVED    Date Submitted: _____
Note: Property/Funds appeals must be accompanied by a completed    CDC Appeal Number:
Board of Control form BC-1E, Inmate Claim
OCT 1 8 2005    NOV - 2 2005    DEC - 9 2005    **0 5 - 0 3 5 7 0**

CTF APPEALS    CTF APPEALS    CTF APPEALS    H158

was transferred to "2" 19 in 2004. Inmate had in transferred as a means of shedding a job position as porter after having a pay-number taken from him after a documented non-adverse" 128 B was filed by C.O. who removed inmate from pay-number to give it to a hispanic for racial prejudical reasons. Inmate Bratton had job seniority and better work record than other inmate.

At first unit committee meeting in March 2004 (first time of inmate to meet his counselor) inmate Bratton was told he would continue to be on waiting list for clerk and textiles. Inmate had no other contact or discussion with counselor he can remember until March 2005 at annual. In November 2004 inmate was assigned to textiles "4" shift and had satisfactory job ratings (1015) until June 2005 when he was undeservedly and without proper justification or procedure removed from job by security source. Inmate had 'all' satisfactory job reports for two years as porter at CDC Soledad, and five years prior employment at institutions he had been at prior to this time. This job action also was written up as non-adverse although in reality it was because it removed inmate from only vocation he had been assigned for 11 years. It was arbitrarily decided all inmates who worked on inmates assigned shift was supposed to be housed in East Dorm and inmate had a medical concern could not be addressed if he moved to East Dorm.

As Inmate Bratton was walking out of ICC classification in March of 2004 a last second exchange between counselor and Captain was that Inmate Bratton would be put on a "print-shop waiting list" for vocational training. The inmate found out 'later that day' the print-shop training did not consist of anything that would make him any more advanced than the school class he had forty-odd years ago. This inmate already had several trades and was planning to be on disability, since he already had chronic leukemia. Also the print shop assignment had no pay number to it, nor would it for several years. Inmate already had a paying number and was learning the vocation of sewings. I put in a interview request slip the next day requesting that my name not be added to the print-shop vocation list. In about three weeks time I received a harshly worded reply that I should have made that request at meeting (although then I was not given opportunity to do so since decision was made as I was walking out the door), and to request it be done again in June. When I requested it be done again in June, I was not at first answered, and when I talked to counselor on telephone and mentioned it (a week later) she began hysterically screaming she didn't want to talk about it and slammed the phone receiver down in my ear. I then 602'd the request

H159

making it a formal request. It was replied and answered as done by another counselor writing they had done it while filling in for CCI Baker.

When entering the special Committee meeting 8/3/05 Counselor Baker made a snide remark in a degatory manner to the Captain that "this is "the one" who likes to write 602's. Inmate entered with another 602 aporaling the decision which had removed him from his job without following official procedure, nor following federal law. Counselor Baker told inmate "too bad," he would have to 602 Sgt Warfield from custody. (The next week a Caucasian who also worked with inmate on his shift and wasfired was told in meeting his request was partially granted, he would be put on the top of the list for the "z" shift and he would not have to be put on any other list. A vispanice who was also fired was told the same thing when he went to classification in 'c' wing. Inmate Bratton requested he be put on "z" wing also as they were on request for interview the next week and it has never been answered. Inmate Bratton's 602 was floated "around for over a month, (never answered by custody) then sent to ex-supervisor who replied he could do nothing because he had nothing to do with change in program status. Inmate's appeal is still "floating around after being sent to next level. Committee chrono from 8/3/05 notes snide remark from CC Baker after remark from her that inmate se "put on "c" status because he requested "not to be put on other lists ( as Caucasian wasn't)

In any event on 9/22/05 Inmate Bratton received BPT report asking inmate not be paroled" as punishment for 602 filed. No mention that inmate had completed his anger management course or he ed "no adverse reports or diciplinary actions in four years at oledad (3½)/only 1½ under counselor's sway), and only one "false report" of incident in 11½ years in CDC. The only "bad behavior" shown in year and one/half under counselors sway "was by counselor". There was no basis for request inmate not be paroled but vindetta by mean spirited counselor, (see attached exhibit)

EX-A

#160

Exhibit (1d)

Mrs Baker

# MULTI-PURPOSE FORM

TO: ~~Bratton~~ _____ C C I _____  DATE: 3-30-05
(Name)                    (Title)

- ❏ MEDICAL CONCERN
- ❏ DENTAL CONCERN
- ❏ VISITING CONCERN
- ✗ REQUEST FOR INTERVIEW
- ❏ PACKAGE ROOM
- ❏ REQUEST FOR I.D. CARD
- ❏ REQUEST TO REVIEW CENTRAL FILE
- ❏ MAIL ROOM: Request for metered envelopes *(No Funds)*
- ❏ E.P.R.D.: You should be within six *(6)* months of release date to inquire

- ❏ TRUST ACCOUNT BALANCE $ _____
- ❏ TRUST ACCOUNT WITHDRAWAL
- ❏ REQUEST FOR ROOM CHANGE
- ❏ REQUEST FOR UNIT CHANGE
- ❏ FAMILY HOUSING UNIT VISIT INTERVIEW
- ❏ REQUEST FOR CHAPLAIN INTERVIEW
- ❏ MEDICALLY CLEARED FOR CULINARY REQUEST

REASON FOR REQUEST *(Be specific: Explain your problem)*: I would like for you to take my name off of the Printing list if you have put it on. I am currently enjoying learning to sew and after a couple of years I think I would learn enough to work at it.
(over)

DATE: _____  STAFF RESPONSE: _____

INMATE NAME: Bratton   INMATE NUMBER: J.45341   CELL: ZW2101
ASSIGNMENT: Textiles   HOURS: 6:30 Am - 4pm   RDO'S: T,F,Sat
CTF-304 (Rev. 04-97)

---

# MULTI-PURPOSE FORM

(Exhibit) 1C

TO: Baker _____ C C I   Z.Wing _____  DATE: June 4.05
(Name)                    (Title)

- ❏ MEDICAL CONCERN
- ❏ DENTAL CONCERN
- ❏ VISITING CONCERN
- ❏ REQUEST FOR INTERVIEW
- ❏ PACKAGE ROOM
- ❏ REQUEST FOR I.D. CARD
- ❏ REQUEST TO REVIEW CENTRAL FILE
- ❏ MAIL ROOM: Request for metered envelopes *(No Funds)*
- ❏ E.P.R.D.: You should be within six *(6)* months of release date to inquire

−OVER−

- ❏ TRUST ACCOUNT BALANCE $ _____
- ❏ TRUST ACCOUNT WITHDRAWAL
- ❏ REQUEST FOR ROOM CHANGE
- ❏ REQUEST FOR UNIT CHANGE
- ❏ FAMILY HOUSING UNIT VISIT INTERVIEW
- ❏ REQUEST FOR CHAPLAIN INTERVIEW
- ❏ MEDICALLY CLEARED FOR CULINARY REQUEST

REASON FOR REQUEST *(Be specific: Explain your problem)*: I am again REQuesting My name be "removed from the list" for print shop. I took printing in the 7th grade and find it not to be a useful skill. I am satisfied with now learning the trade of sewing machine operator. I was a licensed
over→

DATE: _____  STAFF RESPONSE: _____

INMATE NAME: Ronald Bratton   INMATE NUMBER: J.45341   CELL: ZW210L
ASSIGNMENT: Textiles   HOURS: 6:30 Am - 4pm   RDO'S: W, Th Fri.

#161

It is a trade I would rather be in now than a carp. I also m on the list for taking a real Estate course. I am was) a licensed cosmetologist, surgical technician, and had a class "A" truck drivers license when I came to prison. I think sewing machine operator is the best thing for me for a couple of years.

According to your records you just went to committee for your annual. (May) At that time you should have requested that then. We only make changes during committee, if not when it's convenient for me. Re-submit in 60 days. Baker

cosmetologist, surgical technician, tractor trailer driver. (Class A I'm now on the list for real estate student here. I've also request my college transcripts be transferred to the college downtown and trying to get another degree. I have a use for learning to sew and wish to remain there until something suitable comes up. preferably x-ray technician, or optomitrist tech at another institution. I requested this two months ago and was told by you to resubmit request in June.

I note here, you have a Board Report due for review. That is a priority. Removing you from the print shop w/l is not a priority. We really only removals around your annual date. Besides will be years before any lifers get pick-up for will still be contacting you soon for a Robinson Review

H162

STATE OF CALIFORNIA                                                    DEPARTMENT OF CORRECTIONS

**INMATE/PAROLEE**    Location: Institution/Parole Region    Log No. 05-01978    Category 2-9
**APPEAL FORM**                    CTF-C
CDC 602 (12/87)              1.                        1.
                            2. JUL 0 8 2005            2.

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME Ronald Bratton | NUMBER J-45341 | ASSIGNMENT Textiles | UNIT/ROOM NUMBER ZW-210L |
|---|---|---|---|

A. Describe Problem: In March of this year inmate went before yearly committee review at end of review counselor stated inmate would be put on vocational list for printing. Several days later inmate realized being put on such a list would potentially remove him from his current assignment sewing machine operator at textiles, which inmate had already considered a vocation he wanted to learn. Inmate had printing vocation forty-five years ago (45) in junior high school and realized a "refresher course" would not in any way help his personal growth. In

If you need more space, attach one additional sheet. retrospect an assignment of that nature

B. Action Requested: That counselor "Immediately remove inmate from the dead-end print shop list" and leave inmate without the threat of being removed from the working vocation he now has, which he has as found beneficial for himself.

Inmate/Parolee Signature: Ronald Bratton                    Date Submitted: 6-17-05

C. INFORMAL LEVEL (Date Received:                    )

Staff Response:

~~BYPASS~~

Staff Signature:                                Date Returned to Inmate:

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

~~BYPASS~~

Signature: RECEIVED    RECEIVED                Date Submitted:
                                               CDC Appeal Number:
Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim        RECEIVED

JUN 2 0 2005    JUL - 8 2005    DEC 1 9 2005    #1163    05-01978

CTF APPEALS    CTF APPEALS    CTF APPEALS

would be detriment to inmates personal mental state and fiscal status, making him unable to afford personal need items.

Inmate had not had a paying job assignment for four years.

Inmate requested on multi-purpose form that he be removed from the "print shop list" as he already has several vocations (cosmetologist, surgical technician, class "A" truck driver) and college education, and didn't need or want to be put on a "dead end assignment list." He requested this in March. His response from Counselor Baker was to "ask request in June of this year." ~~after~~

After inmate re-requested removal from the "dead-end" list in June Counselor refused saying it was not a priority for Inmate. In fact, it is now the "most important priority" to inmate as it affects inmate's daily state of mind during this "great inconvenience" of incarceration. Inmate is "CCCMS" because of his stress condition bought on by this confinement. He has to have daily medication to control this stress as he suffers from post traumatic Stress and "panic attacks" cause him to suffer "severe itching attacks" from stress caused by this incarceration, and incidents such as the kind the Counselor is now "punishing" inmate with, with the threat of potentially removing inmate from his current job which he finds satisfactory for his growing education, learning a skill which could be useful to him, as opposed to a skill he has had for forty-five (45) years and has never found a use for.

H164

Inmate is now contemplating having his medication increased to deal with "this crisis." The Counselor has ... She has "twice" refused to remedy this situation

...st Level    ☐ Granted    ☒ ...ranted    ☐ Denied    ☐ Other

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: JUN 20 2005    Due Date: AUG 02 2005

Interviewed by: On 6/29/05 you was removed from the Voc Print Shop
Waiting list by MCC, acting in absentia

7/6/05    ____, AW

Staff Signature: _____    Title: CCI    Date Completed: 6/29/05
Division Head Approved
Signature: _____    Title: FC    Returned
Date to Inmate JUL 0 8 2005

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

_____

_____

_____

Signature: _____    Date Submitted: _____

Second Level    ☐ Granted    ☐ P. Granted    ☐ Denied    ☐ Other _____

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: _____    Due Date: _____
☐ See Attached Letter

Signature: _____    Date Completed: _____

Warden/Superintendent Signature: _____    Date Returned to Inmate: _____

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

_____

_____

Signature: _____    Date Submitted: _____

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION:    ☐ Granted    ☐ P. Granted    ☐ Denied    ☐ Other _____
☐ See Attached Letter    RECEIVED
Date: _____

CDC 602 (12/87)

JUN 2 0 2005

CTF APPEALS

H165)

State of California
CDC FORM 695
Screening For:
CDC 602 Inmate/Parolee Appeals
CDC 1824 Reasonable Modification or Accommodation Request

RE: Screening at the INFORMAL Level

*C-133L*

October 20, 2005

**REVIEWED BY THE
HIRING AUTHORITY**

**BRATTON, J45341**
*CFXWT1000000125L*
`'C' Wing 133 L`

Log Number: CTF-C-
(Note: Log numbers are not assigned to screen out appeals, or informal level appeals)

The enclosed documents are being returned to you for the following reasons:

*Your appeal is incomplete. You must include supporting documentation. All documents must be legible. (If necessary, you may obtain copy(ies) of requested documents by sending your request with a signed trust withdrawal form to your assigned counselor.) Your appeal is missing:*

*Your appeals is missing: BPT Report.*    SEE attached Exhibits  RWB

W. B. Childress / P. G. Dennis
Appeals Coordinators
Correctional Training Facility

note: The prior 602's and the multi purpose forms (which were censored in sarcastic and mean venacular) were removed from this 602. They were supporting documentation of the Counselor's mean and sarcastic manner. I suppose the Supervising Counselor removed

**NOTE:** Failure to follow instruction(s) will be viewed as non-cooperation and your appeal will be ~~then to..~~ automatically dismissed pursuant to CCR 3084.4(d). This screening decision may not be ~~Soften the urge~~ appealed. If you believe this screen out is in error, please return this form to the Appeals ~~of the Board~~ Coordinator with an explanation of why you believe it to be in error, and supporting ~~report~~ documents. You have only 15 days to comply with the above directives.   retaliatory meaness.

---

**PERMANENT APPEAL ATTACHMENT – DO NOT REMOVE**    ff-116b

BOARD OF PRISON TERMS                                                    STATE OF CALIFORNIA

## LIFE PRISONER PAROLE CONSIDERATION HEARING CHECKLIST

☒ Initial Hearing
☐ Subsequent Hearing

**All life prisoner hearing packets are to be divided into the following seven major categories. Within each category, similar documents should be filed together in reverse chronological order, beginning with the most recently dated document.**

1.  ☒  Cumulative Case Summary

2.  ☒  Board Reports (All)

3.  ☒  Psychiatric Reports (All)

4.  ☒  Prior Decisions (All)

5.  ☒  Notices and Responses, including:
    ☒ Notices and Responses (This hearing only)
    ☒ Official Letters (Since last hearing)
    ☐ Opposition Letters (Since last hearing)
    ☐ Supporting Letters (Since last hearing)
    ☐ Letters of Employment (Since last hearing)

6.  ☒  Legal Documents, including: (All Active Cases)
    ☒ Probation Officer's Report
    ☒ Arrest Reports
    ☒ Autopsy Report
    ☒ Abstract of Judgment
    ☒ Minute Order
    ☒ Charging Documents
    ☒ Appellate Decisions
    ☐ Sentencing Transcripts
    ☐ P.C. 1203.01 Statement
    ☐ BPT Investigations (Non-confidential investigations only)
    ☐ Other  (Notice of Motion)

7.  ☒  Miscellaneous, including:
    ☐ Crime Partner's Last Hearing Transcript & Decision Face Sheet (If applicable)
    ☒ Notice of Hearing Rights (This hearing only)
    ☒ ADA Reasonable Accommodation Notice and Request BPT 1073 & 1073(a) (This hearing only)
    ☒ Listing of All Disciplinary Reports
    ☒ Listing of All Counseling Chronos
    ☒ Diplomas or Certificates of Completion (Since last hearing)
    ☐ Laudatory Chronos (Since last hearing)
    ☐ Chronos for Participation in Self-Help or Other Activities (Since last hearing)
    ☒ Other nonspecific, but pertinent information developed since date of last hearing

Checklist and packet reviewed for completeness by _____ CCRA Date _8/14/06_

Checklist and packet reviewed for completeness by _____ CCRS Date_____

| NAME | NUMBER | INSTITUTION |
|---|---|---|
| **BRATTON, RONALD** | **CDC # J45341** | **CTF-SOLEDAD** |

BPT 1008 (Revised 11/01)

RONALD BRATTON  J-45_41
CTF            ZW-244L
P.O. BOX 689
SOLEDAD, CA    93960-0689                    August 12,2005

*received To counselor 9-22-05 [signature]*

### PAROLE PLANS AND PROGRAMS

PROGRAMS:  As a long-practicing Muslim this person has been on a
continuing program of improvement since the implementation of his
struggle to strengthen himself spiritually, physically, and mentally.
He has "fasted" since 1975 yearly to gain and improve upon his
self-restraint as well as cleanse his physical being.  He has p
prayed his mimimun of five daily prayers to maintain the prospective
of his relationship between himself  his creator and the creation
around him and kept himself with-in the boundaries set for some-
one of right-mindedness and  stature : of a decent human-being.

    I have taken the anger management course that has been pre-
scribed by the prison authorities that be.  I have studied and
followed life instructions as given from my creator thru the pro-
phet Muhammad.  These courses cover every-thing from basic cleanli-
ness to mental and spiritual cleanness.  THe subjects covered range
from fornication, adultry, corruption insults, murder, debts, alms,
marriage, divorce, dowries, persecution, fighting, covetousness,
the day of judgement, gambling, infanticide, inheritance, parental
duties, weaning of infants, marital intercourse, orphans, vanity,
hospitality to others, prayers, alcohol and other intoxicants,
diet and food laws, business practices, fraud, idolatry, hypocricy,
community duties, lewdness, world unity, sexual abstinence, mother-
hood fatherhood, wills and heritence, and about every human condi-
tion a person could encounter in his lifetime.  I have also tutored
other inmates for four years in basic and secondary education.  H168

The 'Sunnah of the Prophet" is also studied which contains the interpretation of the values of the Quran 'by experience and tradition.' This also covers how to handle triumphs and failures of life, person hygiene, social graces and interactions.

PAROLE PLANS:

This inmate currently has 'Chronic leukemia' and a condition which is diagnosed medically as 'pruritus' (Severe itching, Latin, from prurie, to itch) relating to generalized itching due to irritation of sensory nerve endings from organic or psychogenic causes

Inmate, because of this condition has already been found to qualify for SSI under 'Atypical Phychosis" designation and will refile for disability.    Inmate will parole to half-way house.

Inmate plans to parole to Los Angeles County.  his family arrangement is as follows; oldest daughter a doctor in Florida, oldest son a teacher in Fresno, CA., youngest son living in Sweden. youngest daughter living in San Diego, CA., and although inmate is still legally married, because of length of imprisonment, continuation of marital relationship still uncertain.

Should inmate be found suitable for insurability for work inmate has training and experience and past licensing as Class "A" Truck Driver, Cosmetologist, and Surgical Technician; experience as construction worker, house painter, medical case-worker,

Education;    high school equivalency, Certificate of completion, A.A., Bachelor of Science-Business, (Business management) Inmate has been on the real estate class waiting list for one year and has requested college transcripts three times to further education.   Due to outstanding student loans he has received no response.   He has even tried to have his transcripts sent directly to local college to no avail.

H169

-2-

LIFE PRISONER EVALUATION REPORT
INITIAL PAROLE CONSIDERATION HEARING
OCTOBER 2005 CALENDAR

BRATTON, RONALD                                                    J45341

I.    **COMMITMENT FACTORS:**

A.    **Life Crime:**  Murder 2nd, 187 PC (a) count one allegation Per 1192.7 (c) (1),
1203.06(a)(1) and PC 12022.5(a) PC and 1192.7 (c) (8). Count one and
allegations found true. Sentenced to 15 years to Life plus 4 years enhancements to
Count I pursuant to section 12022.5 from the Penal Code with a total term 19
years to Life. MEPD: 11/16/2006; Victim: Humberto Baca: age: 40 years old.

1.    **Summary of Crime:**  On 3/18/94 at 6:00 pm the (victim) Humberto Baca
approached Bratton (subject) for the purpose of preaching the bible. The
victim reportedly held a bible to Bratton's face saying, "Do you Love
God?" "Do you believe in Him," "Tell me Now, tell me Now." An eye
witness indicated that the victim was possibly intoxicated as he appeared
to be slumping and swaying on the sidewalk. An altercation ensued
between Bratton, an avowed Muslim, and the victim regarding the gospel.
Bratton retrieved the stated gun from his apartment and shot the victim
once. The victim expired at the scene. Bratton ran to his apartment and
was overheard saying "Shit, nobody is going to mess with my family. God
Dammit, I'll kill him." Bratton was described by his neighbors as usually
drunk, talking and yelling by himself at night. Responding officers
retrieved the gun from his apartment. (Probation Officer's Report (POR)
pages 2 and 3.

2.    **Prisoner's Version:**  In an interview for this report, this writer requested a
summary or statements relating to his prisoner's version (in his own
words):

Statement of the facts of the case.

On March 18, 1994 accused/convicted was sitting outside of his home.
In front of his apartment building in his automobile. He was praying his
afternoon prayer at the time and watching his step-daughter jump-rope
approximately fifty feet away. The deceased/attacker approached accused
automobile "with a face full of rage." After 'accused' looked up into the
man's face the man veered off and went up the street.



COPY TO INMATE ON 9-15-05

HI70

Because of recent robberies in front of and in his apartment building, rape of woman in front of the property, dope-traffic, nightly gun-fire in immediate vicinity, torching of his personal truck, and several break-ins, accused/convicted had his personal registered "25" caliber hand-gun on his person, in his left front pants-pocket, loaded, but un-cocked. The 'accused' next-door neighbor had admonished him 15 minutes prior to his coming down to his car that this was Friday, and be mindful, the day of the downstairs neighbor's parties. The last Friday on which a burglary had occurred. The 'accused' had the responsibility to protect himself and his family and had purchased his fire-arm after the truck-torching and break-ins. The most plausible explanation for the torching of his truck because he had removed "gang-graffiti" from the front of his apartment building. The boy who was to become a witness at 'accused' trial had started running with hoodlums from around the corner. (Stated so because when they showed up the graffiti appeared). Writing on the buildings was the mark. "Their people" lived there.

After the man with the "rage-filled face" passed, the 'accused' felt this may have been one of the people who had 'torched' his van or came by the building firing 'warning-shots' for the past month, and 'accused' was "torn" as whether-or-not to take his step-daughter inside, or stay where he was. Realizing that the people who were doing the shooting in the neighborhood used uzzi's (automatic weapons which fired a hundred bullets at a time) the accused felt he and his family would be trapped if he entered his house at the time. After a few minutes it was decided for him as the one who had given him the 'rage-crazed look' returned to attempt to engage him into a conversation.

The man began to talk in random-conversation in broken-English, stating he was from around the corner. (Where gang head-quarters was located) As 'accused' was fore-warned as to fellow's disposition, he asked the fellow to remove himself from the premises. The man made some off-the-wall remark, to which 'accused' replied that he was Muslim and did-not adhere to what-ever foolishness the man was speaking of, and again to remove himself from in front of the property.

The crazed-man began to scream that he was going to break out all the windows of the accused' car and kill him as he exacted the wrath of god upon him. The wild-man had visible eighteen inch stainless steel flashlight in his waist-band, (which now he proclaimed to be a weapon) so accused moved to position himself to protect himself by rising from his seat. I had been sitting sideways on the front seat of my auto. As I began to rise the crazed-man attempted to grab me. I then pushed the manic backwards, trying to keep him in front, and away from me. The insane-man kept screaming and advancing toward accused as I kept retreating and pushing $\text{H7I}$

him off while backing up. This continued for eight to ten times and so long that a hundred witnesses had gathered including accused' mate and daughter. (By some miracle the court-appointed attorney could find none of the witnesses for trial) The last time the attacker rushed the accused he was tugging at his waist-band trying to pull the steel flashlight from it.

"THEN AND ONLY THEN" did I remove my hand-gun from my pock to protect myself. I removed the pistol with my left hand while running backwards away from the pursuit of my attacker. I had reached with my right hand and pulled the chamber of the gun back to eject a shell into the chamber. Instead of stopping his pursuit of me the attacker leaned forward and grabbed my gun while pulling it toward his head at the same time, causing the weapon to discharge, which resulted in the bullet striking him between the eyes and killing him instantly. The attacker fell face forward and did not move. He stayed that way until paramedics turned him over to work on him about 10 minutes later, after accused called the police to report the shooting.

False reports by four policeman later reported the man to have fallen backwards as he was 'posed' in photos to accommodate perjured testimony of drug-dealer witness that "he saw the accused sitting in his car and jumping up and shooting the deceased for no reason as he was walking down the street. The other "perjured testimonies said they "saw the man fall backwards" even though they didn't see the shooting. They were added to "frame the accused for murder as he had "no motive or intent" to kill his attacker". The only motions made by the accused was to stop the aggression of the attacker/deceased. The attacker/deceased took the only voluntary response away from the accused by his relentless, constant and vehement attack. Accused did not willingly, with aforethought, in a rage, snap or any other-wise kill his attacker intentionally, and takes no responsibility other than for the self-defense actions taken for his and his families protection.

The state's case relied on false testimony, prejudice and incompetence of a conspiracy of the court-appointed attorney to kangaroo-court the accused for a murder which never happened.

The "circumstantial motive and intent" coupled with the prosecution mined and aiding and abetting actions of the (sic) public defender somehow got the petitioner convicted for a murder which never occurred. (The defense attorney made false statements that the accused was mad-drunk out of his mind and didn't know what he was doing, instead of telling the truth of the petitioner's contentions that this was straight self-defense shooting as it was, and to which others "testified to in their testimonies later on in the trial." (By then the (sic) attorney had already H172

LIFE PRISONER EVALUATION - REPORT
INTIAL PAROLE CONSIDER... ION HEARING
OCTOBER 2005 CALENDAR

"testified to the jury that everything the prosecution and the perjured witnesses said was the truth) In his closing arguments the district attorney ridiculed the defense attorney's lack of putting on a defense, and incompetence.

The states case had no credible truth and was based on perjury, innuendo, and prejudice, helped by the incompetence and conspiracy of the conflicted "court appointed defense attorney Jewish, and the judge was Jewish. The judge had also made the remark in a misdemeanor trial five years before that this defendant was guilty because he had legally changed his name for religious purposes. (Giving himself an Arabic name which was noted at the time of his arrest, and denoted to be 'an alias' which mad him quality of any crime he was accused of.

The false accusation that attacker/deceased was waving a bible and preaching to the convicted was denied and impeached by the man it was attributed to in his testimony. The unconstitutional admissions by the prosecutor, judges and (sic) defense attorney were "egregious errors" and left the accused at the mercy of vengeance seeking Judeo-Christian-out of-community jurors to judge accused for his religion and racial affiliation and not on the "evidence" presented in his case. (The jurors were selected from the "O.J. Simpson jury pool" from which 80% of Whites had already been polled and declared him guilty before the trial. In fact 80% of White-America had declared this by poll). The judge also limited the occasions of "documented acts of violence committed by the attacker/deceased in this trial. The accused/convicted had had no such history or arrest(s) of violence.

The kangaroo style court, in which the defendant was told to "sit down, shut up, and be framed", was travesty of justice, farce, sham, and unlawful. The jurors were manipulated to think that the accused presence was an affront to their religious views, and or customs.

A fundamental miscarriage of justice occurred in accused conviction. There was no motive presented save a speculative view presented by the biased questioning in the interview by a police detective, and no intent, save a perjured statement by the drug-dealing highly suspect witness presented by the prosecution. The prosecution presented no evidence to support the case element for a crime and won conviction simply on racism and prejudice against accused. There was "forty to fifty" documented constitution violations of accused rights in this conviction and convicted is still fighting conviction in the courts.

This unlawfully convicted person declared his innocence from the beginning of his arrest, today declares his innocence, and will always

H173

LIFE PRISONER EVALUATI   ...REPORT                                              5
INTIAL PAROLE CONSIDER, . . ION HEARING
OCTOBER 2005 CALENDAR

declare it. I bear witness that all the statements contained in this
declaration is the truth and related to the best of my ability.

Signed_____
                                            RONALD BRATTON

### 3.   Aggravating/Mitigating Circumstances:

#### a.   Aggravating Factors:

1. The victim was particularly vulnerable due to intoxication
   (alcohol) and probable mental illness.

2. The victim was intentionally killed because of his religion, in
   that subject was or is a Muslim and the victim was Christian.

3. During the commission of the crime, the prisoner had a clear
   opportunity to cease but instead continued.

4. The manner in which the crime was committed created a
   potential for serious injury to persons other than the victim of
   the crime.

#### b.   Mitigating Factors: None.

### B.   Multiple Crime(s):  None.

### 1.   Summary of Crime:  None.

### 2.   Prisoner's Version:  None.

## II.   PRECONVICTION FACTORS:

### A.   Juvenile Record:

03/25/66   ATCHISON (KANSAS) PD – "SECOND DEGREE FORGERY".
           CONVICTED AND COMMITTED TO STATE IND REFORM
           SCH IN HUTCHINSON, KANSAS FOR 1 TO 10 YEARS,
           PAROLED TO CALIFORNIA ON 04/24/69.

(THE DEFENDANT DECLINED TO DISCUSS THIS MATTER.)        H174

BRATTON, RONALD        J45341                CTF-SOLEDAD        OCT/2005

**B.** **Adult Convictions and Arrests:**

05/31/89     LAPD – 23152 (A) VC (UNDER INFLUENCE OF ALCOHOL IN
             A VEHICLE); 23152 (B) VC UNDER INFL OF ALCOHOL
             .08%); ON 07/26/89, IN LAMC DIV 66, CASE # 89V10161,
             CASE SET FOR JURY TRIAL, ON 09/29/89, FOUND GUILTY
             BY JURY, IMP OS SENT SUSP, PLACED ON SUMMARY
             PROBATION FOR 36 MONTHS, PAY A FINE OF $390, PLUS
             A PENALTY ASSESMENT OF $526.50, PER FORM 90 HRS OF
             COMMUNITY SERVICE, PARTICIPATE IN A 90 DAY
             ALCOHOL TREATMENT PROGRAM. ON 7/30/92 P/VIOL
             HEARING, CRT FIND DEFT IN VIOL, PROB REIN ON SAME
             TERMS AND CONDITIONS.

(THE DEFENDANT RELATES THAT HE WAS UNDER THE INFLUENCE
OF ALCOHOL AT THE TIME OF HIS ARREST.)

06/21/92     LAPD – 23152 (A) VC AND 23152 (B) VC, ON 08/31/92, BWI
             UNDER CASE # 92V08000, IN DIV 60 OF LAMC, BW
             RECALLED ON 10/14/92, PLED NOLO, PLACED ON 60
             MONTHS PROBATION; JAIL 48 HRS, AND FINED $510,
             PLUS A STATE FUND ASSESSMENT OF $867, ORDERED TO
             ENROLL IN AN 18 MONTH ALCOHOL PROG.

**C.** **Personal Factors:** In an interview for this report Bratton was born in Omaha,
Nebraska to the union of Norman and Betty Jackson. He is one of six brothers.
Bratton was raised by his paternal grandparents. Reportedly, the mother deserted
and abandoned the children while the father was working in Illinois. Bratton
relates that he was violently abused as a child. However, his brother Norman
disputes the allegation vehemently. At the time of Bratton's arrest his present wife
and him, had a 10 year son, named Orion. Besides, Orion, Bratton's acknowledges
paternity of Amir 24 years old, Kenya 24 years, Star 21 years old, and Stacy 15
years old. At the time of the arrest, he had no contact with his children.

Bratton obtained his GED while in a reformed school in Kansas. He reports that
he attended South West Louisiana College and studied business there. He claims
to have a Surgical Technician License and is also, a trained cosmetologist. Bratton
was employed at Department of Children Services, 1096 West Pico Blvd, Los
Angeles, California, 90064. He was employed as an Eligibility Worker. According
to Bratton's supervisor Ms. Lazo, he (Bratton) was a good and dependable
employee. According to the investigating officer Couller, the shooting was
precipitated by a dispute over, religion. He (Bratton) was a neighborhood
nuisance, as self professed vigilante, would sit in his car and drink alcohol.  $\not{H}$ 75

LIFE PRISONER EVALUAT~ - REPORT                                                        7
INTIAL PAROLE CONSIDER... ION HEARING
OCTOBER 2005 CALENDAR

> Although he had a job he was a "bane" to his neighbors. Although, he claimed he
> had been robbed and attacked, there was no police record to substantiate that.

> Bratton started drinking alcohol at the age of 14. He claims he started drinking to
> relieve stress. At the time of the instant matter, he claims he had been drinking
> Vodka, however he was not drunk. He claimed to have tried cocaine and
> marijuana on occasion. At the time of his arrest Bratton related that he had a
> fungus on his foot. He suffers from depression which causes him to break out in
> hives.

> The above information was obtained from the Probation Officer Report (POR)
> Pages 6, 7, 8, 9, &10.

## III.    POSTCONVICTION FACTORS:

**A.**    **Special Programming/Accommodations:** Bratton has no disability that would
         require any special programming.

**B.**    **Custody History:** Bratton was received in the Department of Corrections on
         12/29/04. Bratton was originally committed to California State Prison,
         Sacramento on 3/22/95. He was established at Close A custody with 60
         classification points, then release to general population. He remained at CSP-SAC
         until transferring to North Kern State Prison (NKSP) on 11/21/97, Level III
         program. His custody was established at Close B and was subsequently placed on
         the CCCMS program. He remained at NKSP until transferring to the Correctional
         Training Facility (CTF) on 5/2/02. Bratton requested transfer to CTF-II in order to
         participate in Vocational training programs. Bratton is now established at Medium
         A custody at 19 points.

**C.**    **Therapy and Self-Help Activities:** There are no documents referencing to any
         activity in academics, vocational or self –help and therapy Programs during this
         period. Bratton is currently unassigned, however, he was non-adversely
         unassigned from Textiles on 7/21/05, due to mission change at East Dorm.

**D.**    **Disciplinary History:** Bratton's overall pattern of behavior has continued to be
         minimal or no investment in his present program since his last Documentation
         Hearing.

         CDC-115s:

         | Date: | Location: | Rule #: | Disposition: |
         |-------|-----------|---------|--------------|
         | 10/21/99 | NKSP | 3004(b) | **Guilty:** Assessed 30 days forfeiture of credits. |

H176

BRATTON, RONALD        J45341                    CTF-SOLEDAD         **OCT/2005**

LIFE PRISONER EVALUATION REPORT                                              8
INTIAL PAROLE CONSIDERATION HEARING
OCTOBER 2005 CALENDAR

CDC-128As:

| Date: | Location: | Counseling Offense: |
|---|---|---|
| 01/25/98 | NKSP | Counseled on failure to his failure to turn cell light on and stand for count. |
| 10/26/98 | NKSP | Counseled on his delaying the pill time. |

E.  **Other:** Bratton appeared before the Board of Prison Term on 3/13/03 for a
Documentation Hearing. The following recommendations were made:

1. Vocational Training: None noted during this period.
2. Academics: TABE 12.9 (2001).
3. Work record: ABE-III Clerk w/1, 2, & 3 as grades. (2000 to 1/4/02) none from
   that point on, until he was assigned porter (2003).
4. Group Activities: Anger Management (2000).
5. Psychiatric Treatment: CCCMS (2000 to 2002).
6. Prison Behavior- Above Average.

Other – In addition to the aforementioned, BPT also recommended to:
1. Obtain Vocation.
2. Upgrade educationally.
3. Remain disciplinary-free.
4. Participation in self-groups.

In the period of time since that hearing, his behavior has remained the same as
before the hearing in that he has remain disciplinary free (since 1999) with a full-
time work assignment. He has remained uninvolved in any vocational or
academic training, or self-help or therapy activities in spite of the specific
recommendations.

IV.  **FUTURE PLANS:**

A.  **Residence:** Refer to assessment.

B.  **Employment:** Refer to assessment.

C.  **Assessment:**
    a. Bratton failed to submit residence plans for this report after a verbal request
       on 7/28/05 to provide it.

    b. Bratton failed to submit employment plans for this report after a verbal
       request on 8/3/05 to provide it.                                     H177

LIFE PRISONER EVALUATI REPORT                                    9
INTIAL PAROLE CONSIDER ION HEARING
OCTOBER 2005 CALENDAR

With Bratton's failure to supply any plans for residence or employment upon parole, it is this counselor's assessment that Bratton's future plans <u>are to continue his present program, rather than parole.</u>

## V.    USINS STATUS:

## VI.    SUMMARY:

A.    Prior to release the prisoner could benefit from:

1. Remaining disciplinary free.
2. Initiate participation in self-help programs and one on one therapy of available.
3. Initiate participation in Education and correspondent for high education.
4. Obtain a Vocational Trade.

B.    This report is based upon (1/2) interview with Bratton, incidental contact in the housing unit, and a thorough review of his Central File.

C.    Bratton was afforded an opportunity to examine his Central File on 7/28/05, however decline to do so.

D.    No accommodation was required per the Armstrong vs. Davis BPT Parole Proceedings Remedial Plan (ARP) for effective communication.

H178

BRATTON, RONALD        J45341            CTF-SOLEDAD            **OCT/2005**

LIFE PRISONER EVALUA~ ~EPORT
INTIAL PAROLE CONSIDER. .'ION HEARING
OCTOBER 2005 CALENDAR

10

_L.R. Baker, CC1_  B-31- 05

L.R. Baker,                     Date
Correctional Counselor I


_J.L. Sareli_      8-31-\

J.L. Sareli,                    Date
Correctional Counselor II


_J.L. Clancy_      9/14/05

J.L. Clancy,                    Date
Facility Captain


_D.S. Levorse, C&PR_   9-15-05

D.S. Levorse,                   Date
Classification and Parole Representative


H179

BRATTON, RONALD          J45341              CTF-SOLEDAD          **OCT/2005**

BOARD OF PRISON TERMS                                                    STATE OF CALIFORNIA
LIFE PRISONER: POSTCONVICTION PROGRESS REPORT

☒    DOCUMENTATION HEARING

☐    PAROLE CONSIDERATION HEARING

☐    PROGRESS HEARING

INSTRUCTIONS
TO CDC STAFF:  DOCUMENT EACH 12-MONTH PERIOD FROM THE DATE THE LIFE TERM STARTS TO PRESENT
TO BPT STAFF:  FOR EACH 12-MONTH INCREMENT APPLY THE GUIDELINES UNDER WHICH THE PAROLE DATE WAS ORIGINALLY
ESTABLISHED, ie., 0-2 MONTHS FOR PBR AND 0-4 MONTHS FOR BPT. SEE BPT §§2290 - 2292, 2410 AND 2439.

| POSTCONVICTION CREDIT | | | |
|---|---|---|---|
| YEAR | BPT | PBR | REASONS |
| 11/16/99 to 11/16/00 | | | **PLACEMENT**: Remained at NKSP-III in the GP. **CUSTODY**: CLO B until reduced to MED A at ICC on 7/25/00. **CLASSIFICATION SCORE**: 38. **ACADEMIC**: None. **WORK**: Assigned as the ABE-II/III Clerk. CDC 101's dated 12/6/99 and 3/9/00, reflect above average and exceptional grades. CDC 101 dated 9/11/00, reflects below average, satisfactory, above average, and exceptional grades. **VOCATION**: None. **GROUP ACTIVITIES**: Participated in and completed the six month Anger Management Group. **PSYCH TREATMENT**: CCCMS for medical necessity on psychotropic medication per CDC 128-C dated 10/25/00. **PRISON BEHAVIOR**: Disciplinary free. |

DATE
11-12-02

BRATTON                    J-45341                    CTF-SOLEDAD

H186

BOARD OF PRISON TERMS

STATE OF CALIFORNIA

CONTINUATION SHEET: LIFE PRISONER : POSTCONVICTION PROGRESS REPORT

| POSTCONVICTION CREDIT | | | |
|---|---|---|---|
| YEAR | BPT | PBR | REASONS |
| 11/16/00 to 11/16/01 | | | **PLACEMENT**: Remained at NKSP-III in the GP. **CUSTODY**: MED A. **CLASSIFICATION SCORE**: Reduced to 30 per CDC 840 dated 3/14/01. **ACADEMIC**: TABE test score of 12.9. **WORK**: Remained assigned to ABE II/III. CDC 101 dated 12/12/00, reflects satisfactory and above average grades. CDC 101 dated 4/12/01, reflects exceptional, above average and satisfactory grades. CDC 101 dated 10/10/01, reflects exceptional, above average and satisfactory grades. **VOCATION**: None. **GROUP ACTIVITIES**: None. **PSYCH TREATMENT**: CCCMS on Heat Risk Meds per CDC 128-C dated 10/19/01. **PRISON BEHAVIOR**: Disciplinary free. |

ORDER:

☐ BPT date advanced by _____ months.
☐ PBR date advanced by _____ months.

☐ BPT date affirmed without change.
☐ PBR date affirmed without change.

SPECIAL CONDITIONS OF PAROLE:
☐ Previously imposed conditions affirmed.
☐ Add or modify

☐ Schedule for Progress Hearing on appropriate institutional calendar

BRATTON                J-45341                    CTF-SOLEDAD

BOARD OF PRISON TERMS

STATE OF CALIFORNIA

H181

BPT 1004 (REV 7/86)

Page __2__

BOARD OF PRISON TERMS                                                                  STATE OF CALIFORNIA

CONTINUATION SHEET: LIFE PRISONER : POSTCONVICTION PROGRESS REPORT

| POSTCONVICTION CREDIT | | | |
|---|---|---|---|
| YEAR | BPT | PBR | REASONS |
| 11/16/01 to 11/16/02 | | | **PLACEMENT**: Remained at NKSP-III until transferred to CTF on 5/2/02 due to Level II points.<br>**CUSTODY**: MED A.<br>**CLASSIFICATION SCORE**: 22.<br>**ACADEMIC**: None.<br>**WORK**: Remained assigned to ABE II/III Clerk until transferred to CTF. CDC 101 dated 1/4/02, reflects exceptional, above average and satisfactory grades. He is currently assigned as the F-Wing Porter.<br>**VOCATION**: None.<br>**GROUP ACTIVITIES**: None.<br>**PSYCH TREATMENT**: CCCMS on psychotropic medication for medical necessity per 128-C dated 5/29/02.<br>**PRISON BEHAVIOR**: Disciplinary free. |

ORDER:

☐ BPT date advanced by _____ months.          ☐ BPT date affirmed without change.
☐ PBR date advanced by _____ months.          ☐ PBR date affirmed without change.

SPECIAL CONDITIONS OF PAROLE:

☐ Previously imposed conditions affirmed.
☐ Add or modify

☐ Schedule for Progress Hearing on appropriate institutional calendar

CTF-SOLEDAD

BOARD OF PRISON TERMS                                          STATE OF CALIFORNIA

H 182

BOARD OF PRISON TERMS

OF CALIFORNIA

STATE

LIFE PRISONER: POSTCONVICTION PROGRESS REPORT

☐   DOCUMENTATION HEARING

☒   PAROLE CONSIDERATION HEARING

☐   PROGRESS HEARING

INSTRUCTIONS

TO CDC STAFF: DOCUMENT EACH 12-MONTH PERIOD FROM THE DATE THE LIFE TERM STARTS TO PRESENT
TO BPT STAFF: FOR EACH 12-MONTH INCREMENT APPLY THE GUIDELINES UNDER WHICH THE PAROLE DATE WAS ORIGINALLY
ESTABLISHED, i.e., 0-2 MONTHS FOR PBR AND 0-4 MONTHS FOR BPT. SEE BPT §§2290 - 2292, 2410 AND 2439.

| POSTCONVICTION CREDIT | | | |
|---|---|---|---|
| YEAR | BPT | PBR | REASONS |
| 11/16/02 to 12/03 | | | **PLACEMENT**: Remained at the Correctional Training Facility (CTF) during this period. **CUSTODY**: Retain Medium A custody during this period. **VOC. TRAINING**: None noted during this period. **ACADEMICS**: None noted during this period. **WORK RECORD**: Bratton was assigned as F-Wing Porter from 9/24/02 to 4/13/04 with above average to exceptional ratings. **GROUP ACTIVITIES**: None noted during this period. **PSYCH. TREATMENT**: Continued CCCMS status. **PRISON BEHAVIOR**: None noted during this period. **OTHER**: N/A. |

_L. R. Baker, CCI_

BRATTON, RONALD          J45341          CTF-SOLEDAD

DATE  8 - 31 - 05

OCT/2005

H183

BOARD OF PRISON TERMS                                                                    STATE OF CALIFORNIA

CONTINUATION SHEET: LIFE PRISONER: POSTCONVICTION PROGRESS REPORT

| POSTCONVICTION CREDIT | | | |
|---|---|---|---|
| YEAR | BPT | PBR | REASONS |
| 12/03 to 12/04 | | | **PLACEMENT**: Remained at CTF.<br>**CUSTODY**: Retain at Med A.<br>**VOC. TRAINING**: None noted during this period.<br>**ACADEMICS**: None noted during this period.<br>**WORK RECORD**: Continued assignment as F-Wing Porter with above average to exceptional ratings. Bratton received non-adverse, reassignment to Textile effective 11/3/04.<br>**GROUP ACTIVITIES**: None noted during this period.<br>**PSYCH. TREATMENT**: Continued CCCMS status.<br>**PRISON BEHAVIOR**: None noted during this period.<br>**OTHER**: N/A |

ORDER:
- ☐ BPT date advanced by _____ months.
- ☐ PBR date advanced by _____ months.
- ☐ BPT date affirmed without change.
- ☐ PBR date affirmed without change.

SPECIAL CONDITIONS OF PAROLE:
- ☐ Previously imposed conditions affirmed.
- ☐ Add or modify

☐ Schedule for Progress Hearing on appropriate institutional calendar

BRATTON, RONALD          J45341                    CTF-SOLEDAD                   OCT/2005

H\84

BOARD OF PRISON TERMS                                                                    STATE OF CALIFORNIA

H 184

BPT 1004 (REV 7/86)                                        Page _2_

BOARD OF PRISON TERMS                                                                  STATE OF CALIFORNIA

CONTINUATION SHEET: LIFE PRISONER : POSTCONVICTION PROGRESS REPORT

| POSTCONVICTION CREDIT | | | |
|---|---|---|---|
| YEAR | BPT | PBR | REASONS |
| 12/04 to 8/05 (Present) | | | **PLACEMENT**: Remained at CTF. **CUSTODY**: Retained Medium A. **VOC. TRAINING**: None noted during this period. **ACADEMICS**: None noted during this period. **WORK RECORD**: Continued assignment in Textiles however, on 8/3/05 Bratton was removed non-adversely effective 7/20/05 Bratton was removed non-adversely effective 7/20/05 due to mission change at East Dorm. **GROUP ACTIVITIES**: None noted during this period. **PSYCH. TREATMENT**: None noted during this period. **PRISON BEHAVIOR**: None noted during this period. **OTHER**: N/A |

ORDER:

☐ BPT date advanced by _____ months.        ☐ BPT date affirmed without change.
☐ PBR date advanced by _____ months.        ☐ PBR date affirmed without change.

SPECIAL CONDITIONS OF PAROLE:
☐ Previously imposed conditions affirmed.
☐ Add or modify _____

☐ Schedule for Progress Hearing on appropriate institutional calendar

BRATTON, RONALD            J45341                        CTF-SOLEDAD                OCT/2005

H185

BOARD OF PRISON TERMS                                                                  STATE OF CALIFORNIA

BPT 1004 (REV 7/86)                                      Page _3_

BOARD OF PRISON TERMS                                                                                STATE OF CALIFORNIA

# LIFE PRISONER: DOCUMENTATION HEARING (BPT §2269.1)

BPT REPRESENTATIVE

| SENTENCE INFORMATION | | |
|---|---|---|

| OFFENSE (CODE, SECTION AND TITLE) | | CASE NUMBER | COUNT NUMBER |
|---|---|---|---|
| **PC 187(A)  MURDER  2ND** | | **BA092833** | **01** |

| DATE RECEIVED CDC | MIN ELIG PAROLE DATE | EARLIEST MIN ELIG PAROLE DATE |
|---|---|---|
| **12/29/94** | **06/27/2006** | |

| INITIAL HEARING SCHEDULED | PERIOD COVERED BY THIS HEARING | PRIOR DOCUMENTATION HEARING DATES |
|---|---|---|
| **10/2005** | **12/14/99 TO PRESENT** | 12-29-94 to 12/14/99 |

| INFORMATION CONSIDERED | | |
|---|---|---|

| CDC 115 CHRONOS | | LAUDATORY CHRONOS | |
|---|---|---|---|
| | | DATE | CIRCUMSTANCES |
| ☒ DISCIPLINARY FREE | | | |
| ☐ MAJOR DISCIPLINARY (SERIOUS) | | | |
| ☐ MINOR DISCIPLINARY (ADMIN) | | | |

| CDC 128 CHRONOS (NEGATIVE) | | CHRONOS - WORK, EDUCATIONAL, VOCATIONAL, ETC | |
|---|---|---|---|
| DATE | CIRCUMSTANCES | DATE | CIRCUMSTANCES |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| INSTRUCTIONS TO CDC STAFF | |
|---|---|

DOCUMENTS STILL REQUIRED _____

PSYCHIATRIC

  REFER TO CATEGORY _____

  COMPLETE PRIOR TO _____

PLACE ON APPROPRIATE

  ☐ LIFE PRISONER DOCUMENTATION CALENDAR

  ☒ LIFE PRISONER PAROLE CONSIDERATION HEARING CALENDAR

OTHER _____

_____

_____

| NAME | CDC NUMBER | INSTITUTION | CALENDAR | HEARING DATE |
|---|---|---|---|---|
| BRATTON | J45341 | CTF-SOLEDAD | 12/2002 | H186  03/13/03 |

BPT 1009                          PAGE 1 OF 2 PAGES                    PERMANENT ADDENDA

AFTER REVIEWING WITH THE PRISONER THE FACTORS WHICH MIGHT BE OF CONCERN AT HIS/HER INITIAL PAROLE HEARING, THE PANEL MADE THE FOLLOWING EVALUATIONS AND FUTURE RECOMMENDATIONS:

RE:   VOCATIONAL TRAINING_____ *none noted this period*

RE:   ACADEMICS_____ *Thru 12.9 (2001)*

RE:   WORK RECORD_____ *ABE III clerk w/ 1's 2's + 3's as grades. (2000 to 1-4-02) none from that point on until he was assigned porter (2003)*

RE:   GROUP ACTIVITIES_____ *anger mgmt (2000)*

RE:   PSYCHIATRIC TREATMENT_____ *CCCMS (2000 to 2002)*

RE:   PRISON BEHAVIOR_____ *Above average*

RE:   OTHER_____ *Recommend:*
*1. Obtain vocation.*
*2. Upgrade educationally.*
*3. Remain disciplinary free.*
*4. Participate in self help groups*

BPT REPRESENTATIVE SIGNATURE

DATE   *3-13-03*

| NAME | CDC NUMBER | INSTITUTION | CALENDAR | HEARING DATE |
|------|-----------|-------------|----------|--------------|
| BRATTON | J45341 | CTF-SOLEDAD | 12/2002 | 01/13/03 |

*1+187*

DEPARTMENT OF CORRECTIONS AND REHABILITATION
Correctional Training Facility
Soledad, California

**SUPPLEMENTAL PAGE**
First Level Appeal

To:  **BRATTON**              CDC # **J45341**         Cell: **CW-133L**

RE:   CTF APPEAL LOG No. **CTF-C-05-03570**
First Level Reviewer's Response

**APPEAL DECISION:**        **Partially Granted**

**INMATE INTERVIEWED:**

**APPEAL ISSUE:**        **Staff Complaints**

**APPEAL RESPONSE:**

On 11-30-05, CCII M. Arfa interviewed you regarding your appeal and provided you an opportunity to expound on the appeal issues.  In addition interviewing you, I conducted an inquiry into the issues raised, and I have reached the following conclusion.

1. On October 12, 2005, you filed a CDC 602, inmate appeal.  The basis of this appeal being you felt CCI L. Baker treated you in an unprofessional, derogatory manner and failed to do her job.  Additionally, you felt CCI Baker depicted you in an unfavorable manner in the report presented to the Board of Paroles.  A secondary contention appears to be that CCI Baker did not do as you requested, removing you from the Vocational Print Shop waiting.

2. Your request action being CCI Baker be removed as your counselor.  The Board of Paroles be made aware of your opinion in regard to CCI Baker's attitude toward you.  That CCI Baker be removed from her job position and disciplined.

In the course of this appeal, you addressed several issues, which should have been addressed in different appeals.  For the sake of expediency, I will address the various issues in this response.

a) On December 6, 2005, I contacted Lieutenant P. Santiago, Inmate Assignment Office, concerning you.  I was informed you are currently assigned to Prison Industries Authority – Textiles.  The only waiting list you are on is Support Services – Clerical, as you requested.

b) You are no longer on CCI Baker's caseload due to your being housed in C Wing.

Inmate BRATTON, you offer only opinion of CCI Baker's alleged abuse and unprofessional attitude.  Your staff complaint is unfounded in that you offer no evidence of malfeasance on the part of CCI Baker.

You state in your appeal, you heard members of the classification say they were going to place you on the Vocational Print Shop waiting list and said nothing to prevent it, despite the fact that your presence at classification is specifically required so you may take part in the committee.  Your use

H188

CDC 602 Inmate Appeal
Log # CTF CEN-05-03570
Page 2 of 2

of a Multipurpose Form is not a basis to compel staff to act. As you presented in your appeal packet, the Multipurpose Forms were responded to and it was stated your requested action would be considered at your next classification appearance.

You should be aware that your assignment to Prison Industry Authority is not considered vocational training. While you may learn valuable work ethics and job skills, it is not vocational training and not recognized as such by the Board of Paroles.

Based upon the aforementioned, your appeal is Partially Granted at the First Level of review.

**J.L. Sareli**
CCII
Unit II, CTF – Central

**J.L. Clancy**
Facility Captain
Unit II, CTF – Central

Noted: *[signature]*. AW

cc:   C File
      Appeals Coordinator's Office

H 189

DEPARTMENT OF CORRECTIONS AND REHABILITATION
Correctional Training Facility
Soledad, California

# SUPPLEMENTAL PAGE

CTF APPEAL LOG No. *CTF-C-05-03570*
**Second Level Reviewer's Response**

*BRATTON*              *J45341*                    *CW-133L*

## APPEAL DECISION:

### *DENIED*

## APPEAL ISSUE:  Staff Complaints

## APPEAL RESPONSE:

In your appeal you state the following:

1. That CCI L. Baker behaved in an unprofessional and unethical manner as retaliation for the filing of an appeal (602).

2. That unprofessional behavior is in the form of a negative statement in the Board Report written by CCI L. Baker in October of 2005.

As redress for CCI Baker's behavior, you request that she be removed from her position and the Board of Prison Terms is notified of the circumstances.

To answer your appeal, the following was reviewed:

1. Your prior appeal Log # CTF-C-05-01978.

2. Your Central File.

3. Multi-purpose forms dated 6/4/05 and 3/30/05.

4. The portion of the 10/2005 Board Report you provided with your appeal.

5. Board of Prison Terms model Board Report of 11/14/02.

In the review there is no evidence of unprofessional behavior. CCI Baker is obligated to provide an assessment of problems with your parole plans. Since you did not provide any plans for parole, the Counselor made the only assessment possible, "Continue present program, rather than parole." I encourage you to provide enough information for your next Board of Prison Terms hearing to allow evaluation of your prospects for successful parole.

#190

*CTF APPEAL LOG No. CTF-C-05-03570*
Second Level Reviewer's Response
Page 2 of 2

Therefore, based on the aforementioned, your appeal is being **DENIED** at the Second Level of Review. It is noted that CCI Baker has transferred to another institution.

Reviewed By: _____     _____
                     W.J. Hill, Associate Warden              Date

             _____     _____
                     A.P. Kane, Warden (A)                    Date

H191

First Level    ☐ Granted    ☑ P. Granted    ☐ Denied    ☐ Other ___ NOV 0 2 2005

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: _____    Due Date: DEC 19 2005

Interviewed by: _M. Arfa, ccI_

_See attached_

12/8/05

Staff Signature: _____    Title: _C C II_    Date Completed: _____
Division Head Approved:
Signature: _____    Title: _C Po/A)_    Returned
                                                 Date to Inmate: DEC 21 2005

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

unsatisfactory answer, second level review requested. The answer does not reflect the severe reality of the information offered, or even seem to comprehend it. There is only one theme of action being offered, that is the unprofessional actions and unethical behavior of the counselor named, the 602 attached as well as the allpurpose form are supporting documents only/exhibits, the proof of inappropriate retalitory behavior is pgs 9,10 of board report

Signature: _Ronald Bratton_    Date Submitted: _Dec. 25, 2005_

Second Level    ☐ Granted    ☐ P. Granted    ☑ Denied    ☐ Other _____

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: DEC 27 2005    Due Date: JAN 26 2006
☑ See Attached Letter

Signature: _____    Date Completed: 1/20/06
Warden/Superintendent Signature: _____    Date Returned to Inmate: JAN 26 2006

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

The second level review is not truthful nor dos it take the proper assessment of the counselors vindictive actions documented by the snide remarks made on the 04 the request for interview forms or the 602 in June showing the reason for the vindictive actions. Attached is Exhibit "e" pgs 1,2,3, showing the parole plans were done on August 12, 2005, and the recommendation done on 8/31/05 by C C I. Further Review is requested and actions need to be taken

Signature: _Ronald Bratton_    Date Submitted: _Feb. 7, 2006_

For the Director's Review, submit all documents to:    Director of Corrections
                                                        P.O. Box 942883
                                                        Sacramento, CA 94283-0001
                                                        Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION:    ☐ Granted    ☐ P. Granted    ☐ Denied    ☐ Other _____
☐ See Attached Letter
CDC 602 (12/87)    Date: _____    H 192

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

## DIRECTOR'S LEVEL APPEAL DECISION

Date: **MAY 1 2 2006**

In re:    Bratton, J-45341
Correctional Training Facility
P.O. Box 686
Soledad, CA 93960

IAB Case No.: 0509173        Local Log No.: CTF 05-03570

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner J. G. Arceo, Facility Captain. All submitted documentation and supporting arguments of the parties have been considered.

**I    APPELLANT'S ARGUMENT:** It is the appellant's position that Correctional Counselor I (CCI) Baker was unprofessional when completing his October 2005 Board of Prison Terms (BPT) Report and she failed to do her job. He contends that she acted in an unethical manner as retaliation for filing an appeal. Additionally, she did not remove him from the Vocational Print Shop waiting list as he wanted. He requests to be removed from her caseload; that she is disciplined; and the Board of Prison Terms notified of the circumstances of removing her from her position.

**II    SECOND LEVEL'S DECISION:** The reviewer found no unprofessional conduct on the part of CCI Baker. CCI Baker is obligated to provide an assessment of the appellant's parole plans. Since the appellant failed to provide any plans for parole, the CCI made the only assessment possible, which was to "Continue present program, rather than parole." On December 6, 2005, Correctional Lieutenant Santiago, Inmate Assignment Office was contacted and he reported that the appellant is currently assigned to Prison Industry Authority-Textiles and he is on the Support Services waiting list. CCI Baker has transferred to another institution. The appellant offers no evidence of malfeasance on the part of CCI Baker and his complaint is unfounded.

**III    DIRECTOR'S LEVEL DECISION:** Appeal is denied.

**A. FINDINGS:** Upon review of the documentation submitted, it is determined that the fact-finding investigation failed to reveal evidence to sustain the appellant's allegations against staff.

In the event that staff misconduct was substantiated, the institution would take the appropriate course of action. All staff personnel matters are confidential in nature and not privy to the inquiries of other staff, the general public or the inmate population, and would not be released to the appellant. However, at the completion of the final review, or culmination of an investigation, the appellant will be notified by the respective investigative body that the inquiry has been completed and whether the complaint was unsubstantiated or substantiated. In this case, the institution has reported the disposition to the appellant.

Although the appellant has the right to submit an appeal as a staff complaint, the request for administrative action regarding staff or the placement of documentation in a staff member's personnel file is beyond the scope of the appeals process.

**B. BASIS FOR THE DECISION:**
California Penal Code Section: 832.7, 832.8
California Code of Regulations, Title 15, Section: 3004, 3084.1, 3391

**C. ORDER:** No changes or modifications are required by the institution.

H193

BRATTON, J-45341
CASE NO. 0509173
PAGE 2

This decision exhausts the administrative remedy available to the appellant within CDCR.

N. GRANNIS, Chief
Inmate Appeals Branch

cc:    Warden, CTF
       Appeals Coordinator, CTF

H 194

FILED

SUPERIOR COURT OF CALIFORNIA

COUNTY OF MONTEREY

FEB 2 1 2006

LISA M. GALDOS
CLERK OF THE SUPERIOR COURT
DEPUTY
MELISSA MENDONSA

|  |  |
|---|---|
| In re | ) Case No.: HC 5202 |
|  | ) |
| Ronald Bratton (J-45341) | ) ORDER |
|  | ) |
| On Habeas Corpus. | ) |

On Nov. 15, 2005, Petitioner filed the instant petition seeking an order directing the Board of Prison Term to provide him with a parole hearing date. On Dec. 16, 2005, the Court directed Respondents to file an Informal Response to address Petitioner's claim. On Feb. 10, 2006, the Court received Petitioner's "Request of Default Judgment" because Respondent had not filed an Informal Response. Indeed, there is no record of it in the Court's file. Accordingly, the Court now directs the Court Clerk to serve Respondent with another copy of the petition and Dec. 16, 2005, order. Respondent shall have 30 days from the date this order is signed to file an Informal Response. Thereafter, Petitioner may file a Reply within 30 days of receiving the Informal Response.

Dated:    **FEB 2 1 2006**

Hon. Marla O. Anderson
Judge of the Superior Court

1

H-195

STATE OF CALIFORNIA--CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION          ARNOLD SCHWARZENEGGER, GOVERNOR

**BOARD OF PAROLE HEARINGS**
Post Office Box 4036
Sacramento, CA 95812-4036



August 15, 2006

Mr. Patrick Sparks
Attorney at Law
430 Quinta Road
PMB 135

Morro Bay, CA 93442

                              Re :  BRATTON, RONALD
                                    J45341

Dear Mr. Sparks :

This is your confirmation to represent the above individual as follows:

                Type of Hearing:   Initial
                Date of Hearing:   Wednesday, September 13, 2006
                          Time:    03:30 PM
                         Place:    Correctional Training Facility
                                   Soledad
           Attorney Retained by:   State

Please make arrangments to interview your client and review his/her file at
least two weeks prior to the hearing. To ensure that arrangements will be
made for your client to report promptly for the interview, contact the
Institution Hearing Coordinator no later than 48 hours before the
interview.

Institution Hearing Coordinator:          (831) 678 - 3951 ext. 4340

You should anticipate that a representative from the district
attorney's office will participate in the hearing, either by sending a
representative to the institution or via video conference. In
addition, participation by the victim of the crime or the victim's
next of kin may also occur with their appearance at the hearing or via
video conference.

If you have any questions regarding this matter, please contact Linn
Austen, BPT Hearing Coordinator at (916) 324-1492.

Sincerely,

John Monday
Executive Officer (A)

Lana Wong

BY:
Sandra D. Maciel, Manager
Hearing Support Unit

H196

cc: C-File, Inmate

APPENDIX 'I'

"EMERGENCY APPEAL" (emergency & accidently left off original)
(Duplicate)

STATE OF CALIFORNIA

CC 3084.7(a)(1)(2)(d)

DEPARTMENT OF CORRECTIONS

**INMATE/PAROLEE**
**APPEAL FORM**
CDC 602 (12/87)

Location: Institution/Parole Region         Log No.                Category

1. _____    1. _____    _____

2. _____    2. _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.                                5o-23,35

| NAME | NUMBER | ASSIGNMENT | | UNIT/ROOM NUMBER |
|------|--------|-----------|---|----------------|
| BRATTON, RONALD | J-45341 | 'C' Wing Porter | 4-3-08 | CW-133L |

A. Describe Problem: On MARCH 26,2008 I was re-classified at my annual and put up for transfer to

a level III prison due to a "new interpretation" of CDCR Regulations.  Per CCR title 15, 3375

an inmate is classified in a uniform manner as he comes through a reception center.  This

classifification was supposed to last throughout CDCR jurisdiction.  One of the purposes of

an annual review is to improve the inmat's condititions of confinement by reducing or removing

a previously imposed resrtriction.  Mandatory point levels are for Execution type/style, unus

violence and multiple murders for Level III.  The commitee improperly determined me to be in

this category. (Title XV 3375.2A)  If such restrictions were not placed upon inmate while comi

If you need more space, attach one additional sheet.                    (CONTINUED ON NEXT PAGE #2)

B. Action Requested: THAT THE ARBITRARY DETERMINATION THAT PRISONER MET 3375.2 status be removed

from my files and I be reinstated to level II status.  That the only transfer that this

prisoner should face is to a medicial institution as he has incurable blood cancer; "Chronic

Lymphocyatic Leukemis," and the CTF officials have already demonstrated "deliberate indifferen

toward his health status.

Inmate/Parolee Signature: Ronald Bratton                    Date Submitted: April 4,2008

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____ By-pass _____

_____

_____

Staff Signature: _____                    Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

By-Pass

_____

Signature: _____                    Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim

CTF APPEALS  APR 8 2008  RECEIVED

CDC Appeal Number: I 197

CONTINUED FROM 602 FORM                    Page #2

, reception center, then he does not fit within that standard.

Although UCC, ICC and CSR is given wide discretion in its recommendation of prisoners transfer and placement. This discretion can not be impartial, arbitrary and capricious. Whenever, the exercise of discretion exceeds the bounds of reason of all the circumstance before it being considered, this discretion becomes abusive when it serves no legitimate penological interest. It appears that CTF-Central is attempting to reduce this population by arbitrarily increasing inmates custody based on a new phantom classification process within 3375.2.(a)(7)(A). Then forcing the inmate to have to fight the increase custody in the courts.

CDCR has created a phantom classification for the determination of CCR Title 15, 3375.2.(a) i.e., Execution type/style murder/unusual violence. This new Phantom Classification is being applied in an abusive, arbitrary and capricious manner, in that any homicide, where the victim died as a result of an up close upper body injury is now an execution type/style murder or is classified as unusual violence. It should be noted that there is a potential that this new specious procedure will also be used against an inmate at his board hearing, as a ground to deny parole thus creating a liberty interest concern.

In particular this new policy is only targeting inmates on a Level II yard. Inmates who have programed from a High level to a low level prison. These inmates have a state created liberty interest due to their having a classification status below Level III and/or lowest point level possible for life inmate... i.e., (Mandatory 19 Points).

This group of inmates have successfully participate in positive programs, from more restrictive condition, which has subsequently resulted in their being granted approval for release from close custody, and yards where there is towers coverage within the units referenced as 180° and/or 270° designs. Inmates from this class have regulatory rights to be separated from inmates having higher custody status due to their reasonable and forseeable conflict in positive program objective. To now create an arbitrary phantom classification is spacious, in that there appears to be an under tone of discrimination against a certain group of inmates who have stayed out of trouble. These factors are not considered by UCC, ICC or CSR when reviewing placement of these inmates under this new review.

These inmates crimes are now being recharecterized, in violation of their constitution rights. This new phanton classification is also in violation of the Office of Administrative Law (OAL) and the Administrative Procedure Act (APA). In order to implement this new policy inmates shall be given notice, such policy has to go through the proper channels. In addition, Substantive Due Process, requires that all legislation, state or federal, must Reasonably related to a legitimate government objective. The concept of procedure due process, guarantees, procedure fairness, where the government attempts to deprive one of his property or liberty: This requires fair notice, and fair hearing prior to a deprivation of life, liberty of property be given. Because of this new policy level II inmates are being singled out due to an unauthorized new classification procedure that increases their custody and force them back into a higher security setting. These level II inmates are the only ones who are being affected by this phantom policy. Because the new application of 3375 UCC, ICC and CSR is able to create a classification on the fly. Thus, this new classification policy is discriminatory. This can also be traced to staff inadequate training. Thus, the warden can not simply delegate

I-198

**INMATE/PAROLEE
APPEAL FORM**
CDC 602 (12/87)

Location: Institution/Parole Region

Log No.

1. _____    1. _____    Category
2. _____    2. _____    _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

NAME
BRATTON, R

NUMBER
J-45341

ASSIGNMENT
'C' Wing Porter

UNIT/ROOM NUMBER
CW-1331

A. Describe Problem: On March 21, 2008 I was told I would be re-classified at my annual and put up for transfer to a level III prison due to a new regulation. Per CCR Title 15, 3375 an inmate is classified in a uniform manner as he comes through a reception center. This classification was supposed to last throughout my CDCR juristicion. One of the purposes of an annual review is to improve the inmate's conditions of confinement by reducing or removing a previously imposed restriction. An execution type/style, unsual violence and multiple murders fall within the DRB authority to review. (Title XV 3375.2A) The committee improperly determined me to be in this class. This inmate determined that if such restrictions were not placed on him upon coming

If you need more space, attach one additional sheet.

B. Action Requested: That the arbitrary determination that he met 6375.2 status be removed from my files and I be reinstated to level II status. That the only transfer inmate should face is to a medical institution, as prisoner has "Chronic Lymphatic Leukemia," an incurable blood cancer. Only those who could reach 3375.2 are 1st degree murders

(Cont on pg 2)

Inmate/Parolee Signature: _____    Date Submitted: March 26, 2008

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

_____ Date Returned to Inmate: _____

Staff Signature: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

Date Submitted: _____
CDC Appeal Number:

Signature: _____
Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim

State of California
CDC FORM 695
Screening For:
CDC 602 Inmate/Parolee Appeals
CDC 1824 Reasonable Modification or Accommodation Request

RE: Screening at the FIRST Level

*April 7, 2008*

### *BRATTON, J45341, CFCWT1000000133L*

Log Number: CTF-S-
(Note: Log numbers are not assigned to screen out appeals, or informal level appeals)

The enclosed documents are being returned to you for the following reasons:

*You have failed to provide necessary copies of your chrono(s).*

*Comments:  128G,  Classification Committee action dated 3/16/2008.*

**P.A. Santiago**, CCII / **P. G. Dennis**, CCII
Appeals Coordinators
Correctional Training Facility

**NOTE:**  Failure to follow instruction(s) will be viewed as non-cooperation and your appeal will be
automatically dismissed pursuant to CCR 3084.4(d).  This screening decision may not be
appealed.  If you believe this screen out is in error, please return this form to the Appeals
Coordinator with an explanation of why you believe it to be in error, and supporting
documents.  You have only 15 days to comply with the above directives.

---

**PERMANENT APPEAL ATTACHMENT – DO NOT REMOVE**

this authority to his subordinates by rubber stamping the action of his staff. In particular, when sending well behave programing inmates back into an increased dangers environment.

Without minimizing the serverity of the crimes, the facts of the commitment offense in this case are not sufficiently egregious, callous, dispassionate, cruel or any other aggravating factor cited in CCR Title 15, 3375.2. The courts have made a correct analysis comparing these inmates commitment crimes to the minimal elements required for murder. As determined in, In re Samble also see People v. Lewis 50 Cal.3d 262. The court definition of a execution style/type murder is also the same as CCR Title 15, 3000. In order to classify a murder as execution type homicide, the victim must have been bound, cuffed, gagged, blindfolded or forced to assume a position from which the victim is unable to resist or flee; the victim is shot at close range; or the manner of death demonstrates that the victim had no opportunity to defend himself nor to flee. In each case where an inmate was charge with execution style murder there was an expert, surviving victim or a eye witness. Thus, it is difficult to discern how this prisoners crime can now be considered anything other than the minimum required to sustain his conviction. Any person of ordinary sensibility could fairly characterize every murder within CCR Title 15, 3375.2. In the manner that it is being applied by UCC, ICC and CSR, they cursory approach, on a fly, can now fit any up close murder whether with a gun hand or bat, within CCR Title 15, 3375.2. They are also applying unusual violence definition arbitrarily. Thus, the actions of these committee members ware there is no guild lines to define how these policies should apply, inmates are being arbitrarily and capriciously placed back in a level III prison based on CCR Title 15, 3375.2. There is no clear definition of unusual violence. Also, they are using execution type murder in a ambiguous manner, where it's being apply very liberally.

The new sentencing guideline(s) being imposed are violations of 14th Amendment rights, Imposition of an unauthorized sentence. The courts do not have authority to enlarge a statute § 1487. By including 2nd degree murder to include 1st degree crime is to insert qualifying provisions not included in the 2nd degree conviction. Even courts may not rewrite the statute to conform to an assumed intention which does not appear from its language. Hewitt v Helms 459 U.S. 460,466 103 Sct 868-869, "When a state uses "mandatory" language in its enactment of statutory measures, the state creates a protected liberty interest. The California penal code, 189 does not carry with it 1st degree qualifying degrees.

This inmate currently has a civil case in the Northern District court and now for the third time since it has been filed an unconstitutional retaliatory program action is being taken against him, disguised as a mandatory program change. (BRATTON v Ben Curry et al., Case No. C 07-2928) Many of the personal at CTF Central are named as defendants, and this 'adverse' program change will place prisoner in increased danger, despite 14 years of 'good behavior.' Inmate is now one write-up away from the worse level prison in direct contradiction from the purpose of 'classification placement.'

Date :                                    Signature :

State of California
CDC FORM 695
Screening For:
CDC 602 Inmate/Parolee Appeals
CDC 1824 Reasonable Modification or Accommodation Request

RE: Screening at the FIRST Level

April 12, 2008

*LA - 120*

**BRATTON, J45341, CFCWT1000000133L**

Log Number: CTF-S-
(Note: Log numbers are not assigned to screen out appeals, or informal level appeals)

The enclosed documents are being returned to you for the following reasons:

*You have failed to provide necessary copies of your chrono(s). CDC 128G dated 3-26-08.*

**P.A. Santiago**, CCII / **P. G. Dennis**, CCII
Appeals Coordinators
Correctional Training Facility

**NOTE:** Failure to follow instruction(s) will be viewed as non-cooperation and your appeal will be automatically dismissed pursuant to CCR 3084.4(d). This screening decision may not be appealed. If you believe this screen out is in error, please return this form to the Appeals Coordinator with an explanation of why you believe it to be in error, and supporting documents. You have only 15 days to comply with the above directives.

---

**PERMANENT APPEAL ATTACHMENT – DO NOT REMOVE**

I 20R

# CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION

NAME: **BRATTON**                    CDCR #: **J45341**                    BED: **CCW-133L**

## COMMITTEE ACTION SUMMARY

REVIEWED FOR LEVEL II PLACEMENT PER 3375.2. REFER TO THE CSR, RX APPLY MMPS OF 28 AND C-CODE, RX CTF-III/CMC-E- III, NON-ADVERSE, TX WG/PG A1/A EFF: 1/23/98 AND MED A CUSTODY UPON TX.

## COMMITTEE'S COMMENTS

Inmate BRATTON appeared before Correctional Training Facility's (CTF's) Unit III Unit Classification Committee (UCC) today for his Annual Review. BRATTON stated that his health was good and was willing to proceed. BRATTON received his 72-hour notice for the purpose of this review. Prior to committee reviewing and discussing this case, BRATTON was introduced to the committee members.

~~Med A~~
Clos B custody remains appropriate. He is currently assigned as Porter. The CDC-840, 812, and 127 have been updated. The classification score has been adjusted to 0 reflecting 2 periods with no 115's and 2 periods of satisfactory assignment. He does have a Mandatory Minimum Placement Score of 28 due to 3375.2. Subject is ineligible for the COCF Program due to Life Term.

On 3/26/08, Bratton was seen at UCC for his annual review. After careful review of his Central file it was discovered that he does not meet the criteria for Level II placement per CCR 3375.2 (a) (7) (A). The circumstances of his commitment offense, Murder 2nd, are as follows:

On 3/18/94, an altercation ensued between Bratton and the victim, regarding the Gospel. He became upset retrieved his gun from his apartment and shot the victim in the head at close range. Bratton ran to his apartment and was overheard saying \"Shit, nobody is going to mess with my family. God Dammit, I'll kill him.\" Multiple witness saw Bratton shoot the victim at close range in the head. Also during UCC, Bratton admitted to shooting the victim at close range.

CCR 3375.2 (a) (7) (A) states: An inmate serving any life term shall not be housed in a level I or II facility if any of the following case factors are present. The commitment offense involved multiple murders, unusual violence or execution-type murders or received high notoriety. Due to meeting the definition of an execution type murder with his commitment offense, in that the victim was shot at close range, subject is ineligible for level I or II placement.

Case factors remain the same per Initial Classification Chrono dated 5/15/02 with the exception of him now having Level III points.

He stated he prefers to transfer to CMC-E-III, due to having chronic Leukemia and feels, he would best be treated at CMC. He also stated that he disagrees with the transfer and that he felt that he did not meet the criteria. Due to the immediate location, having no documented enemies, and meeting the criteria, CTF-III placement is recommended. The Confidential File was reviewed.

Subject was screened for the COCF program and is ineligible due to Life Term. Bratton is not eligible for Camp, C.C.F., M.C.C.F., M.S.F and Restitution Center due to Life term.

Based upon a review of BRATTON'S Central File, case factors, and through discussion with him, committee elects to: Reviewed for level II placement Per 3375.2. Refer to the CSR, Rx apply MMPS of 28 and C-code, Rx CTF-III/CMC-E- III, non-adverse, TX WG/PG A1/A eff. 1/23/98 and Med A custody upon TX.

At the conclusion of this review, BRATTON was informed of his Appeal Rights with regards to this committee's actions. BRATTON acknowledged his understanding and disagreement with committee's actions.

**STAFF ASSISTANT**

Not Assigned: (Participant in MHSDS but able to comprehend issues)

## INMATE'S CASE FACTORS

| CUSTODY | PRS/LEVEL | WG/GRP & EFF. DATE | RELEASE DATE | GPL | RECLASS | ETHNIC | PSYCH - DATE 128C | NEXT BPT & DATE |
|---------|-----------|---------------------|--------------|------|----------|--------|--------------------|------------------|
| MEDA | 28/III | A1A - 1/23/1998 | MEPD 11/16/2006 | 12.9 (R) | 3/1/2009 | BLA | CCMS | SUB # 1 9/2010 |

## COMMITTEE MEMBERS

**MEMBERS**
T. Verdesoto

D. Carrazza, EC (A)
*CHAIRPERSON*

C. Lopez, CCI
*RECORDER*

Committee Date: 3/26/2008        **ANNUAL REVIEW**        Committee: C032608CYL7

Typed By: C.L - Distribution: C-File & Inmate        **CORRECTIONAL TRAINING FACILITY**        Classification Chrono CDCR 128G (Rev: 10/07)

I 202

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS
CDC 840 (Rev. 12/02) Case 2:08-cv-02788-JSW    Document 1-2    Filed 06/04/2008    Page 84 of 101
Original  -  Central File
Canary  -  QIS
Green  -  Inmate

# CDC RECLASSIFICATION SCORE SHEET

| 4. DATE OF LAST SCORE SHEET | | | | | 5. FORM IDENTIFICATION (ENTER X in a, b or c) | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| MO | DAY | YR | | | a) NEW | b) CORRECTION | DATE CORRECTED | | | c) DELETE |
| 2 3 | 7 | 18 | | | X 24 | 25 | MO | DAY | YR | 26 32 |

## B. ANNUAL / 6 MONTH REVIEW PERIOD DATES

| | MO | DAY | YR | 3. (Enter X) Annual |
|---|---|---|---|---|
| 1. REVIEW PERIOD BEGINNING DATE | 3 | 1 | 7 33 | X 39 |

| | MO | DAY | YR | 4. Number of Full Review Periods |
|---|---|---|---|---|
| 2. REVIEW PERIOD ENDING DATE | 2 | 8 | 8 40 | 2 |

## E. CORRECTION TO CDC 840 SCORE SHEET (Prior to Rev. 07/02)

1. Use this section to correct a CDC 840 score sheet with a form revision date prior to 07/02.    **TOTAL CORRECTION =** (+ OR -)  70

## F. COMPUTATION OF SCORE

| | | | |
|---|---|---|---|
| 1. PRIOR PRELIMINARY SCORE (Preliminary Score from 839/New Preliminary Score from 840 or 841) | = | | 0  73 |
| 2. Net Change In Score (D. 8 minus C. 4) | = | (+ or -) | − 8  76 |
| 3. PRELIMINARY SCORE SUBTOTAL (Not less than 0) | = | | 0 |
| 4. Change in Term Points (T/P) (x 2) - Old T/P _____ + New T/P _____ | = | (+ or -) | 79 |
| 5. NEW PRELIMINARY SCORE (Not less than 0) | = | | 0  82 |

## C. FAVORABLE BEHAVIOR SINCE LAST REVIEW

| | | | |
|---|---|---|---|
| 1. Continuous Minimum Custody | _____ x 4 = | | 46 |
| 2. No Serious Disciplinary | 2 x 2 = | 4 | 48 |
| 3. Average or Above Performance in Work, School or Vocational Program | 2 x 2 = | 4 | 50 |
| 4. TOTAL FAVORABLE POINTS | = | 8 | |

## D. UNFAVORABLE BEHAVIOR SINCE LAST REVIEW

| SERIOUS DISCIPLINARIES | Number of | | |
|---|---|---|---|
| 1. Div. A-1/A-2 Dates: | _____ x 8 = | | 52 |
| Div. B, C & D Dates: | _____ x 6 = | | 54 |
| Div. E & F Dates: | _____ x 4 = | | 56 |
| 2. Battery or Attempted Battery on a Non-Prisoner Dates: | _____ x 8 = | | 58 |
| 3. Battery or Attempted Battery on an Inmate Dates: | _____ x 4 = | | 60 |
| 4. Distribution of Drugs Dates: | _____ x 4 = | | 62 |
| 5. Possession of a Deadly Weapon Dates: | _____ x 16 = | | 64 |
| 6. Inciting a Disturbance Dates: | _____ x 4 = | | 66 |
| 7. Battery Causing Serious Injury Dates: | _____ x 16 = | | 68 |

## G. PLACEMENT

### MANDATORY MINIMUM SCORE FACTOR CODES AND SCORES

| CODE | | SCORE | CODE | SCORE |
|---|---|---|---|---|
| [A] | Condemned | 52 | [E] Warrants "R" Suffix | 19 |
| [B] | Life Without Possibility of Parole | 52 | [F] Violence Exclusion | 19 |
| [C] | CCR 3375.2(a)(7) Life Inmate | 28 | [G] Public Interest Case | 19 |
| [D] | History of Escape | 19 | [H] Other Life Sentence | 19 |

| | | |
|---|---|---|
| 1. SCORE FACTOR CODE (Assess Only Highest Factor) | C | 85 |
| 2. MANDATORY MINIMUM SCORE | | 2 8  86 |
| 3. PLACEMENT SCORE ENTER NEW PRELIMINARY SCORE OR MANDATORY MINIMUM SCORE WHICHEVER IS GREATER | | 2 8  88 |

## H. SPECIAL CASE FACTORS

| 1. HOLDS, WANTS and DETAINERS (Enter A, P or *) | | 2. RESTRICTED CUSTODY SUFFIX (Enter R or *) |
|---|---|---|
| Felony 91 | USINS 92 | 93 |

3. ELIGIBLE FOR RESTITUTION CENTER (Enter Y or N)  94

4. LEVEL IV DESIGN  a) 180 Status (Y/N) _____
b) Reason Code _____

5. US ARMED FORCES (Enter Y or N)  95

6. CURRENT INSTITUTION AND FACILITY  C T F - I I  or

7. COUNTY OF LAST LEGAL RESIDENCE

State of California                                                Department of Corrections

# Memorandum

Date  :      April 18, 2005

To    :      Regional Administrators, Institutions Division
             Wardens – Male Institutions

Subject:     **INMATES SENTENCED TO A LIFE TERM APPROPRIATELY HOUSED
             IN LEVEL III AND IV INSTITUTIONS**

             The purpose of this memorandum is to ensure inmates who have been sentenced to a Life
             term and have a Placement Score less than 28 points are appropriately housed in a Level III
             or Level IV institution. You are expected to complete this task by May 13, 2005.

             **You are tasked with identifying all Life term inmates who are confined in Level III and
             IV facilities with a Placement Score less than 28 points and an irregular placement
             (override) of "POP", "OUT", "SCH", and "WOR" to determine if they can appropriately
             be housed in a Level II institution.**

             Please refer any Life term inmate to a Classification Staff Representative (CSR) for transfer
             consideration to a Level II institution if you determine the Life term inmate is inappropriately
             housed at a Level III or IV institution. **The attached *Life Inmate Placement Matrix*
             (Attachment 1) will assist you in determining which institutions can house Life term
             inmates.**

             The Inmate Classification Score System requires a Mandatory Minimum Score Factor Code
             of 52 points for an inmate with a sentence of Life Without Possibility of Parole, 28 points for
             a California Code of Regulations (CCR) Section 3375.2(a)(7) Life Inmate, and 19 points for
             inmates with any other life sentence. You shall ensure the Mandatory Minimum Score
             Factor Codes are appropriately applied. Life term inmates are excluded from placement in a
             minimum custody setting until a release date has been granted by the Board of Prison
             Terms (BPT). However, the granting of a release date by the BPT does not result in the
             removal of the Mandatory Minimum Score Factor Code of 19 points.

             For your convenience, attached please find CCR Sections 3375.2 (Attachment 2), 3377.1
             (Attachment 3), and 3377.2 (Attachment 4) for your reference. Additionally, you must use
             the CCR Section 3000 definition of *Multiple Murders, Unusual Violence, Execution Type
             Murder, and High Notoriety*. The October 23, 1997 memorandum, titled *Clarification of
             California Code of Regulations Section 3375.2 Housing for Level I and Level II Life Term
             Inmates* has been superseded by the CCR Section 3000 definitions. Also, for your
             convenience, the following CCR Sections are provided to emphasize key points to consider
             when completing Task 1:

             ▪   CCR Sections 3375.2(a)(7) and 3375.2(a)(7)(A) state:

                 (7) an inmate serving any life term shall not be housed in a Level I or II facility if any of
                 the following case factors are present: (A) The commitment offense involved multiple
                 murders, unusual violence or execution-type murders, or received high notoriety.

CDC 1617 (3/89)

I 204

Regional Administrators, Institutions Division
Wardens – Male Institutions
Page 2

- *Multiple Murders*, CCR Section 3000

  **Multiple Murders means the inmate killed, or was involved in killing, more than one victim during the commission of the crime for which the inmate is currently serving a Life term. This does not necessarily include an inmate who has killed more than one person during his or her criminal career.**

- *Unusual Violence*, CCR Section 3000

  **Unusual Violence describes the circumstances of an offense wherein the inmate acted to torture the victim over a period of time or intentionally made the victim endure great pain and suffering. A single act of stabbing, shooting, or beating of a victim does not necessarily qualify.**

- *Execution Type Murder*, CCR Section 3000

  **Execution Type Murder describes the circumstances or manner of a fatal offense in which the victim is bound, cuffed, gagged, blindfolded, or forced to assume a position from which the victim is unable to resist or flee; the victim is shot at close range; or the manner of death demonstrates that the victim had no opportunity to defend himself or herself nor to flee.**

- *High Notoriety*, CCR Section 3000

  **High Notoriety describes an inmate who must be treated as a significant escape risk due to the unusual level of public panic that his or her escape would likely cause. The risk of public panic is based upon the nature or circumstance of the inmate's crime, the inmate's criminal history, the inmate's behavior in custody, and extensive or prolonged medic coverage of the crime beyond the closest large city and its surrounding communities. A High Notoriety inmate is one who is perceived by the public to have criminal influence or access to significant amounts of money or drugs or power that may enable the inmate to escape, trigger a public disturbance, or victimize any person or a witness to their conviction offenses. Bases for the High Notoriety designation include, but are not limited to, Execution Type Murder, Multiple Murders, mutilation of victims, an original sentence of Death, a sentence of Life Without the Possibility of Parole, and/or a total term of 100 years or more.**

- Inmate Custody Designations are identified in CCR Section 3377.1. Specifically, CCR Section 3377.1(a)(2), *Close A Custody Male Inmates* states, "Housing shall be in cells within Level III and Level IV facilities in housing units located within an established facility security perimeter. CCR Section 3377.1(a)(4) *Close B Custody Male Inmates* states under Subsection (A), "Housing shall be in cells within designated institutions in housing units located within an established facility security perimeter." Please refer to attachments 3 and 4 for the complete CCR Section.

I 205

Regional Administrators, Institutions Division
Wardens – Male Institutions
Page 3

To facilitate the start of this task, the Classification Services Unit (CSU) has provided the attached lists of Life term inmate names and prison numbers (Attachment 5). Not all institutions will receive a list; however, you are still responsible for determining if your Life term inmates are appropriately housed. If you do receive a list, you are still responsible for adding inmates at your institution to the list who meet the criteria but are not on the list. Please complete the following on your lists:

A.  Document the following in the "comment section" for the particular inmate:

   o  "Yes" – if the Life term inmate is appropriately housed.
      Please add any administrative determinants or irregular placements (override), i.e., "MED" or "DEP" that make the placement appropriate.

   o  "No" – if the Life term inmate is inappropriately housed.
      Document after the response "No":
      ▪  "Pending a classification committee review for transfer" or
      ▪  "Pending a CSR review" or
      ▪  "Pending transfer after endorsement" or
      ▪  "Transferred to ___ (enter receiving institution) on ___ (enter the date transferred), such as, "Transferred to ASP-II on 2-8-05".

B.  If an inmate has transferred to another prison for reason(s) unrelated to the Task, it is expected that contact is made with the Warden at the receiving institution to coordinate the inmate's name and prison number being documented on the new prison's list.

   o  If this is the situation, document "Transferred to ___ (enter receiving institution) on ___ (enter the date transferred) because ___ (enter the reason for transfer), such as, "Transferred to CMF-III on 2-8-05 for DMH placement".

C.  If an inmate is transferred to your institution, or has been at your institution, but is not on your list, please add the inmate's name and prison number to your list, then complete the Task.

Upon completing the review for the task of an inmate's Central File (C-File), staff shall document on a California Department of Corrections (CDC) Form 128B, Chrono – General, "Case factors have been reviewed in accordance with CCR, Title 15, Section 3375.2(a)(7). This inmate **is eligible / is not eligible** for Level II housing based on this criteria only." The CDC Form 128B shall be placed in the General Chronos Section of the C-File.

**Your list of inmates shall be returned to Linda Rianda, Chief, CSU, no later than May 13, 2005.**

Should you have any questions or concerns, please contact Linda Rianda, Chief, CSU, at (916) 322-2544 or via email at Linda.Rianda@corr.ca.gov.

I206

Regional Administrators, Institutions Division
Wardens – Male Institutions
Page 4


*ORIGINAL SIGNED BY*

SUZAN L. HUBBARD
Deputy Director (A)
Institutions Division

Attachments

| | | |
|---|---|---|
| cc:  J. S. Woodford | John Dovey | Ernie Van Sant |
| Renee Kanan M.D. | Dave Lewis | Sharon Planchon |
| Patrick Boyd | Kathleen Keeshen | Ben Eason |
| Jackie Cervantes | Ombudsman's Office | Kathleen Dickinson |
| Sue Facciola | Linda Rianda | |

Wardens – Female Institutions
Classification and Parole Representatives
Reception Center Correctional Counselor IIIs
Classification Staff Representative

I 2007

1

2

3

4

5

**ORIGINAL**
**FILED**

JAN 0 9 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| RONALD BRATTON, | ) | No. C 07-2928 JSW (PR) |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | **ORDER GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS** |
| BEN CURRY, E. KLEIN, A. JANNAH, B. HEDRICK, M. RAGHUNATH, L. MACKEY, J. CHURDY, J. ABOYTES, | ) | **(Docket no. 4)** |
| Defendants. | ) | |

Plaintiff's application for leave to proceed in forma pauperis under 28 U.S.C. § 1915 is GRANTED. The total filing fee due is $ 350.00. In light of Plaintiff's balance and deposits over the last six months, no initial partial filing fee is due at this time. *See* 28 U.S.C. § 1915(b)(1). A copy of this order and the attached instructions will be sent to the Plaintiff, the prison trust account office, and the Court's financial office.

IT IS SO ORDERED.

DATED: January 9, 2008

*Jeffrey S. White*

JEFFREY S. WHITE
United States District Judge

1

2

3

4

5

6

7

ORIGINAL
FILED

JAN 0 9 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 8  RONALD BRATTON, | ) No. C 07-2928 JSW (PR) |
| 9 | ) |
| 10  Plaintiff, | ) **ORDER OF SERVICE OF** |
| | ) **EIGHTH AMENDMENT, EQUAL** |
| | ) **PROTECTION and RLUIPA** |
| 11  v. | ) **CLAIMS AND INSTRUCTIONS** |
| | ) **TO THE CLERK** |
| 12  BEN CURRY, E. KLEIN, A. JANNAH, | ) |
| B. HEDRICK, M. RAGHUNATH, L. | ) |
| 13  MACKEY, J. CHURDY, J. ABOYTES, | ) |
| 14  Defendant. | ) |
| 15 | ) |

16

17

18

19

20

21

22

23

24

25

26

27

28

## INTRODUCTION

Plaintiff, currently incarcerated at the Correctional Training Facility in Soledad, California, has filed this civil rights complaint regarding the conditions of his confinement at the prison. On July 17, 2007, Plaintiff filed an amended complaint and a Second Amended Complaint, filed on October 29, 2007, which is now the operative pleading in this matter. Plaintiff has also filed a motion to proceed *in forma pauperis*, which is GRANTED in a separate order. This Court now reviews the Second Amended Complaint pursuant to 28 U.S.C. § 1915A and serves certain claims as set forth below.

## STATEMENT OF FACTS

In the complaint, Plaintiff alleges that prison officials refused to serve him a kosher or halal diet with meat. Plaintiff contends that kosher meat is an adequate substitute for the halal meat required for Muslims and that it is preferable to the

1    vegetarian diet alternative he is offered by the facility to comply with his religious
2    dietary needs.  Plaintiff asserts that the failure to provide meat to him as an observant
3    Muslim is discriminatory, because Jewish prisoners are provided with kosher meat, but
4    Muslims are not provided halal meat that meats their religious requirements.  Plaintiff
5    also alleges that because he suffers from leukemia, that a non-meat diet is inadequate to
6    meet his medical and nutritional needs and the recision of his medical chrono for a
7    kosher diet and the failure to provide him with appropriate meat violates his
8    constitutional rights.
9        Plaintiff also complains that his appeal in the prison mail to the warden about this
10    issue was interfered with by correctional staff and that his appeal regarding the denial of
11    his medical chrono was not accepted by the appeals coordinator, on the grounds that it
12    had been denied in an earlier appeal.  Plaintiff alleges that the earlier appeal raised the
13    religious rather than the medical dietary restrictions and should have been processed by
14    the appeals coordinator.  Plaintiff further complains that the failure to provide him with
15    halal or kosher meat as a permissible substitute violates his rights under the First
16    Amendment and under the Religious Land Use and Institutionalized Persons Act,
17    ("RLUIPA",) 42 U.S.C. § 2000cc-1.  Plaintiff seeks declaratory and injunctive relief, as
18    well as damages.
19        Plaintiff has also raised claims regarding an unrelated medical, work and
20    retaliation claims against different Defendants.  However, these claims are not properly
21    joined with his religious and medical diet claims and will be dismissed without prejudice
22    to Plaintiff filing them as separate actions.
23                    **STANDARD OF REVIEW**
24        Federal courts must engage in a preliminary screening of cases in which prisoners
25    seek redress from a governmental entity or officer or employee of a governmental entity.
26    28 U.S.C. § 1915A(a).  The Court must identify cognizable claims or dismiss the
27
28                        2

complaint, or any portion of the complaint, if the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief." *Id.* § 1915A(b). Pro se pleadings must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

## ANALYSIS

I.    Eighth Amendment, Equal Protection, Administrative Appeals and First Amendment Claims

The Eighth Amendment requires that prison officials take reasonable measures to guarantee the safety of prisoners. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds, WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc); *Jones v. Johnson*, 781 F.2d 769, 771 (9th Cir. 1986). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. *See McGuckin*, 974 F.2d at 1059.

A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Id.* (citing *Estelle v. Gamble*, 429 U.S. at 104). The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the

3

1    existence of chronic and substantial pain are examples of indications that a prisoner has a

2    "serious" need for medical treatment. *See id.* at 1059-60 (citing *Wood v. Housewright*,

3    900 F.2d 1332, 1337-41 (9th Cir. 1990)).

4        A prison official is deliberately indifferent if he knows that a prisoner faces a

5    substantial risk of serious harm and disregards that risk by failing to take reasonable

6    steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  In order for deliberate

7    indifference to be established, there must be a purposeful act or failure to act on the part

8    of the defendant and resulting harm. *See McGuckin*, 974 F.2d at 1060; *Shapley v.*

9    *Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).

10       Adequate food is a basic human need protected by the Eighth Amendment. *See*

11   *Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996), *amended*, 135 F.3d 1318 (9th Cir.

12   1998). The Eighth Amendment requires only that prisoners receive food that is adequate

13   to maintain health; it need not be tasty or aesthetically pleasing. *See LeMaire v. Maass*,

14   12 F.3d 1444, 1456 (9th Cir. 1993) (temporary diet of Nutraloaf, which exceeds inmate's

15   daily nutritional requirements, does not violate 8th Amendment).

16       Petitioner has stated an Eighth Amendment claims with regard to the deprivation

17   of a diet including meat that complies with his religious dietary restrictions and meets his

18   nutritional needs with regard to his health condition against Defendants M. Raghunath,

19   B. Hedrick, E. Klein, B. Curry, W.J. Hill, A. Jannah, J. Chudy, J. Aboytes, and N.

20   Grannis.

21       In order to establish a free exercise violation, a prisoner must show a defendant

22   burdened the practice of his religion, by preventing him from engaging in conduct

23   mandated by his faith, without any justification reasonably related to legitimate

24   penological interests. *See Freeman v. Arpaio*, 125 F.3d 732, 736 (9th Cir. 1997).  To

25   reach the level of a constitutional violation, "the interference with one's practice of

26   religion 'must be more than an inconvenience; the burden must be substantial and an

27

28                                    4

1   interference with a tenet or belief that is central to religious doctrine.'" *Id.* at 737

2   (quoting *Graham v. C.I.R.*, 822 F.2d 844, 851 (9th Cir. 1987)). A prisoner may be

3   inconvenienced in the practice of his or her faith so long as the governmental conduct

4   does not prohibit the prisoner from "participating in the mandates of his religion." *See*

5   *id.* (failure to give notice allowing time for cleansing ritual, shackling, requiring sign-in

6   for services and abusive language directed at faith failed to rise to a constitutional level).

7   A prison regulation that impinges on an inmate's First Amendment rights is valid if it is

8   reasonably related to legitimate penological interests. *See O'Lone v. Estate of Shabazz*,

9   482 U.S. 342, 349 (1987) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)); ; *Ward v.*

10  *Walsh*, 1 F.3d 873, 877 (9th Cir. 1993) (remanding for district court to determine

11  whether denial of kosher diet was reasonably related to prison's legitimate interest in

12  streamlining food service).

13      While Plaintiff alleges that the prison has interfered with the practice of his

14  religion by providing him with a vegetarian diet, it cannot be said that the failure to

15  provide halal meat alone while otherwise providing an otherwise religiously permissible

16  diet constitutes "' an interference with a tenet or belief that is central to religious

17  doctrine.'" *Freeman,* 125 F.3d at 737. Plaintiff has not alleged that his religion requires

18  the consumption of meat, only that his dietary and health preference is to have a

19  religiously permissible diet that includes meat. Therefore, this claim is DISMISSED.

20      The Equal Protection Clause requires that an inmate who is an adherent of a

21  minority religion be afforded a "reasonable opportunity of pursuing his faith comparable

22  to the opportunity afforded fellow prisoners who adhere to conventional religious

23  precepts," *Cruz v. Beto*, 405 U.S. 319, 322 (1972) (Buddhist prisoners must be given

24  opportunity to pursue faith comparable to that given Christian prisoners), as long as the

25  inmate's religious needs are balanced against the reasonable penological goals of the

26  prison, *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987). *See Allen v. Toombs*, 827

27

28                                      5

F.2d 563, 568-69 (9th Cir. 1987). Plaintiff's claim that the failure to provide a halal diet
including meat to Muslims, while providing a kosher diet to observant Jews is sufficient
to state an Equal Protection claim against the above Defendants.

The Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C.
§ 2000cc-1, provides: "No government shall impose a substantial burden on the religious
exercise of a person residing in or confined to an institution, as defined in section 1997
[which includes state prisons, state psychiatric hospitals, and local jails], even if the
burden results from a rule of general applicability, unless the government demonstrates
that imposition of the burden on that person (1) is in furtherance of a compelling
governmental interest; and (2) is the least restrictive means of furthering that compelling
governmental interest." 42 U.S.C. § 2000cc-1(a). The statute applies to any "program or
activity that receives Federal financial assistance." 42 U.S.C. § 2000cc-1(b)(1).

RLUIPA defines "religious exercise" to include "any exercise of religion, whether
or not compelled by, or central to, a system of religious belief." *San Jose Christian
College v. Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004) (citing 42 U.S.C. § 2000cc-
5(7)(A)). While it is certainly questionable whether the failure to provide halal meat
constitutes a substantial burden on the exercise of Plaintiff's religion, the claim is
sufficient to be served against the above Defendants.

There is no constitutional right to a prison administrative appeal or grievance
system. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855
F.2d 639, 640 (9th Cir. 1988); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th
Cir. 1996); *accord Wolff v. McDonnell*, 418 U.S. 539, 565 (1974) (accepting Nebraska
system wherein no provision made for administrative review of disciplinary decisions).
California Code of Regulations, title 15 sections 1073 and 3084 grant prisoners in the
county jails and state prisons a purely procedural right: the right to have a prison appeal.
A provision that merely provides procedural requirements, even if mandatory, cannot
form the basis of a constitutionally cognizable liberty interest. *See Smith v. Noonan*, 992
F.2d 987, 989 (9th Cir. 1993); *see also Antonelli*, 81 F.3d at 1430 (prison grievance

procedure is procedural right that does not give rise to protected liberty interest requiring procedural protections of Due Process Clause); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (same); *Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982) (same). A prison official's failure to process grievances, without more, accordingly is not actionable under § 1983. *See Buckley*, 997 F.2d at 495; *see also Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (holding that prisoner's claimed loss of a liberty interest in the processing of his appeals does not violate due process because prisoners lack a separate constitutional entitlement to a specific prison grievance system). Therefore, Plaintiff's claim that his appeal was denied as having already been addressed in an earlier appeal fails to state a claim.

Prisoners enjoy a First Amendment right to send and receive mail. *See Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995) (citing *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989)). However, generally, prison officials may inspect both incoming and outgoing non-legal mail. *See Witherow*, 52 F.3d at 265-66 (upholding inspection of outgoing mail); *Smith v. Boyd*, 945 F.2d 1041, 1043 (8th Cir. 1991) (upholding inspection of incoming mail); *Gaines v. Lane*, 790 F.2d 1299, 1304 (7th Cir. 1986) (upholding inspection of outgoing and incoming mail). Prison officials may also institute procedures for inspecting "legal mail," e.g., mail sent between attorneys and prisoners, *see Wolff v. McDonnell*, 418 U.S. 539, 576-77 (1974) (incoming mail from attorneys), and mail sent from prisoners to the courts, *see Royse v. Superior Court*, 779 F.2d 573, 574-75 (9th Cir. 1986) (outgoing mail to court). Plaintiff's allegations that his administrative appeal sent to the warden was improperly opened fails to state a claim for relief, as an administrative appeal does not constitute 'legal mail' which can be examined, and the single incident of a two week delay in sending a piece of mail addressed to the warden is insufficient to state a claim for constitutional relief.

II    Joinder of Claims

Federal Rule of Civil Procedure Rule 20 provides,

7

1      All persons. . .may be joined in one action as defendants if there is asserted
2      against them jointly, severally, or in the alternative, any right to relief
     arising out of the same transaction, occurrence or series of transactions or
     occurrences and if any question of law or fact common to all defendants
3      will arise in the action.

4    F. R. Civ. P. 20(a). Further, Rule 21 provides that where parties are misjoined, they may

5    be "dropped or added by order of the court . . .on such terms as are just. F. R. Civ. P. 21;

6    *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997).

7        In this case, Plaintiff asserts numerous unrelated claims against different

8    Defendants related to dental care, provision of glasses and prescription medication, his

9    work assignments, interference with his parole and lack of mental healthcare that are not

10   properly joined with his claims regarding the failure to provide him with kosher or halal

11   meat. These claims do not involve the same transaction, occurrence or series of

12   transactions or occurrences as the denial of halal or kosher meat claims. Therefore, those

13   claims, which are set forth in the amended complaint at pages 13-30 are DISMISSED

14   without prejudice to asserting them in another action.

15   III.     Eleventh Amendment

16        Plaintiff's claims against the State of California and the California Department of

17   Corrections and Rehabilitation are barred by the Eleventh Amendment. The Eleventh

18   Amendment bars from the federal courts suits against a state by its own citizens, citizens

19   of another state or citizens or subjects of any foreign state. *See Atascadero State Hosp.*

20   *v. Scanlon*, 473 U.S. 234, 237-38 (1985); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978);

21   *Edelman v. Jordan*, 415 U.S. 651, 676-77 (1974). This Eleventh Amendment immunity

22   also extends to suits against a state agency, *see, e.g., Simmons v. Sacramento County*

23   *Superior Court*, 318 F.3d 1156,1161 (9th Cir. 2003) (11th Amendment bars suit against

24   state superior court and its employees); *Hyland v. Wonder*, 117 F.3d 405, 413 (9th Cir.),

25   *amended*, 127 F.3d 1135 (9th Cir. 1997) (state case law and constitutional provisions

26   make clear that California Superior Court is state agency). Therefore, these Defendants

27

28                            8

are DISMISSED from this action.

## CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. Plaintiff states a cognizable claim against Defendants M. Raghunath, B. Hedrick, E. Klein, B. Curry, W.J. Hill, A. Jannah, J. Chudy, J. Aboytes, and N. Grannis. All other Defendants are DISMISSED and the Clerk shall TERMINATE them from this action. The Clerk of the Court shall issue summons and the United States Marshal shall serve, without prepayment of fees, a copy of the second amended complaint and all attachments thereto, and a copy of this order upon: **Defendants M. Raghunath, B. Hedrick, E. Klein, B. Curry, W.J. Hill, A. Jannah, J. Chudy, J. Aboytes, at the Correctional Training Facility in Soledad, California and against Defendant N. Grannis at the California Department of Corrections and Rehabilitation in Sacramento, California.** The Clerk shall also serve a copy of this order on Plaintiff.

2. In order to expedite the resolution of this case, the Court orders as follows:

a. No later than **sixty (60) days** from the date of this order, Defendant shall either file a motion for summary judgment or other dispositive motion, or a notice to the Court that they are of the opinion that this matter cannot be resolved by dispositive motion. The motion shall be supported by adequate factual documentation and shall conform in all respects to Federal Rule of Civil Procedure 56.

**Defendant is advised that summary judgment cannot be granted, nor qualified immunity found, if material facts are in dispute. If Defendant is of the opinion that this case cannot be resolved by summary judgment, they shall so inform the Court prior to the date the summary judgment motion is due**.

All papers filed with the Court shall be promptly served on the Plaintiff.

b. Plaintiff's opposition to the dispositive motion shall be filed with the Court and served on Defendant no later than **thirty (30) days** from the date Defendant's motion is filed. The following notice is for the benefit of all pro se litigants:

9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The defendants have made a motion for summary judgment by which they seek to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case.

Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact--that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendant's declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted in favor of defendants, your case will be dismissed and there will be no trial.

*Rand v. Rowland,* 154 F.3d 952, 963 (9th Cir. 1998) (en banc).

Plaintiff is advised to read Rule 56 of the Federal Rules of Civil Procedure and *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986) (holding party opposing summary judgment must come forward with evidence showing triable issues of material fact on every essential element of his claim).

c. Defendant shall file a reply brief no later than **fifteen (15) days** after Plaintiff's opposition is filed.

d. The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion unless the Court so orders at a later date.

3. Discovery may be taken in accordance with the Federal Rules of Civil Procedure. No further Court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16 is required before the parties may conduct discovery.

4. Extensions of time are not favored, though reasonable extensions will be granted. Any motion for an extension of time must be filed no later than **five** days prior to the deadline sought to be extended.

10

1       5. All communications by Plaintiff with the Court must be served on Defendant,

2  or Defendant's counsel once counsel has been designated, by mailing a true copy of the

3  document to Defendant or Defendant's counsel.

4       6. It is Plaintiff's responsibility to prosecute this case. Plaintiff must keep the

5  Court and Defendant or Defendant's counsel informed of any change of address by filing

6  and serving a separate paper entitled "Notice of Change of Address" and must comply

7  with the Court's orders in a timely fashion. Failure to do so may result in the dismissal

8  of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

     IT IS SO ORDERED.

9  DATED: January 9, 2008

10

11                              JEFFREY S. WHITE
                             United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                11

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

RONALD BRATTON,

        Plaintiff,

    v.

BEN CURRY et al,

        Defendant.

                 /

Case Number: CV07-02928 JSW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on January 9, 2008, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Ronald Bratton
P.O. Box 689
J45341
Soledad, CA 93960-0689

Dated: January 9, 2008

Richard W. Wieking, Clerk
By: Jennifer Ottolini, Deputy Clerk